LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
MARGARET M. HALL (Bar No. 293699)
mhall@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
*Attorneys for Environmental Defense Center,*
*Get Oil Out!, Santa Barbara County Action*
*Network, Sierra Club, and Santa Barbara*
*Channelkeeper*

JULIE TEEL SIMMONDS (Bar No. 208202)
jteelsimmonds@biologicaldiversity.org
EMILY JEFFERS (Bar No. 274222)
ejeffers@biologicaldiversity.org
TALIA NIMMER (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375
Oakland, CA 94612
Phone: (510) 844-7100
*Attorneys for Center for Biological*
*Diversity and Wishtoyo Foundation*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>                        Plaintiff,<br><br>    and<br><br>ENVIRONNMENTAL DEFENSE CENTER, GET OIL OUT!, SANTA BARBARA COUNTY ACTION NETWORK, SIERRA CLUB, SANTA BARBARA CHANNELKEEPER, CENTER FOR BIOLOGICAL | Case No.: 2:26-cv-03396-SVW-SSCx<br><br>**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Stephen V. Wilson<br><br>Hearing: June 8, 2026 (or as soon thereafter as can be heard) |

1

DIVERSITY, and WISHTOYO FOUNDATION,

     Proposed Plaintiff-Intervenors,

     v.

CHRIS WRIGHT, in his official capacity as Secretary of the U.S. Department of Energy; UNITED STATES DEPARTMENT OF ENERGY,

     Defendants.

Time: 1:30 p.m.
Place: Courtroom 10A

## NOTICE OF MOTION AND MOTION TO INTERVENE

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 8, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before Honorable Stephen V. Wilson in the above-titled Court, Courtroom 10A of the First Street Federal Courthouse, 350 West 1st Street, Los Angeles, CA 90012, the Environmental Defense Center (EDC), Get Oil Out! (GOO!), Santa Barbara County Action Network (SBCAN), Sierra Club, Santa Barbara Channelkeeper (SBCK), Center for Biological Diversity (CBD), and Wishtoyo Foundation (Wishtoyo) (collectively, "Proposed Intervenors") will and hereby do move for leave to intervene as plaintiffs in this case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). Alternatively, Proposed Intervenors move for permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).

This Motion is made following the conference of counsel prior to filing the Motion pursuant to Local Rule 7-3, which took place on April 30, 2026. *See* Hall Decl. ¶¶ 5–7. Plaintiffs have confirmed they will not oppose this Motion, and Defendants have indicated they will not take a position on this Motion at this time. *Id.*

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities; Declarations of Linda Krop, Chief Counsel of EDC; Alex Katz, Executive Director of EDC; Michael T. Lyons, President of GOO!; Ken Hough, Co-Executive Director of SBCAN; Maureen Ellenberger, Santa Barbara/Ventura Chapter

2

Chair for the Sierra Club; Walter Edward Morton, Executive Director of SBCK; Julie Teel Simmonds, Senior Counsel at CBD; Brady Bradshaw, Senior Campaigner at CBD, and Tevin Schmitt, Watershed Scientist at Wishtoyo; exhibits corresponding to those declarations; Proposed Complaint; the argument of counsel; all pleadings and papers on file in this action; and upon such other matters as may be presented to the Court before the Court's decision.

WHEREFORE, Proposed Intervenors pray that the Court grant the instant motion and thereby grant them leave to intervene as plaintiffs in this action. In addition, if intervention is granted, Proposed Intervenors further request that the Court accept their Proposed Complaint.

Respectfully submitted this 7th day of May, 2026.

*/s/ Margaret M. Hall*
Margaret M. Hall
Linda Krop
Jeremy M. Frankel
ENVIRONMENTAL DEFENSE CENTER
*Counsel for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

*/s/ Julie Teel Simmonds*
Julie Teel Simmonds
Emily Jeffers
Talia Nimmer
CENTER FOR BIOLOGICAL DIVERSITY
*Counsel for Center for Biological Diversity and Wishtoyo Foundation*

3

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND .............................................................................. 2

PROPOSED INTERVENORS ........................................................................... 7

LEGAL BACKGROUND ................................................................................. 9

ARGUMENT ................................................................................................. 10

   I.   The Court Should Grant Intervention as of Right. ...................................... 10

      A.   The Motion to Intervene is Timely. ................................................. 10

      B.   Proposed Intervenors Have Significantly Protectable Interests. .................... 11

          1.  Proposed Intervenors Participated in the Decision-making Processes. ................................................................... 12

          2.  Proposed Intervenors Use and Enjoy the Affected Environment. .......... 13

      C.   Disposition of This Case May Impair or Impede Proposed Intervenors' Interests. ........................................................... 14

      D.   Existing Parties Do Not Adequately Represent Proposed Intervenors' Interests. ........................................................... 15

          1.  The State May Not Be Capable of or Willing to Make All of the Same Arguments as Proposed Intervenors. ........................... 15

          2.  Proposed Intervenors Will Add Necessary Elements to the Case. ......... 18

   II.   In the Alternative, Proposed Intervenors Satisfy the Standard for Permissive Intervention. ........................................................... 19

      A.   Proposed Intervenors' Motion is Timely. ..................................... 19

      B.   Proposed Intervenors Satisfy the Requirement of a Common Question of Law or Fact. ........................................................... 20

      C.   Proposed Intervenors Will Not Unduly Delay or Prejudice Parties. ............ 20

      D.   Equitable Considerations Weigh in Favor of Granting Intervention. ........... 20

CONCLUSION .............................................................................................. 21

CERTIFICATE OF COMPLIANCE .................................................................. 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ..................................................................15, 18, 19

*Cal. Dump Truck Owners Ass'n v. Nichols*,
275 F.R.D. 303 (E.D. Cal. 2011) ....................................................................11, 14

*Cal. Sea Urchin Comm'n. v. Jacobson*,
2013 WL 12114517 ..........................................................................................14, 20

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ......................................................................11, 13, 14

*California Trout, Inc. v. United States Bureau of Reclamation*,
115 F. Supp. 3d 1102 (C.D. Cal. 2015) ............................................................11, 12

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) ...............................................................................17

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ....................................................................13, 14, 15

*Dilks v. Aloha Airlines*,
642 F.2d 1155 (9th Cir. 1981) ...............................................................................13

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) ...........................................................................16, 17

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) .............................................................................11, 14

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002) ................................................................................20

*Nat'l Assoc. of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.*,
No. 1:07cv0820 LJO DLB, 2007 WL 2757995 (E.D. Cal. Sept. 21, 2007) ...............16

*Nooksack Indian Tribe v. Zinke*,
321 F.R.D. 377 (W.D. Wash. 2017) .......................................................................20

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ....................................................................... 12

*Orange County. v. Air Cal.*,
   799 F.2d 535 (9th Cir. 1986) ..................................................................... 10

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) ................................................................ 12, 14

*SEC v. U.S. Realty & Impvt. Co.*,
   310 U.S. 434 (1940) ................................................................................... 10

*Sierra Club v. U.S. Env't Prot. Agency*,
   995 F.2d 1478 (9th Cir. 1993) ................................................................. 9, 11

*Smith v. Los Angeles Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) ..................................................................... 10

*Spangler v. Pasadena City Bd. of Ed.*,
   552 F.2d 1326 (9th Cir. 1977) .................................................................... 20

*State of California v. Wright*,
   No. 2:26-cv-03396 (C.D. Cal.) ................................................................. 2, 3

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ......................................................... 10, 15, 17

*United States v. Carpenter*,
   526 F.3d 1237 (9th Cir. 2008) .................................................................... 13

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ..................................................................... 10

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) .......................................................... 10, 11, 15

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ...................................................... 9, 10, 11, 12

*Yniguez v. Arizona*,
   939 F.2d 727 (9th Cir. 1991) ....................................................................... 9

**Other Authorities**

Federal Rule of Civil Procedure 24(a)(2) ....................................... 1, 9, 10, 19

Federal Rule of Civil Procedure 24(b)........................................................................1, 10

Federal Rule of Civil Procedure 24(b)(1)........................................................................19

Federal Rule of Civil Procedure 24(b)(1)(B)........................................................................10

Federal Rule of Civil Procedure 24(b)(3)........................................................................19

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 24, the Environmental Defense Center (EDC), Get Oil Out! (GOO!), Santa Barbara County Action Network (SBCAN), Sierra Club, Santa Barbara Channelkeeper (SBCK), Center for Biological Diversity (CBD), and Wishtoyo Foundation (Wishtoyo) (collectively "Proposed Intervenors") respectfully request that this Court grant them leave to intervene as of right pursuant to Rule 24(a)(2), or in the alternative, permission to intervene under Rule 24(b), as plaintiffs in this action. In this case, Plaintiff State of California (the "State") challenges Defendant United States Secretary of Energy Chris Wright's Order (the "Wright Order") directing Sable Offshore Corporation ("Sable") to prioritize and allocate pipeline transportation of oil and gas from the Santa Ynez Unit (SYU) offshore Santa Barbara, California. The Wright Order, issued in reliance on the Defense Production Act (DPA) of 1950, instructed Sable to, *inter alia*, "immediately prioritize and allocate pipeline transportation services for hydrocarbons" through Sable's onshore oil pipelines, Lines CA-324 and CA-325 (together, the "Onshore Pipelines"). Sable relied on the Wright Order to begin transporting oil through the Onshore Pipelines, despite an outstanding preliminary injunction in state court, a federal court order requiring State approval of restart plans, the lack of approvals from multiple other state agencies, and the absence of a current or valid easement to operate the segment of Line CA-325 that crosses California property.

Proposed Intervenors have an interest in protecting the California coast and local communities from the risks and impacts of offshore oil and gas development. For more than two years, they have worked to enforce local, state, and federal laws relating to Sable's proposal to restart the same pipeline that caused one of the worst oil spills in California history. Specifically, they have submitted comment letters and substantial evidence opposing pipeline restart, warning of potential environmental and public safety impacts, and highlighting the irresponsibility of the operator. Last July, they obtained an

1

injunction prohibiting Sable from operating in reliance on State Waivers approved by the California Office of State Fire Marshal (OSFM) and have engaged in other litigation to enforce local, state, and federal laws and regulations protecting the environment as well as public health, safety, and welfare. Proposed Intervenors seek to protect their significant interests in preserving California's unique natural resources and safeguarding public safety by ensuring that Sable cannot use the Wright Order to circumvent the many requirements necessary to legally restart the Onshore Pipelines.

Proposed Intervenors are entitled to intervention. This motion is timely, and Proposed Intervenors have significantly protectable interests in the environment along the route of the Onshore Pipelines and the public process still needed by state law for restart. Those interests may be impeded by the disposition of this case. If Defendants are permitted to operate the heavily corroded Onshore Pipelines pursuant to the Wright Order, Proposed Intervenors' years-long battle opposing the restart and enforcing important environmental and safety protection laws would be entirely undermined. Further, their interests are not adequately represented because the State and Proposed Intervenors have fundamentally different interests in this case. Indeed—while Proposed Intervenors have argued there are simply no circumstances under which the Onshore Pipelines can be safely restarted, the State in some instances has supported or conditionally-approved activities related to restart.

In the alternative, Proposed Intervenors request that the Court allow permissive intervention because the Proposed Intervenors present a common question of law and fact to the present case, would not unduly delay or prejudice the parties, and equitable considerations favor granting intervention.

## FACTUAL BACKGROUND

The SYU is an oil and gas production unit located off the Santa Barbara County coast. Complaint for Declaratory and Injunctive and Other Relief ("Plaintiff's Complaint") ¶ 25, Dkt. No. 1, *State of California v. Wright*, No. 2:26-cv-03396 (C.D. Cal.). It consists of three offshore platforms which produce crude oil, natural gas, and

other hazardous liquids. *Id*. These products are transported by undersea pipelines to the Las Flores Canyon Processing Facility where they are separated and treated. *Id*. Once processed, the oil product is transported through the Onshore Pipelines to Kern County, where the oil is stored and distributed. *Id.*

On May 19, 2015, pipeline CA-324 ruptured at Refugio State Beach Park, releasing more than 120,000 gallons of heavy crude oil into the surrounding environment (the "Refugio Oil Spill"). *Id.* ¶ 26. Thousands of acres of shoreline and subtidal habitat were destroyed, and numerous wildlife were injured or killed. *See id.* ¶ 29; Krop Decl., Exh. A at 3. The spill forced the closure of fisheries and beaches, which jeopardized local businesses and caused an estimated 140,000 lost recreational user days between Santa Barbara and Ventura Counties. Krop Decl. ¶ 7, Exh. A at 3. Proposed Intervenors were involved in the immediate spill response and several of their members witnessed firsthand the extensive devastation and loss it caused. *See* Krop Decl. ¶¶ 6–7; Katz Decl. ¶ 7; Ellenberger Decl. ¶¶ 7, 10; Hough Decl. ¶ 7; Lyons Decl. ¶ 7; Morton Decl. ¶ 7; Schmitt Decl. ¶ 16.

Following the Refugio Oil Spill, the Onshore Pipelines were idled (Plaintiff's Complaint ¶¶ 30, 36) and production at the SYU was suspended. Krop Decl. ¶ 8. Investigators determined the pipeline ruptured due to external corrosion of the pipeline wall. Plaintiff's Complaint ¶ 27. Investigators further concluded that the system designed to prevent corrosion, cathodic protection, was ineffective on these pipelines. *Id.*; Krop Decl. ¶ 9, Exh. C at 3.

The investigation also resulted in an acknowledgement that the Onshore Pipelines were intrastate pipelines and safety oversight should be transferred from the federal Pipeline and Hazardous Materials Safety Administration (PHMSA) to OSFM. Krop Decl. ¶ 8. The agencies executed a memorandum of understanding to that effect in 2016. *Id.*

On May 12, 2020, the United States and various State agencies filed a civil action against Plains All American Pipeline Company (Plains), the owner and operator of the Onshore Pipelines at the time of the rupture, seeking civil penalties and compensation for

natural resources damages caused by the spill. Plaintiff's Complaint ¶¶ 31–32. The parties settled, which was memorialized in a Consent Decree that required Plains to pay over $60 million in damages. *Id.* ¶ 32.

Critically, the Consent Decree also established three paths forward for the Onshore Pipelines. Krop Decl. ¶ 10, Exh. D at 75–76. First, given the design defects, the owner could abandon and decommission the Onshore Pipelines. *Id.* at 76. Second, the owner could replace the Onshore Pipelines with a non-insulated pipeline, which could allow the cathodic protection system to function correctly. *Id.* at 75–76. And, as a third and final option, the owner could restart the existing pipelines, but only under strict conditions. *Id.* at 76. As relevant here, those restart conditions included obtaining, *exclusively from OSFM*, (1) waivers for the "limited effectiveness of cathodic protection" and (2) approval of a restart plan for both Onshore Pipelines. *Id.* at 75, 91, 94–95.

On February 14, 2024, ExxonMobil Corporation ("Exxon"), which had acquired the Onshore Pipelines from Plains, sold the SYU and all associated assets to Sable, including the Onshore Pipelines. Plaintiff's Complaint ¶ 38. Because Sable was a new, speculative, and severely undercapitalized company, the deal was financed almost entirely by a loan from Exxon. *Id.* ¶¶ 38–39. In return, Sable agreed that the SYU assets may revert to Exxon if it failed to restart operations within two years. *Id.* ¶ 39.

Because of these constraints, Sable sought to quickly restart, rather than safely replace, the defective Onshore Pipelines. *Id.* ¶ 40. In its haste to do so, it began willfully disregarding state law, ignoring agency directives, and otherwise cutting regulatory corners. *See id.* ¶¶ 40–41.

In its rush to repair the severely corroded pipelines, Sable performed numerous excavations along the pipeline route without obtaining requisite authorizations from local and state agencies. Krop Decl. ¶ 28. These violations led to a historic $18 million fine, a felony criminal complaint, and an injunction in state court preventing Sable from conducting further unpermitted repairs in the Coastal Zone. Krop Decl. ¶ 30.

4

Against this backdrop of regulatory violations and enforcement actions, Sable also needed permission to conduct repairs and operate the Onshore Pipelines within Gaviota State Park (the "Park"). Plaintiff's Complaint ¶¶ 99–103; Krop Decl. ¶ 23. On April 2, 2025, Proposed Intervenors sent a letter to the California Department of Parks and Recreation ("State Parks") urging State Parks to enforce its requirement that Sable obtain a new easement and conduct environmental review before being allowed access. Krop Decl. ¶ 22. Over Proposed Intervenors' objections, on May 8, 2025, State Parks issued a Right of Entry (ROE) Permit to Sable, allowing Sable to repair the pipeline anomalies within the Park, and exempting the activity from environmental review. *Id.* ¶ 23. In the subsequent months, Proposed Intervenors sent additional letters to State Parks urging the agency to conduct environmental review before deciding whether to issue an easement to Sable and noting Sable's violations of the terms of the ROE. *Id.* ¶¶ 24–26. State Parks continued to process Sable's application for an easement until Sable informed State Parks that it would be restarting the Onshore Pipelines under the Wright Order without the agency's permission, at which point State Parks formally denied Sable's application. *See id.* ¶ 27.

Meanwhile, pursuant to the Consent Decree, Sable applied to OSFM for waivers for the "limited effectiveness of cathodic protection" on the pipelines. *See id.* ¶ 14. Proposed Intervenors sent letters to OSFM requesting that the agency provide for public comment, conduct environmental review, and issue a written justification for its decisions. Krop Decl. ¶¶ 15–17; Teel Decl. ¶¶ 15–17. Proposed Intervenors consistently urged OSFM to deny the application, citing the environmental harm that could result from another oil spill and Sable's irresponsible disregard for the authority of State agencies. *Id.* Despite the concerns expressed by Proposed Intervenors, OSFM approved Sable's State Waivers in December 2024 without conducting environmental review or providing any formal public review process. Krop Decl. ¶ 18.

In April 2025, the Proposed Intervenors filed companion lawsuits challenging the State Waivers in the Superior Court for the County of Santa Barbara. *Id.* ¶ 19; Plaintiff's

Complaint ¶ 41 n.12. In those lawsuits, the court issued a preliminary injunction on July 18, 2025, prohibiting Sable from restarting the Onshore Pipelines until 10 court days after the filing and service of notice that Sable has received all necessary approvals and permits for restarting the pipelines, and that Sable intends to commence such restart. Krop Decl. ¶ 20. That injunction remains in effect. *Id.*

On October 22, 2025, OSFM denied Sable's request for approval of its Restart Plan due to Sable's failure to comply with the State Waivers and complete necessary repairs. Plaintiff's Complaint ¶ 43. Rather than coming into compliance with the State Waiver requirements, on November 26, 2025, Sable petitioned PHMSA to step in and unilaterally assume jurisdiction over the Onshore Pipelines. *Id*. ¶ 44.

On December 17, 2025, PHMSA granted Sable's request and issued an order redesignating the Onshore Pipelines as *inter*state, purporting to strip OSFM of its authority to regulate the *intra*state Onshore Pipelines. *Id.* ¶ 45. Less than a week later, PHMSA released a one-page letter approving Sable's Restart Plan and issued an Emergency Special Permit (the federal equivalent of a State Waiver) to Sable (together, "the Approvals"). *Id.* ¶¶ 46–47. On December 24, 2025, Proposed Intervenors filed a Petition for Review with the Ninth Circuit challenging the Approvals. Krop Decl. ¶ 35. That challenge remains ongoing and was consolidated with a similar challenge from the State. *Id.*; Plaintiff's Complaint ¶ 48.

In January 2026, Sable applied to PHMSA for a Special Permit to extend the terms of the Emergency Special Permit. *See* Krop Decl. ¶ 36. On April 3, 2026, Proposed Intervenors submitted a letter opposing Sable's application and urging PHMSA to reject Sable's request, or, at a minimum, to prepare an Environmental Impact Statement before taking action on the application. *Id.*

Sable also requested that Secretary Wright order Sable to restart the Onshore Pipelines under the DPA. Plaintiff's Complaint ¶ 51. The Secretary issued the Wright Order on March 13, 2026, and Sable relied upon it to restart the Onshore Pipelines the following day, disregarding the Consent Decree, state law, state property rights, and a

court injunction. *Id.* ¶¶ 54–56. The above-captioned legal challenge followed shortly thereafter.

## PROPOSED INTERVENORS

Proposed Intervenor EDC is a California public benefit, non-profit corporation, headquartered in Santa Barbara, California. Katz Decl. ¶¶ 3–4. Founded in response to the 1969 Santa Barbara oil spill, EDC defends nature and advances environmental justice on California's Central Coast through advocacy and legal action. *Id.* ¶ 4. EDC has more than 2,400 members and advocates on behalf of itself and other organizations. *Id.* ¶¶ 4, 6. Since its founding, EDC has worked to protect the local coastline, marine environment, watersheds, and terrestrial environment of Santa Barbara County from the risks and impacts of oil production. *Id.* ¶¶ 4–5.

Proposed Intervenor GOO! is a public interest group dedicated to the protection of the Santa Barbara Channel and coastline from the deleterious impacts of oil development. Lyons Decl. ¶ 4. GOO!'s membership is comprised of approximately 1,500 individuals from the Santa Barbara area and surrounding counties. *Id.* GOO! was formed in the wake of the Santa Barbara Oil Spill of 1969, and throughout its existence, it has fought to protect California from further oil development and exploitation. *Id.*

Proposed Intervenor SBCAN is a non-profit organization dedicated to promoting social and economic justice; preserving environmental and agricultural resources; and creating sustainable communities. Hough Decl. ¶ 4. SBCAN has an email list of approximately 1,200 interested people as well as an estimated 120 active members. *Id.* ¶ 3. SBCAN focuses its efforts to protect Santa Barbara County's natural resources and community from the risks associated with oil and gas operations. *Id.* ¶ 4.

Proposed Intervenor Sierra Club is a national organization of over one million members, including more than 105,000 members in California and around 5,005 active members in the Santa Barbara-Ventura Chapter. Ellenberger Decl. ¶¶ 3, 5. Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the earth; practicing and promoting the responsible use of the earth's ecosystems and resources; educating and

7

enlisting humanity to protect and restore the quality of the natural and human environment; and using all lawful means to carry out these objectives. *Id.* ¶ 3. Consistent with its mission, Sierra Club is committed to the transition away from fossil fuels. *Id.* ¶ 4.

Proposed Intervenor SBCK is a non-profit public benefit corporation founded in 1999. Morton Decl. ¶ 3. SBCK's mission is to protect and restore the Santa Barbara Channel and its watersheds. *Id.* SBCK accomplishes its mission through science-based advocacy, education, fieldwork, enforcement, and community engagement. *Id.* SBCK and its members are committed to protect the Santa Barbara Channel from pollution threats such as coastal and offshore oil development. *Id.* ¶ 4.  SBCK has more than 2,000 members. *Id.* ¶ 3.

Proposed Intervenor CBD is a nonprofit conservation organization dedicated to the recovery of endangered, threatened, and rare species and their habitats through science, policy, and law. Teel Decl. ¶ 4. CBD has over 93,900 members worldwide, including 20,407 members who live in California, and 908 members who live in Santa Barbara, San Luis Obispo, and Kern counties. *Id.* ¶ 6. CBD has worked for many years to protect imperiled plants and wildlife, open space, air and water quality, and the overall quality of life for people in the region where the Onshore Pipelines are located. *Id.* ¶¶ 9–10.

Proposed Intervenor Wishtoyo was founded in 1995 to preserve and protect Chumash culture, the culture of first nations peoples; to protect natural and cultural resources essential to Chumash lifeways and all people; and to educate and instill in youth environmental values, awareness, and stewardship. Schmitt Decl. ¶ 3. Wishtoyo is a place, organization, and movement inspiring people to live in harmony with our Earth again. *Id.* Wishtoyo serves as a "rainbow bridge" linking Chumash and indigenous lifeways with the protection of natural and cultural resources, utilizing traditional ecological knowledge to provide environmental and cultural preservation, justice, education, research, and advocacy. *Id.* Wishtoyo has a longstanding record of protecting and restoring the coastal watersheds of Chumash homelands, the Santa Barbara Channel, and the Pacific Ocean. *Id.* ¶ 4.

8

All Proposed Intervenors have members who live, work, and/or recreate near or around the pipeline route. *See, e.g.* Katz Decl. ¶ 7; Morton Decl. ¶ 5; Ellenberger Decl. ¶ 5; Hough Decl. ¶ 3; Lyons Decl. ¶ 6; Bradshaw Decl. ¶ 12; Schmitt Decl. ¶¶ 11–12. Proposed Intervenors have an interest in protecting their communities from risky oil and gas operations. *See, e.g.* Katz Decl. ¶¶ 4–6; Morton Decl. ¶ 4; Ellenberger Decl. ¶ 4; Hough Decl. ¶¶ 4–5; Lyons Decl. ¶ 4; Teel Decl. ¶¶ 12–13; Schmitt Decl. ¶ 19.

Proposed Intervenors have firmly opposed the restart of the Onshore Pipelines and dedicated substantial resources to inform the public and provide evidence to California state agencies that Sable cannot be trusted to operate the Onshore Pipelines safely. *See, e.g.* Krop Decl. ¶¶ 13–36; Katz Decl. ¶¶ 10–14; Morton Decl. ¶¶ 9–15; Ellenberger Decl. ¶¶ 12–18; Hough Decl. ¶¶ 10–12; Lyons Decl. ¶¶ 11–14; Teel Decl. ¶¶ 15–21; Schmitt Decl. ¶ 13. They have organized demonstrations, shared information through newsletters and press releases, submitted written comments to and testified before various agencies, and filed lawsuits to prevent the dangerous restart of the Onshore Pipelines. *Id.* Ensuring that Sable cannot rely upon the Wright Order is critical to the mission of these organizations. *See, e.g.* Katz Decl. ¶¶ 4–6; Morton Decl. ¶¶ 3–4; Ellenberger Decl. ¶¶ 3–4; Hough Decl. ¶¶ 4–5; Lyons Decl. ¶¶ 4–5; Teel Decl. ¶ 23; Schmitt Decl. ¶ 19.

## LEGAL BACKGROUND

When deciding whether to grant motions for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), the Ninth Circuit applies a four-part test: (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*quoting Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)). Applicants who meet this test must be allowed to intervene. *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991).

Rule 24(a)(2) is generally interpreted "broadly in favor of proposed intervenors," by following "practical and equitable considerations." *Wilderness Soc'y*, 630 F.3d at 1179 (*quoting United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). This is because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id*. (*quoting City of Los Angeles*, 288 F.3d at 397–98). A proposed intervenor's "well-pleaded, nonconclusory" allegations in their motion to intervene and supporting documents must be taken "as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Additionally, under Rule 24(b), the court may permit anyone to intervene, upon "timely motion," who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Impvt. Co*., 310 U.S. 434, 459 (1940). A court has "broad discretion" to grant permissive intervention. *Orange County. v. Air Cal*., 799 F.2d 535, 539 (9th Cir. 1986).

## ARGUMENT

Proposed Intervenors satisfy the requirements for intervention as of right under Rule 24(a)(2). In the alternative, they meet the requirements of Rule 24(b) and request that the Court exercise its discretion to allow them to intervene.

## I.    The Court Should Grant Intervention as of Right.

### A.    The Motion to Intervene is Timely.

Courts weigh the following three factors in assessing timeliness of a motion to intervene: (1) the stage of the proceedings; (2) prejudice to existing parties; and (3) the reason for and length of delay in moving to intervene. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022) (*quoting Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)).

10

Proposed Intervenors' Motion is timely because it is filed at a very early stage of the litigation. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding motion timely when filed four months after complaint, two months after answer, and "before any hearings or rulings on substantive matters"); *see also Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011) (finding motion timely when no substantive proceedings had occurred). The filing date is just over a month after the State initiated this action on March 31, 2026. *See* Plaintiff's Complaint. There have been no hearings or rulings on substantive matters, and no discovery has occurred. There is no potential prejudice to the other parties and no delay in seeking leave to intervene. *W. Watersheds Project*, 22 F.4th at 840 (holding no unreasonable delay and motion was timely when filed "just three months after [holder of oil and gas leases] discovered" its leases were involved in the litigation).

For these reasons, the Motion is timely.

**B.    Proposed Intervenors Have Significantly Protectable Interests.**

Proposed Intervenors have "significantly protectable" interests relating to the subject of the action. *California Trout, Inc. v. United States Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1118–20 (C.D. Cal. 2015). The interest test does not require a "specific legal or equitable interest," nor that the interest be protected by the specific statutes under which the litigation is brought. *Id.* at 1118 (*quoting Wilderness Soc'y*, 630 F.3d at 1179 (citations omitted)). Instead, the test is satisfied if (1) "the interest is protectable under some law" and (2) "there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179 (*quoting Sierra Club*, 995 F.2d at 1484).

This test is met if an applicant will "suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). The Ninth Circuit has noted that this test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned

11

persons as is compatible with efficiency and due process." *California Trout, Inc.*, 115 F. Supp. at 1118–19 (*quoting Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted)).

Proposed Intervenors have significant protectable interests based both on their: (1) active participation in the many processes concerning restarting the Onshore Pipelines that are related to this litigation; and (2) their use and enjoyment of the affected environment.

### 1. Proposed Intervenors Participated in the Decision-making Processes.

An organization that was actively involved in the decision-making process leading to the litigation at issue has a significantly protectable interest sufficient for intervention as of right. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837–38 (9th Cir. 1996). In such circumstances, "there can be no serious dispute" concerning "the existence of a protectable interest on the part of the applicant." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th Cir. 1983).

Proposed Intervenors participated at every stage of the multiple administrative processes related to restarting the Onshore Pipelines, investing significant staff time and financial resources. *See, e.g.* Krop Decl. ¶¶ 13–36; Katz Decl. ¶¶ 10–14; Morton Decl. ¶¶ 9–15; Ellenberger Decl. ¶¶ 11–18; Hough Decl. ¶¶ 10–12; Lyons Decl. ¶¶ 11–14; Bradshaw Decl. ¶ 4; Teel Decl. ¶¶ 15–21; Schmitt Decl. ¶ 13. They advocated against restarting the Onshore Pipelines to every relevant agency with decision-making authority, participating in formal public processes (where available) and submitting letters even when agencies failed to provide a public process. *Id*. As part of their advocacy, the Proposed Intervenors convened a coalition of concerned groups and individuals to coordinate input. They also filed lawsuits to challenge agency decision-making. *Id*. Importantly, Proposed Intervenors have specifically challenged the federal government's role in usurping the State's authority over the Onshore Pipelines. Krop Decl. ¶ 35.

Proposed Intervenors' direct involvement in virtually all available opportunities to address restart of the Onshore Pipelines provides a clear basis for demonstrating protectable interests sufficient to support intervention of right. Their interests in the

12

outcome of the litigation are therefore direct, specific, and substantial. *See California ex rel. Lockyer*, 450 F.3d at 441 (*quoting Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156–57 (9th Cir. 1981)

                    2.      Proposed Intervenors Use and Enjoy the Affected Environment.

Specific interests in the enjoyment of nature and wildlife are significantly protectable for purposes of intervention. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (recognizing interest in "conserving and enjoying" an area); *see also United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008). Proposed Intervenors are environmental conservation organizations operating in Santa Barbara County and whose members live and recreate in the affected area. *See, e.g.* Katz Decl. ¶¶ 4, 7; Morton Decl. ¶ 5; Ellenberger Decl. ¶ 5; Hough Decl. ¶¶ 3–4; Lyons Decl. ¶ 4; Teel Decl. ¶¶ 12–13; Bradshaw Decl. ¶ 10; Schmitt Decl. ¶ 11. They have a significant protectable interest relating to the Wright Order given their decades of work to prevent oil and gas development that threatens the use and enjoyment of California's natural resources.

Proposed Intervenors have a long history of advocating for environmental protection in California with specific interests in protecting water quality, preserving biodiversity, and safeguarding local communities from harm caused by oil spills and other accidents. *See, e.g.* Katz Decl. ¶¶ 4–5; Morton Decl. ¶ 3; Ellenberger Decl. ¶ 4; Hough Decl. ¶ 4; Lyons Decl. ¶ 4; Teel Decl. ¶¶ 9–10; Schmitt Decl. ¶ 4. Their members live and work in communities along the route of the Onshore Pipelines. *See, e.g.* Katz Decl. ¶ 7; Morton Decl. ¶ 5; Ellenberger Decl. ¶ 5; Hough Decl. ¶ 3; Lyons Decl. ¶ 4; Bradshaw Decl. ¶ 10; Schmitt Decl. ¶ 14. Their members also hike, birdwatch, freedive, bike, snorkel, view wildlife and their habitat, and generally enjoy the scenic beauty of several areas along the pipeline route. *See, e.g.* Ellenberger Decl. ¶ 7; Morton Decl. ¶ 6; Hough Decl. ¶ 6 ("I travel east through Cuyama Valley to photograph landscapes there"); Lyons Decl. ¶ 6; Krop Decl. ¶ 7; Bradshaw Decl. ¶ 10; Schmitt Decl. ¶ 12. Due to their specific activities in the area, they have an interest in "conserving and enjoying" the

13

sensitive areas through which the Onshore Pipelines pass. *Citizens for Balanced Use*, 647 F.3d at 897.

Proposed Intervenors' enjoyment of this region would be severely impacted if Sable is permitted to operate the Onshore Pipelines pursuant to the Wright Order. The structurally flawed Onshore Pipelines are not safe to operate, require regular repair that negatively impacts the local environment, and are likely to cause future oil spills. *See, e.g.* Katz Decl. ¶¶ 8–9; Lyons Decl. ¶ 15; Bradshaw Decl. ¶ 18; Schmitt Decl. ¶ 15. The Wright Order purports to override California's comprehensive state environmental, pipeline safety, and coastal management laws, many of which were advocated for and supported by the Proposed Intervenors. *See* Plaintiff's Complaint ¶ 9; *See also, e.g.* Krop Decl. ¶¶ 44–45; *see Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."); *California Dump Truck Owners Ass'n*, 275 F.R.D. at 306.

In sum, Proposed Intervenors have demonstrated protectable interests sufficient to support intervention of right.

## C.    Disposition of This Case May Impair or Impede Proposed Intervenors' Interests.

As this Court has recognized, "[o]nce a court determines that an intervenor has a 'significantly protectable' interest in an action, the third prong is easily satisfied." *Cal. Sea Urchin Comm'n. v. Jacobson*, 2013 WL 12114517, at *3; *see also California ex rel. Lockyer*, 450 F.3d at 442. If Defendants prevail and Sable continues to rely upon the Wright Order to operate the Onshore Pipelines, Proposed Intervenors' ability to protect their interests— specifically in prohibiting the dangerous operation of oil and gas infrastructure and protecting the environment from oil spills or other impacts—would be severely curtailed. *See Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *3 (*citing Sagebrush Rebellion*, 713 F.2d at 528). An adverse decision would deprive Proposed Intervenors of their ability to stop or influence the operation of the defective Onshore

14

Pipelines, even though they are the ones who bear the most risk and would be saddled with the worst impacts of a future oil spill.

### D.    Existing Parties Do Not Adequately Represent Proposed Intervenors' Interests.

Courts address adequacy of representation according to three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted). "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate. *W. Watersheds Project,* 22 F.4th at 840 (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

While a rebuttable presumption of adequacy arises where parties have the same ultimate objective, or when the government acts on behalf of its constituency, that presumption can be rebutted by a compelling showing otherwise. *Citizens for Balanced Use*, 647 F.3d at 898. The "most important factor," ultimately, is "how the interest compares with the interests of existing parties." *Id.* (citation omitted). Here, Proposed Intervenors' interests may not be fully or adequately represented by the State, and they add necessary elements to the case.

#### 1.    <u>The State May Not Be Capable of or Willing to Make All of the Same Arguments as Proposed Intervenors.</u>

To demonstrate inadequate representation, it is not necessary at this early stage in the litigation for Proposed Intervenors to anticipate specific differences in potential argument or strategy; rather, it is enough to show that "because of the difference in interests, it is likely that [the State of California] will not advance the same arguments as [Proposed Intervenors]." *Berg*, 268 F.3d at 824. Here, the parties' interests differ such

15

that Proposed Intervenors cannot rely on the State to make arguments in support of their interests.

First, while the Proposed Intervenors are confident that the State will argue against the Wright Order on the grounds that it usurps state authority, it is far from certain that the State will strongly argue that the Onshore Pipelines pose an imminent threat to the environment. Indeed, California state agencies have helped facilitate the restart of the Onshore Pipelines by issuing Waivers for critical pipeline safety conditions and providing a ROE onto state property so that Sable could perform construction on the Onshore Pipelines. Krop Decl. ¶¶ 18, 23. The Waivers and ROE were issued despite Proposed Intervenors' warnings that Sable was not a responsible operator and overwhelming evidence showing that such approvals would put the environment at risk. *Id.* ¶¶ 16–20, 23–25, 30. Moreover, the State failed to provide for public comment before approving the Waivers and ROE. *Id.* ¶¶ 16–20; Teel Decl. ¶¶ 15–17. Instead, OSFM and State Parks approved the Waivers and ROE over the vigorous objections of Proposed Intervenors, calling into question whether the State possesses the same safety and environmental concerns that Proposed Intervenors have. *Id.* Based on the State's position during these processes, Proposed Intervenors are reasonably concerned that the State may not be willing to make the same arguments as they would in this case.

Second, Proposed Intervenors' interests are distinct from the State's interests, and they may take different positions on both the merits and any appropriate remedy. *See Nat'l Assoc. of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.*, No. 1:07cv0820 LJO DLB, 2007 WL 2757995, at *5 (E.D. Cal. Sept. 21, 2007) (finding environmental organizations and government entity "share[d] a general interest in public health" but "the [government entity] has a much broader interest in balancing the need for regulations with economic considerations," making it doubtful it would advance the same arguments as proposed intervenors). The Ninth Circuit has found such differences to be enough to overcome the presumption of adequate representation where the government "is required to represent a broader view than" the proposed intervenor. *Forest*

16

*Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *see also Berg*, 268 F.3d at 823.

Proposed Intervenors are organizations with specific, focused missions dedicated to environmental protection and preservation and enjoyment of the natural environment. *See, e.g.* Katz Decl. ¶ 4; Morton Decl. ¶ 3; Ellenberger Decl. ¶¶ 3–4; Hough Decl. ¶ 4; Lyons Decl. ¶ 4; Teel Decl. ¶ 4; Schmitt Decl. ¶ 19. Their members have localized interests in the areas and resources that are threatened by operation of the Onshore Pipelines *Id.* The State, in contrast, represents a variety of State-wide interests. The State has a broad constituency that includes individuals very supportive of the oil and gas industry, not solely those concerned about adverse environmental impacts. The State also has competing obligations and must weigh the State's energy needs against its duty to preserve the environment for the public enjoyment. The State must make difficult decisions, including whether to take risks with environmental safety to accommodate another public interest. The differences between the State's and Proposed Intervenors' interests could lead to fundamentally differing points of view with regards to the litigation. For example, the State may be tempted to settle the litigation with Defendants, which could jeopardize Proposed Intervenors' interests.

Finally, Proposed Intervenors' members are impacted by the Wright Order in unique and personal ways, which stands in contrast to the State's more general interest in defending their own authority from federal overreach. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998); *see* Schmitt Decl. ¶ 19 ("While the State's position is primarily grounded in its sovereign authority and regulatory interests over natural resources, our organization's mission centers on . . . the preservation of Native American cultural heritage, and the safeguarding of traditional ecological knowledge held by First Nations Peoples"). For example, Proposed Intervenors witnessed the devastating impacts and were directly involved in the cleanup efforts after the 2015 spill. *See, e.g.*, Morton Decl. ¶ 7, Krop Decl. ¶¶ 6–7, Lyons Decl. ¶¶ 7–10; Schmitt Decl. ¶ 16. The closed beaches, harm to

wildlife, and destruction of shoreline and subtidal habitat prevented Proposed Intervenors' members from enjoying a variety of recreational uses. *See, e.g.*, Ellenberger Decl. ¶ 7; Morton Decl. ¶ 7; Hough Decl. ¶ 6; Lyons Decl. ¶¶ 9–10; Krop Decl. ¶ 7; Bradshaw Decl. ¶ 10; Schmitt Decl. ¶ 11. Unlike the State, Proposed Intervenors recognized early on that Sable was not a trustworthy operator and could not be relied upon to follow agency directives or responsibly operate oil and gas infrastructure within the State of California. If the Onshore Pipelines fail again and oil spills into the surrounding environment, Proposed Intervenors' interests will be significantly impacted.

Further, the Wright Order is already impacting Proposed Intervenors in a unique manner because Sable has raised the Order and its reliance on the DPA in various proceedings involving Proposed Intervenors. Krop Decl. ¶¶ 38–44. The State is not involved in all these proceedings. For example, Sable recently asserted in litigation involving the County of Santa Barbara and some of the Proposed Intervenors that the Wright Order prevents the County from enforcing an ordinance protecting the environment and community from transfers of permits to companies such as Sable, who lack the requisite skills, resources, and financial capacity to safely operate. *Id.* ¶ 41. Proposed Intervenors' involvement and interest in this litigation is threatened by the Wright Order, and yet the State is not in a position to raise such concerns. Sable's use of the Wright Order in this and other proceedings impairs the ability of Proposed Intervenors to carry out their missions and represent the environmental interests of their members.

For these reasons, Proposed Intervenors have demonstrated that their interests differ from the State's much broader interests, that the State will not "undoubtedly make all of a proposed intervenor's arguments," and that the State may not be "capable and willing to make such arguments." *Arakaki*, 324 F.3d at 1086 (citation omitted).

          2.      <u>Proposed Intervenors Will Add Necessary Elements to the Case.</u>

The final factor likewise weighs in favor of intervention because Proposed Intervenors will contribute "necessary elements to the proceeding that other parties would

neglect." *Arakaki*, 324 F.3d at 1086 (citation omitted). Proposed Intervenors are organizations representing environmental interests that would not otherwise have a voice in this lawsuit. *See, e.g.* Katz Decl. ¶ 4; Morton Decl. ¶ 3; Ellenberger Decl. ¶¶ 3, 5; Hough Decl. ¶¶ 3–4; Lyons Decl. ¶ 4; Teel Decl. ¶ 23; Schmitt Decl. ¶ 19. Collectively, they represent tens of thousands of members concerned about the restart of an oil pipeline responsible for one of California's worst spills, and *that still retains the underlying flaw that caused the first spill. See, e.g.* Katz Decl. ¶¶ 4, 15; Morton Decl. ¶¶ 3–4; Ellenberger Decl. ¶¶ 3, 19; Hough Decl. ¶¶ 3, 13; Lyons Decl. ¶¶ 4, 16; Teel Decl. ¶ 6; Schmitt Decl. ¶ 3. These include community members who live, work, and/or recreate in the vicinity of the Onshore Pipelines. *See, e.g.* Katz Decl. ¶ 7; Morton Decl. ¶ 5; Ellenberger Decl. ¶ 5; Hough Decl. ¶ 3; Lyons Decl. ¶ 4; Teel Decl. ¶¶ 12–13; Schmitt Decl. ¶ 3. If intervention were denied, the Court would hear only the perspectives of the state and federal governments. The parties that stand to lose the most would not be represented.

In sum, all the requirements under Rule 24(a)(2) are met, and Proposed Intervenors have a right to intervene.

## II.   In the Alternative, Proposed Intervenors Satisfy the Standard for Permissive Intervention.

Courts may approve permissive intervention where (1) an applicant files a timely motion and (2) the applicant's claim or defense shares a common question of law or fact with the main action; and if such requirements are met, the court considers whether (3) intervention will not unduly delay or prejudice the adjudication of rights of the existing parties. Fed. R. Civ. P. 24(b)(1), (b)(3).  Proposed Intervenors meet all these requirements, and there are additional equitable considerations that weigh in favor of intervention.

### A.   Proposed Intervenors' Motion is Timely.

As explained above, the Motion to Intervene is timely.

19

**B.      Proposed Intervenors Satisfy the Requirement of a Common Question of Law or Fact.**

The common questions of law and fact prong of permissive intervention is to be "liberally construed." *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 383 (W.D. Wash. 2017) (citation omitted). Proposed Intervenors' arguments raise common questions of law and fact with the main action and readily satisfy this requirement. Like the State, Proposed Intervenors would argue issuance of the Wright Order violated the APA and U.S. Constitution. Accordingly, their arguments share common questions of law and fact with the main action. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173.

**C.      Proposed Intervenors Will Not Unduly Delay or Prejudice Parties.**

If granted intervention, Proposed Intervenors would agree to reasonable conditions or limitations on intervention, such as coordinating with the State to minimize duplication. See *Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *6. Accordingly, their participation raises no concern under this factor.

**D.      Equitable Considerations Weigh in Favor of Granting Intervention.**

In considering permissive intervention, courts may exercise discretion to assess issues such as "the nature and extent of the intervenors' interest" and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). As explained above, Proposed Intervenors spent a significant amount of time conducting research and advocacy in the interest of protecting the community and sensitive local resources from the risks and impacts of restarting the Onshore Pipelines. *See* Krop Decl. ¶¶ 13–36; Teel Decl. ¶¶ 15–17. They are therefore in a strong position to contribute to the Court's understanding of the issues in this case.

Equitable considerations warrant intervention because the State has taken different positions than the Proposed Intervenors regarding the Onshore Pipelines. Now that the

20

Wright Order purports to override that decision-making process and the State of California is challenging the Wright Order in court, Proposed Intervenors deserve to have a say in the matter. The outcome of this case will directly impact Proposed Intervenors for years to come and will establish a precedent that dramatically impacts the missions of their organizations.

### CONCLUSION

For the foregoing reasons, the Court should grant Proposed Intervenors' motion to intervene as of right, or, in the alternative, allow permissive intervention.

Respectfully submitted this 7th day of May, 2026.

*/s/ Margaret M. Hall*
Margaret M. Hall
Linda Krop
Jeremy M. Frankel
ENVIRONMENTAL DEFENSE CENTER
*Counsel for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

*/s/ Julie Teel Simmonds*
Julie Teel Simmonds
Emily Jeffers
Talia Nimmer
CENTER FOR BIOLOGICAL DIVERSITY
*Counsel for Center for Biological Diversity and Wishtoyo Foundation*

21

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 7, 2026

/s/ *Margaret M. Hall*
Margaret M. Hall
Linda Krop
Jeremy M. Frankel
ENVIRONMENTAL DEFENSE
CENTER
*Counsel for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

/s/ *Julie Teel Simmonds*
Julie Teel Simmonds
Emily Jeffers
Talia Nimmer
CENTER FOR BIOLOGICAL
DIVERSITY
*Counsel for Center for Biological Diversity and Wishtoyo Foundation*

22