LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
MARGARET M. HALL (Bar No. 293699)
mhall@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

JULIE TEEL SIMMONDS (Bar No. 208202)
jteelsimmonds@biologicaldiversity.org
EMILY JEFFERS (Bar No. 274222)
ejeffers@biologicaldiversity.org
TALIA NIMMER (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375
Oakland, CA 94612
Phone: (510) 844-7100
*Attorneys for Center for Biological
Diversity and Wishtoyo Foundation*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>and<br><br>ENVIRONNMENTAL DEFENSE CENTER, GET OIL OUT!, SANTA BARBARA COUNTY ACTION NETWORK, SIERRA CLUB, SANTA | Case No.: 2:26-cv-03396-SVW-SSCx<br><br>**DECLARATION OF MAUREEN ELLENBERGER IN SUPPORT OF PROPOSED INTERVENORS' MOTION TO INTERVENE**<br><br>Hon. Stephen V. Wilson<br><br>Hearing: June 8, 2026 |

BARBARA CHANNELKEEPER, CENTER FOR BIOLOGICAL DIVERSITY, and WISHTOYO FOUNDATION,

     Proposed Plaintiffs-Intervenors,

     v.

CHRIS WRIGHT, in his official capacity as Secretary of the U.S. Department of Energy; UNITED STATES DEPARTMENT OF ENERGY,

     Defendants.

Time: 1:30 p.m.
Place: Courtroom 10A

I, Maureen Ellenberger, hereby declare as follows:

1.  My name is Maureen Ellenberger. I am over eighteen years old. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto.

2.  My current address is 1401 Shoreline Drive, Santa Barbara, California 93109.  I have lived in Santa Barbara County for almost nine years.

3.  I have been a member of the Santa Barbara-Ventura Chapter of the Sierra Club ("Sierra Club") since 2023, and have served as the Chair since January 2025. Sierra Club is a national nonprofit organization of over one million members nationwide and over 105,000 members in California dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.

4.  Sierra Club is interested in this case because our members and their work will be impacted by this litigation. The Sierra Club has made longstanding efforts to support the transition away from oil—in Santa Barbara County, throughout the State of California, in state and federal waters off the California coast, and on a broader level. Sierra Club and its members are extremely concerned about the dangers posed by oil and gas drilling and transportation, its threats to the safety and health of those who live, learn, work, and recreate along the pipeline route, the risks of major accidents that would devastate the local environment, such as oil spills, and its contribution to the ongoing climate crisis. It is imperative to our organization's mission that the Court vacate Secretary Wright's order and issue a permanent injunction prohibiting any operator from relying on that order to operate the onshore pipelines without first obtaining the required state-law approvals and complying with the applicable court orders.

1

5.      I am familiar with the Santa Barbara-Ventura Chapter's membership records in my capacity as Chapter Chair. We currently have 5,005 active members of the chapter. Through the Santa Barbara-Ventura Chapter, Sierra Club has members who live, work, and recreate throughout Santa Barbara County in the region that would be affected by Sable's operation of the Santa Ynez Unit and onshore pipelines. In particular, Sierra Club has members who live, work, and recreate along the Gaviota Coast, the site of the onshore processing facilities and pipeline, and along the extended onshore pipeline route through northern Santa Barbara County.

6.      Personally, I moved to Santa Barbara County because I, along with my husband, wanted to spend our retirement outdoors, enjoying the beaches and coastal areas of our county. We both spend many hours walking along the Gaviota Coast beaches including the beaches at Refugio, El Capitan, and Gaviota.  In addition, we hike regularly on many of the trails that are adjacent to or cross over the pipeline, including those in the Arroyo Hondo preserve, Gaviota trails including Los Cruces, and at Baron Ranch.  Our home is located on the Mesa adjacent to Shoreline Park overlooking the ocean and we are on the beach daily watching the dolphins, whales in season, and enjoying the pristine beauty of the shoreline and cliffs.

7.      We purchased our home in Santa Barbara in September of 2015 in the immediate aftermath of the Plains All American pipeline spill. Upon becoming residents of Santa Barbara, we found that the Refugio and El Capitan areas were closed due to the spill, and oil flowed from Refugio Beach southward to Redondo Beach — a distance of over 150 miles — making clear that the impacts were not contained to a small area. The beaches directly below our home were also affected, and we — along with thousands of local Sierra Club members — were unable to walk on the beach or use it for any recreational purpose during that period. We were deeply concerned about future liabilities and long-term damage to the Santa Barbara coastline, including the destruction of wildlife habitat and the economic harm to the local fishing and tourism industries. While

2

conditions began to recover in 2016, concerns about air and water quality persisted due to the three offshore platforms that had been shut down and left idle following the spill.

8.    We also continued to worry about the safety of those idle wells and pipelines, which were constructed in the 1980s and early 1990s and were at or past their estimated functional life. I never imagined that these pipelines would be restarted. I am very concerned that another spill would bring potentially greater devastation to the beaches and coastal areas throughout the county.

9.    I learned from Plains All American Pipeline L.P.'s 2025 annual report that the previous pipeline operator incurred roughly $870 million in fines, damages, and legal fees arising from the 2015 spill. I have also read Sable Offshore Corporation's (Sable) 2025 annual report and recognized that Sable is an undercapitalized company that financed its $625 million purchase of the Santa Ynez assets almost entirely through a seller-financed loan from ExxonMobil itself. That debt has grown to over $900 million — now at 15% interest — and is due by March 2027, meaning Sable owes its seller over $900 million while simultaneously operating the exact same corroded pipeline that caused the 2015 spill. With over forty years of business experience and as a former CEO of multiple startup companies, I understand the realities of undercapitalized companies and the damage and unpaid bills they leave behind when a disaster occurs. I am gravely concerned that if another spill occurs, Sable will lack the financial capacity to pay the hundreds of millions of dollars in cleanup, restoration, and long-term economic damages that this county and its coastline would require.

10.    Sierra Club has a real concern about the risk of an oil spill. Our members witnessed the Plains All American Pipeline oil spill in 2015, and are aware of the tremendous risks and impacts that oil spills cause. We are concerned about Sable's financial capacity to respond to or clean up a spill.

11.    Sierra Club submitted comments, and I have personally testified at multiple hearings at both the county and state level regarding the dangers of restarting the Sable pipeline and the risks posed by allowing Sable Offshore to operate given its repeated

3

illegal actions and continued violations of state and county safety regulations. These hearings have included proceedings before the Santa Barbara County Planning Commission, the Santa Barbara County Board of Supervisors, the California State Lands Commission, and the California Coastal Commission on multiple occasions. At each of these proceedings, Sierra Club raised concerns about the safety of the pipeline infrastructure, Sable's pattern of non-compliance with applicable laws and regulations, and the threat that another oil spill would pose to the coastal environment, wildlife, and the communities and economy of Santa Barbara County. Many Sierra Club members, including our Chapter Director and Executive Committee members, also submitted comments and testified at these hearings.

12.    When Sable applied to the Office of the State Fire Marshal (OSFM), Sierra Club hired the Environmental Defense Center (EDC) to represent our organization in the matter. Sierra Club also signed on to comment letters alongside a coalition of other environmental organizations seeking a public review process from the agency. When OSFM issued State Waivers to Sable, Sierra Club authorized EDC to initiate litigation to challenge that approval.

13.    After the Pipeline and Hazardous Materials Safety Administration (PHMSA) purported to claim jurisdiction over pipeline restart from OSFM and approved Sable's Restart Plan and Emergency Special Permit applications, Sierra Club again retained EDC to represent it in seeking review of the agency's approvals.

14.    Sierra Club has also independently taken significant action in response to PHMSA's assertion of jurisdiction and its approval of the Emergency Special Permit authorizing restart of the pipelines involved in the 2015 Refugio Oil Spill. Sierra Club has actively engaged its members through emails, text messages, letters and meetings/rallies - requesting their support in messaging the U.S. Department of Transportation regarding the Emergency and Special Permits for Sable Offshore to restart. Members were asked to write letters in December 2025 regarding the transfer of responsibility for

4

restart from state jurisdiction to federal jurisdiction immediately after PHMSA asserted that it had exclusive authority on December 17, 2025.

15.    In February 2026, Sierra Club issued a call-to-action alert to all members and supporters of the Sierra Club Santa Barbara-Ventura Chapter, as well as to all coalition members throughout the Central Coast, urging them to contact U.S. Department of Energy directly to oppose the Emergency Special Permit and the restart of the Sable pipelines.

16.    On April 3, 2026, I signed a coalition letter on behalf of the Sierra Club Santa Barbara-Ventura Chapter, addressed to U.S. Department of Transportation Secretary Sean Duffy and PHMSA Administrator Paul Roberti, opposing Sable's pending application for a Special Permit (Docket No. PHMSA-2026-0464). The coalition letter, joined by over thirty organizations, urged PHMSA to deny the request on the grounds that it would violate federal law, endanger public safety, and threaten California's coastline, wildlife, and coastal economy.

17.    In addition, our organization has taken action in response to U.S. Energy Secretary Wright's order requiring Sable to restart the offshore pipelines under the Defense Production Act. On March 19, 2026, I served as press contact and co-organizer of a community candlelight vigil held at the Dolphin Fountain in Santa Barbara to protest the forced restart of the Sable pipeline under the Trump administration's Defense Production Act order. I issued a press release for the vigil and coordinated all media outreach and press coverage. I invited elected officials at the local, county, state, and federal level to participate. The vigil drew community members spanning multiple generations and representation from Congressman Salud Carbajal's office and numerous other elected officials. These actions reflect Sierra Club's continued and active opposition to the restart of these pipelines and our deep concern for the safety of our members and the communities and coastal environment along the pipeline route.

18.    Members also received requests to attend the California State Lands Commission emergency hearing via Zoom on March 16, 2026, authorizing the organization to pursue litigation against Sable after it restarted its pipelines without the state's permission. The Chapter and Legal Chairs have held multiple presentations and educational sessions and appealed to organizations including the Santa Barbara Yacht Club, Climate Fridays SB, as well as some faith based and school groups.

19.    Sierra Club seeks to intervene in the above captioned case because Secretary Wright's order is a direct threat to our mission and our work. Our ability to advocate for our members is dependent on the existence of a process that provides for public participation. Secretary Wright's order undermines that process and has allowed an irresponsible company to restart and operate a pipeline that is unsafe. Our members live, work, and recreate along the pipeline route and would likely be impacted if another spill were to occur. Secretary Wright's order makes that eventuality far more likely, and therefore, we want to ensure that his order is overturned.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed at Santa Barbara, California, on May 6, 2026.

Maureen Ellenberger
Chair for the Santa Barbara-Ventura Chapter
Sierra Club

6