Case 2:26-cv-03396-SVW-SSC   Document 24   Filed 05/11/26   Page 1 of 21   Page ID #:1338

LATHAM & WATKINS LLP
   Jessica Stebbins Bina (Bar No. 248485)
   *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
   Nicholas McDaniel (*pro hac vice* forthcoming)
   *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

HOLLAND & KNIGHT LLP
   Andrew Klair (Bar No. 334960)
   *andrew.klair@hklaw.com*
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: +1 415.743.6962
   James W. Noe (*pro hac vice* forthcoming)
   *jim.noe@hklaw.com*
   Rafe Petersen (*pro hac vice* forthcoming)
   *rafe.petersen@hklaw.com*
   Matthew Z. Leopold (*pro hac vice* forthcoming)
   *matt.leopold@hklaw.com*
800 17th Street N.W., Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525

*Attorneys for Proposed Intervenors Sable Offshore Corp. and Pacific Pipeline Company*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF CALIFORNIA,<br><br>        Plaintiff,<br><br>    v.<br><br>CHRIS WRIGHT, in his official capacity as Secretary of the U.S. Department of Energy; UNITED STATES DEPARTMENT OF ENERGY,<br><br>        Defendants. | Case No. 2:26-cv-03396-SVW-SSCx<br><br>**UNOPPOSED**<br><br>**SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S NOTICE OF MOTION, MOTION TO INTERVENE, AND SUPPORTING MEMORANDUM**<br><br>Date: June 8, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 8, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Stephen V. Wilson in Courtroom 10A of the U.S. District Court for the Central District of California, Western Division, located at 350 West 1st Street, Suite 4311, Los Angeles, CA 90012, Proposed Intervenors Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") pursuant to Federal Rule of Civil Procedure 24, will and hereby does respectfully move the Court for an order granting Sable's intervention as a defendant.

Pursuant to Local Rule 7-3, Counsel for Sable has conferred with counsel for the parties regarding this motion. Both California and the United States have stated that they do not intend to take a position on Sable's motion for intervention. As neither party intends to file an opposition, Sable is filing the motion as unopposed.

This motion is made pursuant to this Notice of Motion and Motion to Intervene, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Jessica Stebbins Bina and J. Caldwell Flores, the pleadings and records on file herein, and upon all other arguments and evidence that may be presented to this Court.

Dated: May 11, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*
LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
jessica.stebbinsbina@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

US-DOCS\171305674

2

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION AND
MOTION TO INTERVENE

BABST CALLAND
 Nicholas McDaniel (*pro hac vice* forthcoming)
 *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

HOLLAND & KNIGHT LLP
 Andrew Klair (Bar No. 334960)
 *andrew.klair@hklaw.com*
560 Mission St., Suite 1900
San Francisco, CA 94105
Telephone: +1 415.743.6962
 James W. Noe (*pro hac vice* forthcoming)
 *jim.noe@hklaw.com*
 Rafe Petersen (*pro hac vice* forthcoming)
 *rafe.petersen@hklaw.com*
 Matthew Z. Leopold (*pro hac vice* forthcoming)
 *matt.leopold@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525

*Attorneys for Proposed Intervenors Sable Offshore Corp. and Pacific Pipeline Company*

# TABLE OF CONTENTS

**Page**

I.   **INTRODUCTION** ...................................................................................1

II.  **BACKGROUND** ...................................................................................2

   A.   The Santa Ynez Unit And The Santa Ynez Pipeline System ....................................................................................2

   B.   Sable Has Significant Protectable Interests Related To The Subject Of This Action ..............................................3

   C.   Executive And Administrative Actions And DPA Issuance ...................................................................................4

   D.   The Complaint ...........................................................................5

III. **ARGUMENT** ........................................................................................6

   A.   Sable Is Entitled To Intervention As A Matter Of Right ....................6

      1.   Sable's Intervention Motion Is Timely .....................................6

      2.   Sable Has Significant Protectable Interests Related To The Subject Of This Action ..............................................7

      3.   Sable's Ability To Protect Its Interests Would Be Impaired By A Decision In California's Favor .......................9

      4.   Existing Parties Will Not Adequately Represent Sable's Interests .....................................................................10

   B.   Alternatively, This Court Should Grant Permissive Intervention ..........................................................................12

   C.   Sable Has Complied With Federal Rule Of Civil Procedure 24(c) .......................................................................13

IV.  **CONCLUSION** .................................................................................13

US-DOCS\171305674

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano,*

324 F.3d 1078 (9th Cir. 2003)........................................................................ 10

*Beckman Indus., Inc. v. Int'l Ins. Co.,*

966 F.2d 470 (9th Cir. 1992)......................................................................... 13

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*

647 F.3d 893 (9th Cir. 2011)........................................................... 7, 9–12

*Env't Def. Ctr. v. Bureau of Safety & Env't Enf't,*

14-cv-9281-PSG-SHx, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015)............ 9, 10

*Nw. Forest Res. Council v. Glickman,*

82 F.3d 825 (9th Cir. 1996)............................................................................ 7

*Perry v. Proposition 8 Official Proponents,*

587 F.3d 947 (9th Cir. 2009)......................................................................... 12

*S. Utah Wilderness All. v. U.S. Dep't of the Interior,*

No. 2:23-CV-00804, 2024 WL 2111755 (D. Utah May 10, 2024) ....................... 8

*Sable Offshore Corp. v. County of Santa Barbara,*

No. 25-4165-DMG (AGRx), 2025 WL 2412147 (C.D. Cal. July 25, 2025)......... 7

*Sequoia Forestkeeper v. Price,*

No. 1:16-CV0759 AW JLT, 2017 WL 56655 (E.D. Cal. Jan. 5, 2017) .............. 11

*Sequoia Forestkeeper v. Watson*

1:16-CV-1865 AWI JLT, 2017 WL 4310257 (E.D. Cal. Sept. 28, 2017)....... 9, 11

*Sierra Club v. EPA,*

995 F.2d 1478 (9th Cir. 1993)......................................................................... 6

*Sw. Ctr. for Biological Diversity v. Berg,*

268 F.3d 810 (9th Cir. 2001)................................................................ 6, 8, 12

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

US-DOCS\171305674

*Trbovich v. United Mine Workers*,

   404 U.S. 528 (1972) ................................................................................. 10

*United States v. Oregon*,

   839 F.2d 635 (9th Cir. 1988) .................................................................. 10

*W. Watersheds Project v. Haaland*,

   22 F.4th 828 (9th Cir. 2022) .................................................................. 10

*Wilderness Soc'y v. U.S. Forest Serv.*,

   630 F.3d 1173 (9th Cir. 2011)............................................................ 6, 7, 10

*Mont. Wildlife Fed'n v. Haaland*,

   No. 20-35793, 2022 WL 42794 (9th Cir. Jan. 5, 2022)......................... 11

*Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.*,

   No. 10-0254-WS-C, 2010 WL 5139101 (S.D. Ala. Dec. 9, 2010)...... 12

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*,

   695 F.3d 1310 (Fed. Cir. 2012)............................................................ 11

**Statutes**

5 U.S.C. § 551 ............................................................................................ 2, 8

28 U.S.C. § 1331 .......................................................................................... 12

50 U.S.C. § 4501 ........................................................................................... 1

**Rules**

Fed. R. Civ. P. 24 ................................................... 1–2, 6, 8–10, 12, 13

**Regulations**

91 Fed. Reg. 8949 (Feb. 24, 2026) ............................................................ 4

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

US-DOCS\171305674

## I.    **INTRODUCTION**

The State of California asks this Court to prohibit the U.S. Department of Energy and Secretary Chris Wright (collectively, the "United States"), and anyone operating as their agents or acting in concert with them, from relying on an Order that Secretary Wright issued under the Defense Production Act ("DPA Order"), 50 U.S.C. § 4501 et seq., to commence transportation services for hydrocarbons from the Santa Ynez Unit ("SYU") through the interstate pipeline system running from the SYU to the Pentland Station terminal, known as the Santa Ynez Pipeline System ("SYPS"). ECF 1 ¶ 3. Though not named as a defendant, Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") are the target of California's requested relief. Sable is the lessee and operator of the SYU and the operator of the SYPS, and it has reasonably relied on the DPA Order to immediately resume operations of the SYPS as directed. California's challenge to the DPA Order accordingly directly impairs Sable's legally protectable interest in operating the SYPS in accordance with the DPA Order and indirectly threatens Sable's legally protectable interest in producing hydrocarbons from the SYU.

For these reasons and those set forth below, Sable moves this Court for intervention of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, permissive intervention under Federal Rule of Civil Procedure 24(b). Sable satisfies all requirements for intervention of right: Sable's motion is timely; Sable has significant, legally protectable interests at stake in this action; a decision in California's favor in this action could significantly impair Sable's interests given that California seeks vacatur of the DPA Order and cessation of SYPS operations; and Sable's unique, private interests in the DPA Order are not adequately represented by the United States. Sable also satisfies all requirements for permissive intervention: there is an independent ground for jurisdiction because California challenges the DPA Order under the U.S. Constitution and Administrative Procedure

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

Act, 5 U.S.C. § 551 et seq.; Sable's motion is timely; and Sable would defend its interest in operating the SYPS in accordance with the DPA Order.

## II.   BACKGROUND

### A.   The Santa Ynez Unit And The Santa Ynez Pipeline System

The SYU consists of 16 federal leases issued by the U.S. Department of the Interior, including three offshore oil platforms located five to nine miles offshore in federal waters north of Santa Barbara, California: the Hondo, the Harmony, and the Heritage. *See* Declaration of J. Caldwell Flores ¶ 3 ("Flores Decl."). These assets were previously owned by Exxon Mobil Corporation ("Exxon") and Mobil Pacific Pipeline Company (together with Exxon, "EM").

The SYPS is a single integrated and continuous pipeline system for moving oil from the SYU onshore and then inland. *Id.* ¶ 4. The SYPS primarily comprises offshore subsea pipelines that transport crude oil from the SYU through a wholly owned onshore midstream processing facility in Las Flores Canyon that processes the crude oil, which is then transported through the onshore segments of the system to Pentland Station in Kern County, California. *Id.* Two of the onshore pipeline segments are known as CA-324 and CA-325 (the "Pipeline Segments"). *Id.*

In 2015, before Sable owned the pipeline segments, a leak along Segment CA-324 resulted in the Refugio oil spill. *Id.* ¶ 6. PHMSA ordered a temporary halt to oil flow through Segments CA-324 and CA-325 while pipeline conditions were evaluated. In 2020, the prior operator, the United States, and California entered into a Consent Decree to resolve claims related to the spill. *See* ECF 16-1, Ex. 2. In exchange for civil penalties, damages payments, and compensation, the parties agreed on a path to resume oil transportation through Segments CA-324 and CA-325. *Id.* at 29, 86–99.

**B.** **Sable Has Significant Protectable Interests Related To The Subject Of This Action**

On February 14, 2024, Sable acquired the leases and other assets constituting the SYU in federal waters offshore California, the Las Flores Canyon midstream processing facility, and 100% of the equity of Pacific Pipeline Company, which owned the Pipeline Segments of the SYPS (the "Purchase Agreement"). Flores Decl. ¶ 9.

Since acquiring the SYU and the SYPS, Sable has diligently invested in, repaired, and upgraded them to facilitate the resumption of production from the SYU and to ensure the safe resumption of transportation through the SYPS. *Id.* ¶ 9. Sable has worked with both state and federal regulators, including those at the California Office of the State Fire Marshal ("OSFM") and the federal Department of Transportation's Pipeline and Hazardous Materials Safety Administration ("PHMSA"), to ensure the Pipeline Segments are repaired and maintained in a manner consistent with the Consent Decree and all applicable law. *Id.* ¶ 10.

For example, Sable conducted physical inspection, repair, and maintenance activities along the SYPS to remediate certain anomalous conditions detected during inspections conducted by the prior owner. *Id.* ¶ 11. Sable performed over 200 anomaly repairs along the SYPS under the direct oversight of OSFM personnel. *Id.* ¶ 11. Sable also installed 27 safety valves along the SYPS and conducted several hydrotests to confirm that the SYPS could be operated at pressures in exceedance of the defined maximum operating pressures for both short periods ("spike" hydrotests) and longer durations. *Id.* ¶¶ 12, 19. In short, Sable has expended significant time and resources to ensure the SYPS could be safely returned to service.

In November 2025, due to Sable's unified ownership and operation of the integrated SYPS, including those portions originating on the Outer Continental Shelf, PHMSA redesignated the SYPS as an interstate pipeline and resumed federal

oversight on that basis. *See id.* ¶¶ 25–27. PHMSA reviewed and approved Sable's Restart Plan, and granted Sable an emergency Special Permit imposing heightened safety standards which matched special conditions previously imposed by OSFM. *See id.* ¶¶ 28–30. Sable has since applied for a non-emergency Special Permit on substantially identical terms, and PHMSA noticed that permit for public comment, which comment period closed on April 3, 2026. *See* 91 Fed. Reg. 8949, 8949 (Feb. 24, 2026). Sable is complying with all terms of the emergency Special Permit while it awaits PHMSA action on the non-emergency Special Permit. *See* Flores Decl. ¶ 31.

**C.      Executive And Administrative Actions And DPA Issuance**

On January 20, 2025, President Trump issued Executive Order 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025), declaring a national emergency on the basis that the "United States' insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy." *Id.* at 8434. President Trump found that, "[i]n an effort to harm the American people, hostile state and non-state foreign actors have targeted our domestic energy infrastructure, weaponized our reliance on foreign energy, and abused their ability to cause dramatic swings within international commodity markets. An affordable and reliable domestic supply of energy is a fundamental requirement for the national and economic security of any nation." *Id.* at 8433. President Trump further determined that these problems are most pronounced on the United States' West Coast. *Id.* at 8434.

On March 13, 2026, President Trump issued an Executive Order titled, *Adjusting Certain Delegations Under the Defense Production Act*, which delegated certain authorities of the President under the DPA to the Secretary of Energy. 91 Fed. Reg. 13199 (Mar. 13, 2026). That same day, Secretary Wright issued an order pursuant to Title I of the DPA, directing Sable to immediately restart the SYPS.

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

Pursuant to the DPA Order, Sable resumed the transportation of hydrocarbons through the SYPS according to the Restart Plan beginning on March 14, 2026.

### D.    The Complaint

This Complaint, ECF 1, is California's latest salvo in a litigation campaign designed to halt a vital energy project in its own state. The claims center on the DPA Order, which California characterizes as unlawful largely because it requires Sable to resume operations of the SYPS notwithstanding California's preferred regulatory outcome. But stripped of rhetoric, the Complaint seeks to invalidate a federal order issued under delegated authority of the President that Sable is obligated to follow and upon which Sable has reasonably relied, among other federal approvals, to resume operations critical to its business and contractual obligations.

The Complaint repeatedly places Sable at the center of the dispute, alleging that Sable requested the federal action, relied on the challenged order to restart operations, and continues to operate pursuant to that order. The Complaint also raises speculative allegations about the preemptive effect that the DPA Order might have on other state regulation. The relief that California seeks—a declaration that the DPA Order is unlawful and an order enjoining Defendants from invoking the DPA Order to authorize or compel operation of the SYPS, ECF 1 at 35-36—could directly impair Sable's ability to operate its facilities. Indeed, California wishes to halt implementation of the DPA Order for the pendency of this proceeding, as requested in its May 1, 2026, Notice of Motion and Motion for Preliminary Injunction and Stay Against All Defendants, ECF 16, seeking to prevent implementation of the DPA Order and enjoining the United States and persons acting in concert with the United States or on its behalf from compelling the flow of oil through the Pipeline Segments. This alone demonstrates the need for Sable to intervene so that it can protect its interests immediately during this proceeding and thereafter.

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

## III.   ARGUMENT

### A.   Sable Is Entitled To Intervention As A Matter Of Right

Under Federal Rule of Civil Procedure 24(a)(2), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

In determining whether an applicant meets the requirements of Rule 24(a)(2), district courts in the Ninth Circuit apply a four-part test: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA,* 995 F.2d 1478, 1481 (9th Cir. 1993)) (confirming that intervention as of right shall be granted whenever the four elements are met). Courts must apply "[a] liberal policy in favor of intervention," *id.* at 1179 (citation omitted), "guided primarily by practical considerations, not technical distinctions," *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001) (citation and internal quotation marks omitted).

As discussed below, Sable meets each of these factors to permit intervention as of right.

#### 1.   Sable's Intervention Motion Is Timely

The "traditional features" of a timely intervention motion are that the motion "was made at an early stage of the proceedings, the parties would not have suffered

6

prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings." *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011). Sable's motion is timely. Sable is moving to intervene immediately upon learning of California's Motion for Preliminary Injunction, which comes less than six weeks after California filed its Complaint and before any substantive proceedings have taken place.[1] *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (intervention was timely when undertaken shortly after answer filed and before any proceedings had taken place); *Sable Offshore Corp. v. County of Santa Barbara*, No. 25-4165-DMG (AGRx), 2025 WL 2412147, at *3 (C.D. Cal. July 25, 2025) (holding that a motion to intervene was "undoubtedly timely" when filed only one month after the filing of the complaint). Sable moreover will abide by all existing deadlines, including the briefing schedule for California's Motion for Preliminary Injunction.

Sable thus satisfies the timeliness requirement for intervention of right.

### 2. Sable Has Significant Protectable Interests Related To The Subject Of This Action

To determine whether an intervenor has a "significantly protectable" interest in the subject of the action, "the operative inquiry [is] whether the 'interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *Wilderness Soc'y*, 630 F.3d at 1180–81. No specific legal or equitable interest is required, and the intervenor's interest "need not be protected by the statute under which the litigation is brought." *Id.* at 1179.

[1] California initially filed this action in the Northern District of California on March 23, 2026. *See California v. Wright*, No. 26-cv-02500 (N.D. Cal.). After that court issued an Order to Show Cause requiring California to show cause why it was the proper venue, *see California v. Wright*, No. 26-cv-02500, ECF 3, California voluntarily dismissed that action and refiled it in this district.

Sable has significant protectable property, economic, and contractual interests that are directly related to the subject of this action. The DPA Order that is the subject of California's Complaint and pending Motion for Preliminary Injunction requires Sable to transport hydrocarbons from its offshore oil and gas leases in the SYU through its SYPS. The SYU leases issued by the federal government are legally protectable "license[s]" under the Administrative Procedure Act, *see* 5 U.S.C. § 551(8) ("'[L]icense' includes the whole or a part of an agency permit, certificate, approval, registration . . . or other form of permission"), and transportation through the SYPS is currently the only avenue to get production from the SYU to market. Furthermore, since acquiring these assets, Sable has diligently invested in and upgraded the facilities, as appropriate, to facilitate a restart of production from the SYU and transportation through the SYPS. "To date, Sable has invested over $1.4 billion, endeavoring to resume SYU production and SYPS transportation after a more than decade-long period of dormancy." Flores Decl. ¶ 9. As described in Section II.B above, Sable has also made substantial investment of time and resources into safely resuming operations, including numerous inspections and repairs, drills, and engagement with various regulators. Moreover, the expected revenue from production of oil from the SYU and transportation of oil through the SYPS is estimated to be $4.73 million per day (or $143.86 million per month), which would immediately convert to lost profit if transportation through the SYPS were to be halted. *Id.* ¶ 54.

Courts routinely find that Rule 24(a)(2) recognizes and protects property interests of this nature. *See, e.g., S. Utah Wilderness All. v. U.S. Dep't of the Interior*, No. 2:23-CV-00804, 2024 WL 2111755, at *3 (D. Utah May 10, 2024) (holder of oil-and-gas leases was entitled to intervene in suit challenging leases; owning challenged leases "alone" was sufficient to satisfy burden for significant protectable interest prong of intervention standard); *Sw. Ctr. for Biological Diversity*, 268 F.3d

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

at 820–21 (finding proposed intervenor had a protectable interest where lawsuit implicated "projects that are in the pipeline for design and mitigation . . . and approval" because "[c]ontract rights are traditionally protectable interests"); *Env't Def. Ctr. v. Bureau of Safety & Env't Enf't*, 14-cv-9281-PSG-SHx, 2015 WL 12734012, at *3 (C.D. Cal. Apr. 2, 2015) (finding proposed intervenor Exxon's "personal financial interest" in the Santa Ynez Unit a significantly protectable interest because it "invested significant resources in obtaining" permits); *Sequoia Forestkeeper v. Watson*, 1:16-CV-1865 AWI JLT, 2017 WL 4310257, at *2 (E.D. Cal. Sept. 28, 2017) (holding proposed intervenor had protectable interest in National Environmental Policy Act action where intervenor possessed contracts to implement projects that were subject of litigation).

As previously recognized by federal courts under analogous circumstances, Sable thus has significantly protectable interests in the SYPS operations that are directly challenged in this action.  If transportation through the SYPS is halted, production from the SYU would be stranded for the foreseeable future.

### 3. Sable's Ability To Protect Its Interests Would Be Impaired By A Decision In California's Favor

The disposition of this matter threatens to impair Sable's interests in ongoing and future operations. Under the third element of the Rule 24(a)(2) inquiry, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment)). A party is even entitled to intervene in an action that *potentially* threatens its interests. *See id*. at 900 ("[I]ntervention of right does not require an absolute certainty that a party's interests will be impaired.").

Here, the threat of impairment is obvious. California asks this Court to hold that the DPA Order is unlawful and does not authorize Sable to operate the SYPS.

US-DOCS\171305674

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

*See* ECF 1 ¶¶ 1–3. Indeed, California's Motion for Preliminary Injunction seeks to enjoin the United States and any persons acting on its behalf from enforcing or relying upon the DPA Order to authorize or compel the flow of oil through the SYPS. ECF 16 at 2. A decision in California's favor might therefore prevent Sable from operating the SYPS in which it has invested hundreds of millions of dollars, which would indirectly cause Sable to shut in production at the SYU. *See Wilderness Soc'y*, 630 F.3d at 1180; *see also Env't Def. Ctr.*, 2015 WL 12734012, at *3 ("The relief sought by Plaintiff would undoubtedly have a 'significant detrimental impact on [Exxon's]' interests in its Santa Ynez Unit leases and permits."). If Sable is not made party to this action, Sable faces the prospect of having no legal means to challenge the relief California seeks while it remains in effect for whatever untold duration. *See United States v. Oregon*, 839 F.2d 635, 639 (9th Cir. 1988) (holding that intervention is appropriate when intervenor cannot obtain effective remedies in separate or subsequent litigation).

Sable's ability to protect its interests in the operation of the SYPS under the DPA Order and, indirectly, production from the SYU, thus will be practically impaired if not permitted to intervene.

4.    Existing Parties Will Not Adequately Represent Sable's Interests

To satisfy the fourth element of the Rule 24(a)(2) inquiry, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Indeed, the Ninth Circuit has held that even a trade group with "the same 'ultimate objective' of upholding the [government's] lease sales" for oil and gas cannot adequately represent the interests of an individual lessee. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 841–42 (9th Cir. 2022) (holder of oil-and-gas

leases was entitled to intervene as of right in case challenging leases, because "as a party with a legally protected interest in contract rights with the federal government, [the individual oil-and-gas lessee] would offer a necessary element to the proceeding that other parties would neglect"); *see also Mont. Wildlife Fed'n v. Haaland*, No. 20-35793, 2022 WL 42794, at *1 (9th Cir. Jan. 5, 2022) (reversing district court's denial of leaseholder's motion to intervene in lawsuit challenging lease sale of 24,000 acres of intervenor's oil-and-gas lease, finding trade organization could not adequately represent leaseholder's interest). Although a presumption of adequate representation applies when the government is a party, *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012), that presumption is overcome where interests diverge, *id.* at 1317.

In this case, the United States does not share Sable's interests in this action. To determine adequacy of representation, courts in the Ninth Circuit consider the following: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). The public interest represented by government parties is not "identical to the individual parochial interest" of private parties by virtue of "both entities occupy[ing] the same posture in the litigation." *See id.* at 899. Government agencies advance the "broad public interest." *See Watson*, 2017 WL 4310257, at *3; *Sequoia Forestkeeper v. Price*, No. 1:16-CV0759 AW JLT, 2017 WL 56655, at *1 (E.D. Cal. Jan. 5, 2017). In contrast, Sable's interest in this matter is centered on protecting its property, contractual, and overall financial interests relating to the SYU and SYPS. Because the United States does not share Sable's unique interests in this action, it may be incapable of making, and indeed unwilling to make, arguments that advance and

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

protect Sable's interests as a private party. Even where the United States and Sable may share a common litigation posture, they "do not have sufficiently congruent interests" to warrant a finding of adequate representation. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 823; *see also Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.*, No. 10-0254-WS-C, 2010 WL 5139101, at *3 (S.D. Ala. Dec. 9, 2010) (holding that oil and gas lessee meets "minimal" requirement of showing inadequacy of representation because lessee has "narrowly focused, direct and specific interest in [] controversy").

As the owner and operator of the SYU and the SYPS, Sable is uniquely positioned to provide relevant information to the Court to address the merits and potential ramifications of California's arguments and requested relief. As such, Sable meets its "minimal" burden of demonstrating that the United States' representation of Sable's protectable interests may be inadequate, and Sable must be granted intervention. *See Citizens for Balanced Use*, 647 F.3d at 898-99.

Sable thus is not adequately represented by the existing parties to this Action, meaning that it satisfies all requirements for intervention of right under Rule 24(a)(2).

**B.      Alternatively, This Court Should Grant Permissive Intervention**

In the alternative, this Court should allow Sable to intervene because Sable also meets all the requirements for permissive intervention under Rule 24(b). Rule 24(b)(1)(B) provides that on timely motion, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In determining whether to grant permissive intervention, district courts in the Ninth Circuit apply a three-part test: "(1) independent grounds for jurisdiction exist; (2) the request is timely; and (3) the applicant's claim or defense and the main action share common questions of law or fact." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009).

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Sable satisfies the standard for permissive intervention under Rule 24(b). *First*, there are independent grounds for jurisdiction under 28 U.S.C. § 1331 because California has challenged the DPA Order under the U.S. Constitution and Administrative Procedure Act. *Second*, Sable's request is timely for the reasons discussed in the context of intervention of right. *Third*, Sable's defense of its right to operate the SYPS will share common questions of law and fact with California's challenge to the DPA Order. And, *fourth*, Sable's early intervention and agreement to be bound by all existing deadlines means that the original parties' rights will not be unduly delayed or prejudiced.

In the event that this Court declines to permit intervention as of right, Sable thus requests that the Court grant Sable permissive intervention due to its significant interests at issue in this matter.

### C.   Sable Has Complied With Federal Rule Of Civil Procedure 24(c)

District courts within the Ninth Circuit may grant intervention without a formal pleading where "the court was otherwise apprised of the grounds" for intervention. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992). Sable has met this standard by lodging with its motion a proposed opposition to California's Motion for Preliminary Injunction that apprises the Court and the existing parties of its grounds for intervention and position in this litigation. Sable will also file a formal pleading in intervention if required by the Court.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Sable respectfully requests that this Court grant its unopposed motion to intervene as of right or, in the alternative, to grant permissive intervention.

Dated:  May 11, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*
LATHAM & WATKINS LLP
  Jessica Stebbins Bina (Bar No. 248485)
  *jessica.stebbinsbina@lw.com*
  10250 Constellation Blvd., Suite 1100
  Los Angeles, CA 90067
  Telephone:  +1 424.653.5500
  Facsimile:   +1 424.653.5501

BABST CALLAND
  Nicholas McDaniel (*pro hac vice* forthcoming)
  *nmcdaniel@babstcalland.com*
  505 Ninth St., NW, Suite 602
  Washington, DC 20004
  Telephone:  +1 202.853.3455
  Facsimile:   +1 202.853.3491

HOLLAND & KNIGHT LLP
  Andrew Klair (Bar No. 334960)
  *andrew.klair@hklaw.com*
  560 Mission St., Suite 1900
  San Francisco, CA 94105
  Telephone: +1 415.743.6962
    James W. Noe (*pro hac vice* forthcoming)
    *jim.noe@hklaw.com*
    Rafe Petersen (*pro hac vice* forthcoming)
    *rafe.petersen@hklaw.com*
    Matthew Z. Leopold (*pro hac vice* forthcoming)
    *matt.leopold@hklaw.com*
  800 17th St., NW, Suite 1100
  Washington, D.C. 20006
  Telephone: +1 202.469.5525

*Attorneys for Proposed Intervenors Sable Offshore Corp. and Pacific Pipeline Company*

US-DOCS\171305674

CASE NO. 2:26-cv-03396-SVW-SSCx
SABLE'S UNOPPOSED NOTICE OF MOTION
AND MOTION TO INTERVENE

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Proposed Intervenors Sable Offshore Corp. and Pacific Pipeline Company, hereby certifies that this Proposed Opposition to Motion for Preliminary Injunction and Stay contains 4,125 words, which complies with the word limit for Local Rule 11-6.1.

Dated: May 11, 2026                         /s/ Jessica Stebbins Bina

                                            Jessica Stebbins Bina

US-DOCS\171305674