ROB BONTA
Attorney General of California
JEREMY BROWN (SBN 269159)
Supervising Deputy Attorney General
ALICIA ROESSLER (SBN 219623)
REBECCA HUNTER (SBN 356311)
STACY LAU (SBN 254507)
MARY HALEY OUSLEY (SBN 332711)
BRIAN CALAVAN (SBN 347724)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1256
  Telephone: (213) 269-6767
  Fax: (213) 897-2638
  E-mail: Jeremy.Brown@doj.ca.gov
  Alicia.Roessler@doj.ca.gov
  Rebecca.Hunter@doj.ca.gov

*Attorneys for Plaintiff*
*State of California*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br><br>*Plaintiff,*<br><br>v.<br><br>**CHRIS WRIGHT,** in his official capacity as Secretary of the U.S. Department of Energy; **UNITED STATES DEPARTMENT OF ENERGY,**<br><br>*Defendants.* | Case No. 2:26-cv-3396-SVW-SSCx<br><br>**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND STAY AGAINST ALL DEFENDANTS**<br><br>Date:          June 1, 2026<br>Time:          1:30 p.m.<br>Courtroom:  10A, 10th Floor<br>Judge:         Hon. Stephen V. Wilson<br>Trial Date:   Not Set<br>Action Filed: March 31, 2026 |

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................................1

Argument .....................................................................................................1

    I.    The Wright Order Is Reviewable...........................................................1

        1.    The Wright Order Is Not Unreviewable Presidential Action. ...........................................................................2

        2.    This Motion Does Not Concern Judgments "Committed to Agency Discretion," and California Does Not Lack Standing. ...................................................4

    II.    California Is Likely To Succeed on the Merits....................................5

        A.    The Wright Order Is Not a Valid Priorities and Allocations Order Under the DPA..................................5

            1.    The Wright Order Is Not a Prioritization Order..............6

            2.    The Wright Order Is Not an Allocation Order. ................6

            3.    The Wright Order Fails To Comply with the Department of Energy's Regulatory Requirements for Allocation Orders..........................................................7

        B.    Defendants' Theory of Unlimited Preemption Is Not Supported by the DPA.................................................8

        C.    Defendants' Interpretations Would Transform the DPA into an Unconstitutional Law. .....................................9

    III.    The Remaining Factors Favor an Injunction. ....................................10

        A.    The Wright Order Irreparably Harms California....................10

        B.    The Balance of Equities and Public Interest Favor California. .....................................................................11

Conclusion ................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbott v. Perez*
585 U.S. 579 (2018) ...................................................................................... 10

*Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity*
950 F.2d 1401 (9th Cir. 1991) ...................................................................... 10

*Cap. Power Corp. v. FERC*
156 F.4th 644 (D.C. Cir. 2025) ...................................................................... 5

*Coal. for Econ. Equity v. Wilson*
122 F.3d 718 (9th Cir. 1997) ........................................................................ 10

*E. Bay Sanctuary Covenant v. Biden*
993 F.3d 640 (9th Cir. 2021) ................................................................... 3, 10

*Franklin v. Massachusetts*
505 U.S. 788 (1992) ............................................................................. 2, 3, 4

*Glenn v. Tyson Foods, Inc.*
40 F.4th 230 (5th Cir. 2022) .......................................................................... 7

*Greater Yellowstone Coal. v. Flowers*
321 F.3d 1250 (10th Cir. 2003) .................................................................... 10

*Heckler v. Chaney*
470 U.S. 821 (1985) ....................................................................................... 4

*Helgeson v. Bureau of Indian Affs., Dep't of Interior*
153 F.3d 1000 (9th Cir. 1998) ........................................................................ 2

*Hercules Inc. v. United States*
24 F.3d 188 (Fed. Cir. 1994) .................................................................. 6, 8, 9

*Hercules Inc. v. United States*
516 U.S. 417 (1996) ....................................................................................... 8

*Jensen v. National Marine Fisheries Service*
512 F.2d 1189 (9th Cir. 1975) ........................................................................ 3

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Johnson v. Tyson Foods, Inc.*
  580 F. Supp. 3d 382 (N.D. Tex. 2022)..........................................................6, 7, 9

*Khodara Env't, Inc. v. Blakey*
  376 F.3d 187 (3rd Cir. 2004)...............................................................................5

*League of Women Voters of United States v. Newby*
  838 F.3d 1 (D.C. Cir. 2016)................................................................................12

*Nat'l Ass'n of Home Builders v. Norton*
  340 F.3d 835 (9th Cir. 2003)...............................................................................7

*Nat'l Med. Enter. v. Bowen*
  851 F.2d 291 (9th Cir. 1988)...............................................................................7

*Nebraska v. Su*
  121 F.4th 1 (9th Cir. 2024)..........................................................................2, 3, 4

*Newsom v. Trump*
  141 F.4th 1032 (9th Cir. 2025)...........................................................................4

*Printz v. United States*
  521 U.S. 898 (1997) ...........................................................................................9

*Rodriguez v. Robbins*
  715 F.3d 1127 (9th Cir. 2013)...........................................................................12

*Sierra Club v. Clinton*
  689 F. Supp. 2d 1147 (D. Minn. 2010) ..............................................................4

*State of California v. PHMSA*
  No. 26-508 (9th Cir.).........................................................................................5

*Texas E. Transmission, LP v. Perano*
  230 F. App'x 134 (3d Cir. 2007)......................................................................10

*Tulare County v. Bush*
  185 F. Supp. 2d 18 (D.D.C. 2001) .....................................................................4

*United States v. Vertac Chem. Corp.*
  46 F.3d 803 (8th Cir. 1995)............................................................................8, 9

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Washington v. Trump*
  847 F.3d 1151 (9th Cir. 2017)............................................................................11

**STATUTES**

50 U.S.C.
  § 4511(a)....................................................................................................................5
  § 4511(a)(1)..............................................................................................................6
  § 4511(c)....................................................................................................................5
  § 4558(j) ....................................................................................................................8


**OTHER AUTHORITIES**

10 C.F.R.
  § 217.54 ....................................................................................................................7

Brief of the U.S. as Amicus Curiae in Support of Appellees, *Glenn et
  al. v. Tyson Foods, Inc.*
  2022 WL 110715 (Jan. 3, 2022)........................................................................7

Statement of Int.Interest of the U.S., *Cal. Dep't of Parks & Recreation
  v. Sable Offshore Corp.*
  No. 26-cv-02946-SVW-SSC (C.D. Cal. Apr. 23, 2026), Dkt. 38....................1, 9

U.S.' Opp. to ex parte Emergency Mot. To Enforce Consent Decree,
  *United States v. Plains All Am. Pipeline*
  No. 2:20-cv-02415-SVW-SSC (C.D. Cal.), Dkt. 45 .........................................1

**INTRODUCTION**

In the federal government's view, a Defense Production Act (DPA) order may authorize private parties to ignore any state law that is inconvenient, and no court may review the lawfulness of that order. The federal government is wrong on both counts. The DPA does not displace judicial authority any more than it displaces State authority beyond the narrow instances in which Congress provided for express preemption. Because the federal government's actions violate both the DPA and the Constitution and work an immediate and ongoing harm to California, a preliminary injunction should be granted.

**ARGUMENT**

**I.    THE WRIGHT ORDER IS REVIEWABLE.**

The federal government is playing a shell game. When Sable raised the Wright Order as a defense to the State's trespass case and the State argued that the order violated the DPA, the federal government filed a Statement of Interest telling this Court that such assertions could not be decided there and instead should be challenged in this case. Statement of Int. of U.S. at 7, *Cal. Dep't of Parks & Recreation v. Sable Offshore Corp.*, No. 2:26-cv-02946 (C.D. Cal. Apr. 23, 2026), Dkt. 38. Here, they say the opposite. Opp. at 14 (arguing "the preemptive scope of the Order must be considered in a case or controversy involving an alleged conflict between the Order and a specific state law"). When the State moved to enforce the parties' consent decree in the case where that decree was entered, the federal government argued that the State's constitutional arguments were an improper "collateral attack on the [Wright] Order." *See* U.S.' Opp. to ex parte Emergency Mot. To Enforce Consent Decree, *United States et al. v. Plains All Am. Pipeline L.P. et al.* at 13-14, No. 2:20-cv-02415-SVW-SSC (C.D. Cal.), Dkt. 45. In this case, which is a *direct* challenge to the Order, they say review is still unavailable.

The federal government's ultimate position is that a DPA order can *never* be challenged—that a cabinet secretary's order under the DPA is in fact a diktat, the

legality of which cannot be challenged either offensively or defensively. This envisions a shocking—and apparently limitless—expansion of Executive power. But neither statute nor precedent supports the federal government's view. The Judicial Branch can and *must* decide whether the defendants have exceeded their statutory and constitutional authority here.

### 1. The Wright Order Is Not Unreviewable Presidential Action.

"[T]he [Administrative Procedure Act's (APA)]'s language is plain. The APA applies to any 'final agency action,'" and "'[n]o language in the APA prevents or exempts review of an agency action that implements a presidential action." *Nebraska v. Su*, 121 F.4th 1, 15 (9th Cir. 2024); *see also Helgeson v. Bureau of Indian Affs., Dep't of Interior*, 153 F.3d 1000, 1003 (9th Cir. 1998) (noting the "strong presumption that Congress intends judicial review of administrative action"). Because it is undisputed that the Wright Order is a final agency action by the Secretary of Energy, it falls squarely within the APA's purview.

Defendants claim review is unavailable because of *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992), which held that the President himself is not an "agency" for purposes of the APA. There, "[t]he Court reasoned that although the President is not explicitly excluded from the definition of 'agency' in [the APA], his unique constitutional position is enough to overcome this 'textual silence.'" *Nebraska*, 121 F.4th at 15 (quoting *Franklin*, 505 U.S. at 800). But nothing in *Franklin* indicates that the actions of agency heads—who do not share the President's "unique conditional position"—are exempt from APA review merely because their actions were taken pursuant to delegated presidential authority.

Indeed, *Nebraska* rejected the argument defendants now raise. There, a federal statute authorized the President to "prescribe" the "policies and directives" governing federal contracting, and the President used that authority to instruct federal agencies to include minimum wage requirements in such contracts. 121

Reply to Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

F.4th at 7.  When an agency implemented the requirement, various States sued. The Ninth Circuit held that *Franklin* did not bar the claim.  To insulate the agency's action merely because it resulted from the President's exercise would "def[y] fundamental principles of administrative law" and "conflict[] with the plain language of the APA and existing precedent."  *Id.* at 15.  And exempting agency actions from review merely because they derive from executive orders would permit agencies "to implement regulations without the public involvement, transparency, and deliberation required under the APA"—and without any action by Congress to create an exemption from the APA.  *Id.* at 16.  Nor can *Nebraska* be distinguished as concerning an agency action that "simply implemented" the executive order.  Opp. at 9.  In *Nebraska*, the Ninth Circuit reviewed not only the agency's implementation but the statutory authority for the President's decision as well.  As that case demonstrates, review is not barred where a Presidential order and agency action *together* create the legal obligations being challenged.  *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 669 (9th Cir. 2021) (*Franklin* did not bar review of agency's rule where the Presidential "Proclamation and Rule *together* create[d] [the] 'operative rule of decision'").

In seeking to evade these precedents, defendants rely on *Jensen v. National Marine Fisheries Service*, 512 F.2d 1189 (9th Cir. 1975).  But that case predates both the Supreme Court's decision in *Franklin* and the Ninth Circuit's decisions in *Nebraska* and *E. Bay Sanctuary*.  It concerned a commission created under a bilateral treaty to manage international fishing rights, and the court relied in part on the fact that "presidential action in the field of foreign affairs" presents non-justiciable political questions.  *Id*. at 1191.  Such considerations are not present here—the Wright Order is an economic regulation with purely domestic application, and defendants do not attempt to assert that the political questions doctrine applies. And defendants' reliance on various district court cases is also unavailing.  Opp. at 8.  Those cases have not been found to be persuasive by other courts.  *See, e.g.,*

Reply to Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

*Sierra Club v. Clinton,* 689 F. Supp. 2d 1147, 1157 n.3 (D. Minn. 2010). And they could not displace on-point Ninth Circuit authority such as *Nebraska*—particularly since most of the district court rulings identified by Defendants rely on the analysis from *Tulare County v. Bush*, 185 F. Supp. 2d 18 (D.D.C. 2001), which the Ninth Circuit viewed as "misapprehend[ing] the APA." *Nebraska*, 121 F.4th at 16.[1]

### 2. This Motion Does Not Concern Judgments "Committed to Agency Discretion," and California Does Not Lack Standing.

Defendants suggest—but do not explicitly argue—that review may be unavailable because the Wright Order was "committed to agency discretion" under the APA. Opp. at 19. That, too, is incorrect. California seeks judicial review of matters as to which there exist "meaningful standard[s]," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)—such as whether an order to restart a dormant pipeline notwithstanding state law and binding court orders can be viewed as a "prioritization" or "allocation" order, and whether particular procedural requirements in the statute and regulations have been met. It is among the "traditional understandings and basic principles" of our system of government that, absent clear congressional intent to the contrary, "executive determinations generally are subject to judicial review." *Newsom v. Trump*, 141 F.4th 1032, 1050 (9th Cir. 2025).

Defendants are also incorrect to argue that California lacks standing to challenge their assertion that the Wright Order displaces all California regulatory authority. Opp. at 24. Defendants' argument is that regardless of the Order, state authority was already displaced when PHMSA declared the pipelines to be interstate and approved their restart. Opp. at 24. But in the three months between

---

[1] Regardless of APA reviewability, presidential actions "may still be reviewed for constitutionality." *Franklin*, 505 U.S. at 801 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)). California's Complaint includes a claim that the Order violates the Constitution and separation of powers. Complaint, Dkt. 1, ¶¶ 139-50. As a result, if the Court concludes that the Order is not reviewable under the APA, California would still be able to move for an injunction directly under the Constitution.

issuance of the PHMSA orders and the Wright Order, Defendants and Sable asserted only that PHMSA had displaced California's Office of the State Fire Marshal as the *pipeline safety* regulator; Defendants and Sable have never contended that anything but the Wright Order displaces *all other* state regulations that would independently bar the pipeline's operations under state law (such as environmental regulations) even if it satisfies federal or state pipeline safety regulations. Opp. at 14. As a result, while the PHMSA orders are also preventing California from exercising its sovereign powers over pipeline safety regulation— and California is thus challenging them as well (*see generally State of California v. PHMSA*, No. 26-508 (9th Cir.))—California also has standing to challenge the Wright Order's purported abrogation of other State regulations that, if enforced, would separately regulate the pipeline. "When a litigant's injury-in-fact stems from two independently sufficient causes, it may separately challenge both of them, even though success in only one proceeding might not fully redress its injury." *Cap. Power Corp. v. FERC*, 156 F.4th 644, 650 (D.C. Cir. 2025) (citing *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 194-95 (3rd Cir. 2004) (Alito, J.)).

## II.  CALIFORNIA IS LIKELY TO SUCCEED ON THE MERITS.

### A.  The Wright Order Is Not a Valid Priorities and Allocations Order Under the DPA.

The Wright Order exceeds the Congress's grant of authority under sections 101(a) and (c) of the DPA. 50 U.S.C. § 4511(a), (c).[2]

---

[2] California previously raised arguments that the Wright Order (1) does not make the findings required by section 101(b) and (2) merely recites the findings required by section 101(c), without providing any reasoning supporting those findings. With their opposition, Defendants submitted documents that purport to satisfy these requirements. *See* Opp., Ex. A, Nunes Decl., Attach. 2. To California's knowledge, these documents were not previously available to the public, were not cited or attached to the Order, and Defendants have not filed these documents in any of the related cases pending before this Court. Nonetheless, given these documents, California withdraws the two above-referenced arguments for purposes of this motion. However, California does not concede the validity or sufficiency of Defendant U.S. Department of Energy's reasoning, as set forth in these newly produced documents.

### 1.   The Wright Order Is Not a Prioritization Order.

Defendants do not confront at all the fundamental mismatch between the Wright Order and the prioritization power that Congress actually provided in the DPA.  Section 101(a)(1) allows the government to "require" that certain contracts "take priority over performance under any other contract."  50 U.S.C. § 4511(a)(1).  And Section 101(c) similarly authorizes orders for "priority" and "allocation."  *Id.* § 4511(c).  These provisions grant the Executive the power "to dictate that preference be given to government contracts which are necessary to promote the national defense," even at the expense of existing private contracts.  *Hercules Inc. v. United States*, 24 F.3d 188, 203 (Fed. Cir. 1994).  As California has argued (Mot. at 9-10), priority is about relative position: Giving priority to one contract means *deprioritizing* another.  The problem here is that there are no other contracts the Order tells Sable to deprioritize.  As a result, it is not a prioritization order at all.

Defendants address a straw man when they contend that the DPA allows the government to accept and "prioritize contracts not yet formed."  Opp. at 10.  But nothing in the DPA allows the government to require a company to "prioritize contracts not yet formed" that require actions that are *illegal under state law*.  That would not be directing an operating facility to "prioritize" some contracts over others; that would be directing a facility that was nonoperational for failure to meet regulatory conditions to start operating in the first place.

### 2.   The Wright Order Is Not an Allocation Order.

Defendants argue that the order is an "allocation" because it effectively orders that oil be reallocated from the oil field to onshore sites.  Opp. at 12.  But the Wright Order is an order to begin production—not to allocate existing, lawful production.  Defendants analogize this case to *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382 (N.D. Tex. 2022), which Defendants say concerned an order to restart a meatpacking plant that was closed during the COVID-19 outbreak.  Opp. at 12-13.  But *Johnson* has no value at all as an analysis of DPA power, because that case

did not involve a DPA order at all. Rather, as the Fifth Circuit clarified in deciding a related case, although the Department of Agriculture sent a letter warning that they might issue a DPA order, the agency "did not issue a DPA order to Tyson or any other meatpacking company." *Glenn v. Tyson Foods, Inc.,* 40 F.4th 230, 234 (5th Cir. 2022); *see also* Brief of U.S. as Amicus Curiae in support of Appellees, *Glenn v. Tyson Foods, Inc.* (5th Cir. 2022), 2022 WL 110715 at *4 (conceding as much). In any event, the order that *Johnson* incorrectly thought existed would have only required the restarting of facilities that had briefly closed. That does not remotely resemble an order to restart these pipelines, which had been closed for over a decade.

### 3. The Wright Order Fails To Comply with the Department of Energy's Regulatory Requirements for Allocation Orders.

Consistent with their overarching disregard for the limits of DPA orders, Defendants concede that the Wright Order does not include an end date, as required by Defendant U.S. Department of Energy's (DOE) own regulations governing allocation orders.[3] Opp. at 17; *see* 10 CFR 217.54 ("Each allocation order must include:" "the specific start and end calendar dates for each required allocation action"). Defendants ask the court to excuse their non-compliance by deeming it harmless error. But the regulations carry "the force of law." *Nat'l Med. Enter. v. Bowen*, 851 F.2d 291, 293 (9th Cir. 1988); *see also Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841, 852 (9th Cir. 2003) (agencies "must follow" the policies they choose to promulgate). And the requirement that allocation orders include an end date serves an important purpose: it places a temporal limit on the federal government's exercise of power under the DPA, which in turn protects those whose rights are adversely affected by the order. Defendants' failure to include an end-

---

[3] Defendants also do not dispute the fact that the regulations for an allocations order must also include, *in the order itself,* a specific calendar start date, and specific description of what is being allocated, which it fails to do, in addition to meeting several other elements that were not included in the Wright Order. Opp. at 17; *see* 10 C.F.R. § 217.54.

7

date in the Wright Order is no mere procedural error—it is an unlawful attempt to authorize Sable to flow oil through the Pipelines, in defiance of California law, indefinitely.

### B. Defendants' Theory of Unlimited Preemption Is Not Supported by the DPA.

Defendants maintain that "the Order preempts *any* California law that conflicts with its directive that Sable immediately operate the Pipeline." Opp. at 15. But nowhere in the DPA did Congress provide for global preemption of that sort. On the contrary, Congress adopted express provisions targeted to specific state laws that it saw fit to preempt, such as state antitrust laws that might consider collusive some activities that DPA orders might require companies to engage in. Mot. at 12 (citing 50 U.S.C. § 4558(j)). If a DPA order automatically preempted *all* state laws that potentially conflict with the order, Congress would have had no need to include such specific express provisions.

To the extent the DPA impliedly preempts any state law, it does so only with respect to state contract law that would inherently be in conflict with the power to reprioritize contracts under the DPA. Indeed, until this year, the federal government itself acknowledged that preemption under the DPA is limited to matters of contract law. Opp. at 1. Its sudden reversal of position, out of a desire to open this one pipeline, simply underscores how far the federal government is willing to stray from longstanding commitments in this case.

DPA preemption goes no further. Two federal Courts of Appeals—*Vertac* and *Hercules,* which defendants ignore—have rejected interpreting the DPA to have "the absurd result of allowing a government contractor to violate the laws with impunity, so long as it is performing a rated contract." *United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995); *see also, e.g.*, *Hercules*, 24 F.3d at 204; *Hercules Inc. v. United States*, 516 U.S. 417, 430 n.14 (1996). Those are the only Court of Appeals decisions on the issue, yet defendants do not even

acknowledge they exist—let alone attempt to distinguish them or show their reasoning to be faulty.[4]

### C. Defendants' Interpretations Would Transform the DPA into an Unconstitutional Law.

As California previously explained, defendants' interpretation and actions would transform the DPA from a constitutionally valid protection for the Nation into an unconstitutional infringement on the powers of States and of the Judicial Branch.

Defendants claim that the Wright Order cannot have anti-commandeering implications because it "does not conscript California into doing anything."  Opp. at 16.  But Defendants are interpreting the Order to do just that: that California *must* dedicate its state-owned property to Sable's unauthorized flow of oil.  *See* Opp. at 15; Statement of Int. of U.S. at 10-11, *Cal. Dep't of Parks & Recreation*, No. 2:26-cv-02946 (C.D. Cal. Apr. 23, 2026), Dkt. 38.  Defendants clearly do not believe that California is allowed to exercise its sovereign property rights to block oil from flowing through that portion of the pipeline.  Defendants thus seek to conscript the State's property. In contrast, no such constitutional concerns would be raised if the DPA is limited to Congress's intended scope of providing for relative prioritizations and allocations, and no more.[5]

---

[4] Defendants cite the district court decision in *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382 (N.D. Tex. 2022) in support of its position that DPA allocation orders can preempt conflicting state laws.  But *Johnson* involved no DPA order at all, as discussed above (at p. 7).  Plus, *Johnson*'s thinly-reasoned discussion does not engage with the statutory and constitutional defects raised here, and has not been adopted by other courts.  The stronger authority comes from the Court of Appeals decisions in *Vertac* and *Hercules.*

[5] Defendant suggests that the conscription of state land for federal purposes would be better handled as a Takings claim.  Opp. at 16.  If the federal government had initiated an eminent domain proceeding, then any compensation issues would indeed be determined by Takings law.  But the federal government is not seeking to acquire State property.  Instead, Defendants are leaving the property with the State but requiring them to devote it to federal use.  That is a commandeering issue—just as it is a commandeering issue when the federal government requires state employees to execute federal tasks instead of hiring federal employees to do them. *See generally Printz v. United States*, 521 U.S. 898 (1997).

Reply to Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

So too with respect to the Consent Decree. It is only Defendants' position—that the Wright Order automatically displaces the federal court's Consent Decree—that raises the prospect of an encroachment on the Judicial Branch's power. In contrast, if the DPA is read as keeping in place the normal rule that the Executive Branch must first seek modification of the Consent Decree (and justify that request according to normal rules of equity), then the constitutional conflict is averted.

## III. THE REMAINING FACTORS FAVOR AN INJUNCTION.

### A. The Wright Order Irreparably Harms California.

Defendants admit that the Wright Order displaces California's sovereign authority. Opp. at 14-15; *see also* Opp. at 21, Ex. A, Nunes Decl., Attach. 3 (DPA Memo), at 12. Although defendants argue that this displacement does not constitute irreparable harm, Opp. at 21-22, they fail to acknowledge—let alone distinguish—controlling authority that says otherwise. *See, e.g.*, *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State"); *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined"). These types of "[i]ntangible injuries" to California constitute irreparable harm, because they cannot be reduced to money damages, and thus California has no other remedy at law but a stay or injunction. *E. Bay Sanctuary Covenant*, 993 F.3d at 677.

Defendants further complain that the risk of harms to public health and safety and to the environment and natural resources is impermissibly speculative. Opp. at 22, 24. But "an injury is not speculative simply because it is not certain to occur." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003); *see, e.g.*, *Texas E. Transmission, LP v. Perano*, 230 F. App'x 134, 136 (3d Cir. 2007) (safety concerns regarding natural gas pipeline constitute irreparable harm sufficient to support preliminary injunction); *see also Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991) (a

plaintiff "must demonstrate that it will be exposed to some significant risk of irreparable injury").  California bears a significant risk of harm resulting from Sable's reliance on the Wright Order to restart the Pipelines and from California's inability to ensure that the Pipelines and their operations meet safety requirements under state law—harms that include not only another oil spill but also adverse impacts from Sable's maintenance and operation of the Pipeline.  Mot. at 19-20; Sharma Decl., ¶¶ 5-11; Vance Decl., ¶¶ 3-12.  Operation of the Pipeline itself, given its history and hazardous contents, creates a cognizable risk.

Defendants complain that, because California did not immediately seek an injunction, California must not have been experiencing irreparable harm.  Opp. at 22.  But California sought this injunction within a few weeks of the Pipeline's restart.  And California did not stand idle during those weeks.  It promptly pursued judicial means of averting the harm—such as moving in just days to enforce the Consent Decree's bar on the Pipeline's restart and seeking an injunction against Sable's use of the Pipeline through state-owned land.  Mot. at 5-6.  California has been diligently pursuing judicial remedies, on multiple parallel fronts.

Lastly, Defendants contradict themselves and state that the Wright Order does not displace the state's authority, repeating their earlier argument that PHMSA already caused such displacement in 2025.  Opp. at 24; *see also supra*, § I.2.  Defendants' contention, however, is inapposite, and the same reasons that California has standing to challenge the Wright Order also apply here to the irreparable harm analysis.  *See id.*

**B.  The Balance of Equities and Public Interest Favor California.**

Defendants argue that the Wright Order is supported by national security needs and a current need for oil.  Opp. at 24-25.  But the government interest in national security "cannot be deemed an end in itself, justifying any exercise of legislative power designed to promote such a goal."  *Washington v. Trump*, 847 F.3d 1151, 1163 (9th Cir. 2017) (quoting *United States v. Robel*, 389 U.S. 258, 264

(1967)).  And the timeline reflects that Sable and federal authorities were collaborating on plans to evade the consent decree, remove California's authority, and resume pipeline operation without full safety measures well before current military hostilities began.  *See, e.g.*, Mot. at 5 (in December 2025, PHMSA redesignated Lines CA-324/325 as interstate at Sable's urging and Sable requested DOE authorize Sable to restart the lines by invoking the DPA).  Besides, there is no interest that can justify the federal government engaging in unlawful conduct, as it has done in issuing the Wright Order.  *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (defendants "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns").  By contrast, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'"  *League of Women Voters of United States v. Newby,* 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).

## CONCLUSION

The motion for a preliminary injunction and stay should be granted.

12

Dated:  May 18, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JEREMY BROWN
Supervising Deputy Attorney General
REBECCA HUNTER
MARY HALEY OUSLEY
BRIAN CALAVAN
Deputy Attorneys General


ALICIA ROESSLER
Deputy Attorney General
*Attorneys for Plaintiff State of California*

13

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff State of California, certifies that this brief contains 4,035 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

Dated: May 18, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JEREMY BROWN
Supervising Deputy Attorneys General
REBECCA HUNTER
MARY HALEY OUSLEY
BRIAN CALAVAN
Deputy Attorneys General

ALICIA ROESSLER
Deputy Attorney General
*Attorneys for Plaintiff State of California* _____
_____

14