ROB BONTA
Attorney General of California
JEREMY BROWN (SBN 269159)
Supervising Deputy Attorney General
ALICIA ROESSLER (SBN 219623)
REBECCA HUNTER (SBN 356311)
MARY HALEY OUSLEY (SBN 332711)
BRIAN CALAVAN (SBN 347724)
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA 94612
 Telephone:  (510) 879-1981
 Fax:  (510) 622-2270
 E-mail:  Jeremy.Brown@doj.ca.gov
 Alicia.Roessler@doj.ca.gov
 Rebecca.Hunter@doj.ca.gov
 Brian.Calavan@doj.ca.gov

*Attorneys for Plaintiff
State of California*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br><br>                                  *Plaintiff,*<br><br>     **v.**<br><br>**CHRIS WRIGHT,** in his official capacity as Secretary of the U.S. Department of Energy; **UNITED STATES DEPARTMENT OF ENERGY,**<br><br>                                  *Defendants.* | Case No. 2:26-cv-3396-SVW-SSCx<br><br>**PLAINTIFF'S REPLY TO INTERVENORS SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND STAY**<br><br>Date:           June 8, 2026<br>Time:           1:30 p.m.<br>Courtroom:   10A, 10th Floor<br>Judge:          Hon. Stephen V. Wilson<br>Trial Date:    Not Set<br>Action Filed: March 31, 2026 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

    I.    California Files This Reply to Sable's Untimely Opposition. .............. 1

    II.    California Is Likely To Succeed on the Merits. ................................... 2

        A.    The Wright Order Is Not Valid Priorities or Allocation
            Order. ...................................................................................... 2

        B.    Like Defendants, Sable Incorrectly Seeks To Shield the
            Wright Order from Judicial Review. ....................................... 2

        C.    The Preemptive Effects of the DPA Order Are Not
            Hypothetical. ........................................................................... 3

        D.    The DPA Does Not Support Sable's Claimed Scope of
            Preemption. ............................................................................. 4

    III.    The Remaining Factors Favor an Injunction. .................................... 7

        A.    The Wright Order Irreparably Harms California. ....................... 7

        B.    The Balance of Equities and Public Interest Favor
            California. ............................................................................. 10

    IV.    The Court Should Not Require a Bond from California .................... 11

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Fed'n of Tchrs. v. Dep't of Educ.*
779 F. Supp. 3d 584 (D. Md. 2025) ................................................................ 12

*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad
River Rsrv. v. Enbridge Energy Co., Inc.*
626 F. Supp. 3d 1030 (W.D. Wis. 2022) ......................................................... 11

*Bondi v. VanDerStok*
604 U.S. 458 (2025) ........................................................................................ 4

*Caribbean Marine Servs. Co. v. Baldrige*
844 F.2d 668 (9th Cir. 1988) ........................................................................... 9

*DISH Network L.L.C. v. DelVecchio*
831 F. Supp. 2d 595 (W.D.N.Y. 2011) ............................................................ 11

*E. Bay Sanctuary Covenant v. Biden*
993 F.3d 640 (9th Cir. 2021) ........................................................................... 10

*Florida v. Dep't of Health & Hum. Servs.*
19 F.4th 1271 (11th Cir. 2021) ........................................................................ 7

*Hercules Inc. v. United States*
24 F.3d 188 (Fed. Cir. 1994) ........................................................................ 5, 6

*Indiana v. Haaland*
No. 24-cv-1665, 2024 WL 5213401 (D.D.C. Dec. 24, 2024) ........................... 7

*Johnson v. Couturier*
572 F.3d 1067 (9th Cir. 2009) ......................................................................... 11

*Johnson v. Tyson Foods, Inc.*
580 F. Supp. 3d 382 (N.D. Tex. 2022) ............................................................. 7

*Melendres v. Arpaio*
695 F.3d 990 (9th Cir. 2012) ........................................................................... 8

*New York v. United States*
505 U.S. 144 (1992) ........................................................................................ 7

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*
143 F.3d 800 (3d Cir. 1998) ......................................................................... 10

*Sierra Club v. Clinton*
689 F. Supp. 2d 1123 (D. Minn. 2010) ........................................................ 11

*United States v. Salerno*
481 U.S. 739 (1987) ....................................................................................... 4

*United States v. Vertac Chem. Corp.*
46 F.3d 803 (8th Cir. 1995) .................................................................... 5, 6, 7

*Washington v. United States Dept. of Educ.*
807 F. Supp. 3d 1275 (W.D. Wash. 2025) ................................................... 12

**STATUTES**

5 U.S.C. § 705 ............................................................................................... 12
50 U.S.C. § 4557 ............................................................................................. 5
50 U.S.C. § 4558(j) ......................................................................................... 5

**COURT RULES**

Local Rule
7-9 .......................................................................................................... 1
7-10 .................................................................................................... 1, 2

**OTHER AUTHORITIES**

*Cal. Dep't of Parks & Recreation v. Sable Offshore Corp.*
No. 2:26-cv-02946 (C.D. Cal. Apr. 3, 2026) ............................................ 2, 3

Federal Rules of Civil Procedure, rule 65(c) ................................................ 11

*United States et al. v. Plains All Am. Pipeline L.P. et al.*
No. 2:20-cv-02415 (C.D. Cal. Apr. 27, 2026) ............................................... 3

**INTRODUCTION**

Intervenors Sable Offshore Corp. and Pacific Pipeline Company (Sable) portray their opposition to California's motion as an attempt to preserve the status quo. Yet until two and a half months ago, the status quo for over a decade was a complete absence of the flow of oil through Lines CA-324/325. That status quo also included standard state oversight of Sable's pending requests to restart the pipelines pursuant to the laws applicable to pipelines carrying hazardous liquids, state oversight over its own property, and judicial oversight pursuant to a consent decree's conditions for the pipeline's restart. Sable moved to upend that status quo by asking the federal government for orders that, in Sable's view, freed it from having to follow federal and state court orders blocking that restart. But, contrary to Sable's position, the Defense Production Act (DPA) does not grant the federal government absolute power to displace this oversight. And Sable should not be heard to complain about hardships resulting from an injunction against unlawful federal action that Sable solicited specifically so that it could *violate* an existing injunction. This Court should restore the yearslong status quo that existed before the Wright Order upset it, and grant California's motion.

**ARGUMENT**

**I.    CALIFORNIA FILES THIS REPLY TO SABLE'S UNTIMELY OPPOSITION.**

Per Local Rule 7-10, the deadline for California to reply to any party's then-filed opposition to California's motion was May 18, 2026, and California timely filed its reply to the federal government's opposition.[1] On that date, however, Sable's Motion to Intervene and Proposed Opposition were still pending. On May 20, 2026, the Court granted intervention and deemed the Proposed Opposition and its supporting papers "filed as of today"—nine days after the standard deadline for opposition papers under Local Rule 7-9. Due to the delayed filing of Sable's

---

[1] On May 27, 2026, the Court continued the hearing on California's motion from June 1, 2026 to June 8, 2026. See Dkt. 31.

1

Proposed Opposition, California must submit its Reply to Sable's Proposed Opposition now, which is later than the standard deadline for reply papers under Local Rule 7-10, but still seven days after the filing of that opposition, as is standard under the typical motion schedule.

**II.   CALIFORNIA IS LIKELY TO SUCCEED ON THE MERITS.**

**A.  The Wright Order Is Not Valid Priorities or Allocation Order.**

Sable argues that the Wright Order has valid legal underpinnings and that Defendants made the findings that Section 101 requires procedurally. Sable Opp. at 5. Sable cites no evidence in support of this contention and impliedly relies upon documents that were not previously available to the public, were not cited or attached to the Wright Order, and were not previously submitted in any of the earlier-filed related cases pending before this Court. *See id.* at 5*;* Defs. Opp., Ex. A, Nunes Decl., Attach. 2; s*ee* Reply to Defs. Opp. at 5 n.2. But regardless of the validity or sufficiency of these newly produced documents, Sable does nothing to rebut California's explanation of how the Wright Order does not qualify as an order to prioritize or allocate within the meaning of the *statute*. *See* Mot. at 9-10; Reply to Defs. Opp. at 5-8.

**B.  Like Defendants, Sable Incorrectly Seeks To Shield the Wright Order from Judicial Review.**

Like the federal government, Sable asserts that "the preemptive effect of the [Wright] Order [is] not properly before the Court" and should instead be resolved in other actions. Sable Opp. at 7. As a practical matter, Sable's position aligns with the federal government's strategy to insulate the Wright Order from judicial review by directing the Court to consider California's challenges in other cases, while simultaneously arguing in those cases that California's challenges to the Order are "collateral." *See id.* at 21-22, Sable's Opp., *Cal. Dep't of Parks & Recreation v. Sable Offshore Corp.*, No. 2:26-cv-02946 (C.D. Cal. Apr. 3, 2026), Dkt. 24 ("This Court should allow its sister courts to resolve" whether the Wright Order is invalid

Reply to Int. Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

"rather than issue an injunction that would collaterally attack [that] proceeding[]."); Sable's Opp. to Mot. to Enf., at 22, *United States et al. v. Plains All Am. Pipeline L.P. et al.*, No. 2:20-cv-02415 (C.D. Cal. Apr. 27, 2026), Dkt. 61 (citing to the Complaint in this case, "the legal consequences of the [Wright] Order are better resolved in other litigation, including the separate action that California initiated for that purpose."). Indeed, Sable does not hide this strategy, as it asserts its position that "the Consent Decree and Gaviota State Park actions might be decided without any discussion of the DPA." Sable Opp. at 6.

As a legal matter, Sable's attempt to render the Wright Order unreviewable is meritless. Sable "does not dispute that this case is the appropriate forum to challenge the *validity* of the [Wright] Order." *Id.* at 7 n.3. But one of the reasons the Wright Order is invalid is its purported preemptive effect—a power Congress never conferred on federal agencies under the DPA.

### C. The Preemptive Effects of the DPA Order Are Not Hypothetical.

Next, Sable contends that California's preemption arguments are grounded in "some speculative scenario not being litigated here." *Id.* at 7. To the contrary, California's preemption arguments are based on Sable and the federal government's own, very real assertions that the Wright Order preempts California from enforcing the state laws, regulations, and property rights that would otherwise govern the restart of Lines CA-324/325. Far from being "speculative" and "hypothetical" (*id.*), the preemption that Sable and the federal government assert is what has caused, and continues to cause, oil to *actually* flow through Lines CA-324/325 over California's objection.[2] Sable's contention that it does not view the Wright Order as

---

[2] Sable claims that "California and its agencies are already arguing in parallel cases that the [Wright] Order *does not* preempt any state laws, exactly the opposite of their stance here." Sable Opp. at 8 n.5. California is unsure which case or filing Sable is referring to, because the footnote does not include a citation. In any event, California has consistently maintained that a DPA Order *cannot* have the broad preemptive effect the federal government and Sable assert it does, because of
(continued…)

Reply to Int. Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

"preempt[ing] all state laws touching upon Sable's operations" (*id.* at 7-8) is beside the point. Whether Sable intends to comply with other California laws of its choosing does not affect the very real harm California suffers from violation of the California laws Sable is presently flouting by relying on the Wright Order.

Nor does California need to show that "every possible preemption scenario is unlawful" to be entitled to injunctive relief. Sable Opp. at 8. First, contrary to Sable's assertions (*id.* at 8 n.6), it remains an open question whether the "no set of circumstances" standard from *United States v. Salerno*, 481 U.S. 739, 745 (1987), applies to APA regulatory challenges. *Compare Bondi v. VanDerStok*, 604 U.S. 458, 467 n.2 (2025) (majority op.) (leaving "further analysis of the proper test for another day"), *with id.* at 496 n.5 (Thomas, J., dissenting) ("the majority avoids settling whether the framework in [*Salerno*] is appropriate for regulatory challenges in the APA context."). In any event, California does not raise broad facial challenges to the DPA or its implementing regulations. Instead, California challenges the Wright Order, as applied to these particular pipelines, and challenges Sable's reliance on the Wright Order's purported preemptive effect to take actions that ignore state regulatory requirements, property rights, and consent decree requirements that would otherwise govern.

### D.  The DPA Does Not Support Sable's Claimed Scope of Preemption.

Sable contends that "the DPA both expressly and impliedly preempts conflicting state laws." Sable Opp. at 9. With respect to express preemption, Sable goes further than the federal government and embraces the theory introduced in the March 13, 2026, U.S. Department of Justice Office of Legal Counsel opinion ("OLC Opinion") that section 707 of the DPA "presupposes . . . broad preemptive

---

statutory and constitutional considerations. *See, e.g.*, Department of Parks & Recreation's Reply at 6-7, *Cal. Dep't of Parks & Recreation v. Sable Offshore Corp.*, No. 2:26-cv-02946 (C.D. Cal. Apr. 10, 2026), Dkt. 30. Sable and the federal Defendants are acting, however, in reliance on its purported preemptive effect— which is what causes California harm and constitutes the controversy in this case.

Reply to Int. Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

operation." *Id.* at 12. But as California explained in its motion (Mot. at 13), section 707 is a limited immunity provision that, as to prioritization orders, "extends only to shield a contractor from *breach of contract* liability arising as a consequence of such re-prioritization," and goes no further, as the federal Courts of Appeals have held. *Hercules Inc. v. United States*, 24 F.3d 188, 204 (Fed. Cir. 1994) (emphasis added); *see United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995) (similar). And Sable has no answer to California's observation that the DPA's express preemption of state antitrust laws is not matched by any similar express provision preempting the types of state laws at issue here. *See* Mot. at 12 (citing 50 U.S.C. § 4558(j)).

Sable argues that the text of section 707 offers broad preemption because it "shields against 'damages or penalties'" and "contains no reference to 'contract' law at all." Sable Opp. at 13 (quoting 50 U.S.C. § 4557). This is flatly wrong. Section 707 explicitly references contract law: As the Federal Circuit explained, the "second sentence of section 707, [] prohibits discrimination 'against *contracts* to which priority is assigned[.]'" *Hercules*, 24 F.3d at 204 (quoting 50 U.S.C. § 4557) (emphasis added). This language "reinforce[d] the [court's] view that the immunity from suit provided by section 707 [did] not extend to" shield a contractor from the liability at issue there: "tort suits in which it is alleged that the item produced by the DPA contractor is inherently unsafe to users." *Id.*

And the phrase "damages or penalties" in the previous sentence of section 707 should not be read in isolation. "[I]t is a settled rule of statutory interpretation that separate provisions of a statute are to be construed and interpreted together and in light of each other to ascertain the true legislative intent." *Hercules*, 24 F.3d at 204. Section 707 must be read in light of a contractor's obligation under "DPA section 101(a) . . . to re-prioritize its outstanding contracts in order to give the required preference to a compelled DPA contract." *Id.* When read together, "the protection provided by DPA section 707 extends only to shield a contractor from breach of

5

contract liability arising as a consequence of such re-prioritization." *Id.* "To hold that section 707 protects contractors against a risk which is greater than that created by the statute with which it operates would violate this rule" of statutory construction. *Id.*

In the OLC Opinion, the Department of Justice did not engage with the contrary holdings in *Hercules* and *Vertac*. Sable now attempts to distinguish them, claiming they only concerned whether private parties could claim "*indemnification from the United States for personal injury claims*" arising out of their activities as contractors to produce Agent Orange for the federal government. Sable Opp. at 12. Sable is correct that that was *one* of the several issues the courts considered. *See, e.g.*, *Vertac*, 46 F.3d at 812 ("Hercules *separately argues* that it is entitled to indemnity from the United States arising out of Hercules' immunity under § 707, the United States' waiver of immunity, and the United States' liability under CERCLA.") (emphasis added). But to decide the indemnification issue, those courts determined that the scope of "'the protection afforded by section 707 of the DPA extends no further than the risk imposed by section 101(a) of the DPA'"— period. *Vertac*, 46 F.3d at 812 (quoting *Hercules*, 24 F.3d at 204). Accordingly, the courts also construed section 101(a). *Id.*

Sable is also wrong to argue that the Wright Order creates conflict preemption of the sort "where 'a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law[.]'" Sable Opp. at 9. As California has explained, the purpose and objective of section 101(a) is to require a contractor to prioritize defense consumption above non-defense consumption, notwithstanding existing private contracts. Mot. at 8-9, 13-15. Enforcement of state laws pertaining to safety, environmental protection, or property rights over state-owned land do not interfere with the goal of prioritizing some contracts over

Reply to Int. Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

others.[3] Nor can the DPA reasonably be read to have intended to authorize the Executive Branch to flout judicial orders. It is not "necessary" (Sable Opp. at 8) to "allow[] a government contractor to violate the laws with impunity" in order for it to "perform[] a rated contract" under section 101(a). *Vertac*, 46 F.3d at 812.[4]

## III.  THE REMAINING FACTORS FAVOR AN INJUNCTION.

### A.  The Wright Order Irreparably Harms California.

Sable admits the Wright Order displaces California's sovereign authority yet argues that this deprivation of sovereign rights does not constitute irreparable harm. Sable Opp. at 18-19. Sable's argument fails for the same reasons that Defendants' does. *See* Reply to Defs. Opp. at 10.

Sable cites two cases in support of its claim that a federal agency action purporting to preempt state law does not inflict irreparable harm on the state. Sable Opp. at 18 (citing *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1292 (11th Cir. 2021); *Indiana v. Haaland*, No. 24-cv-1665, 2024 WL 5213401, at *9 (D.D.C. Dec. 24, 2024)). But Sable misunderstands the import of these cases, which support California's argument, not Sable's or Defendants'. The court in each case found that the federal government acted *within* the scope of its express statutory authority delegated by Congress, and that the actions that preempted state law therefore did not constitute irreparable harm. *Florida*, 19 F.4th 1271 at 1287, 1292; *Indiana*, 2024 WL 5213401 at *9. Sable cites no authority supporting a lack of irreparable harm as a result of the federal government's displacement of state law

---

[3] Like the federal government, Sable argues that "anticommandeering doctrine is inapplicable" because the Order here "is directed to a private party—Sable." Sable Opp. at 13. As explained in reply to that argument, both the federal government and Sable interpret the Order to require California to dedicate state property to Sable's immediate restart of the pipelines. Reply to Defs. Opp. at 9 & n.5. Forcing California to reorder its property rights in Gaviota State Park commandeers state government in much the same way as it commandeers state government for the federal government and makes California the owner of a private party's undesirable assets (such as nuclear waste) without California's consent. *See New York v. United States*, 505 U.S. 144, 176 (1992).

[4] For the same reasons in response to the federal government's opposition, Sable's reliance (Sable Opp. at 11) on *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382 (N.D. Tex. 2022) is misplaced. *See* Reply to Defs. Opp. at 6-7, 9 n.4.

by acting *outside* the scope of statutory authority, as the Secretary has done here. *See* Mot. at 8-12.

Sable alternatively argues that any irreparable harm to California's sovereignty "cannot support injunctive relief," because Defendants would suffer greater irreparable harm from an injunction of the Wright Order that would result in "the United States's inability to 'effectuat[e]' the congressionally authorized Defense Production Act." Sable Opp. at 19 (quoting Mot. at 20). But Sable again misunderstands the basis for irreparable harm. Defendants cannot be harmed by an injunction that prevents them from acting outside the scope of their authority. *See* Mot. at 21 (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (federal government "cannot suffer harm from an injunction that merely ends an unlawful practice")). And Sable overstates the extent of relief sought here, which would exclusively enjoin the Wright Order, and not affect the United States's ability to lawfully effectuate the DPA in any other instance.

When addressing the requirements for showing irreparable harm, Sable incorrectly conflates ultra vires acts generally with constitutional violations to argue that California must show irreparable harm independent of a likelihood of success on the merits. But controlling precedent holds that the opposite is true for violations of constitutional rights. *See* Mot. at 7 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("the deprivation of constitutional rights unquestionably constitutes irreparable injury") (internal quotation marks omitted). Sable attempts to distinguish *Melendres* by contrasting the unlawful detention at issue there against what it characterizes as the "academic harm" inflicted on California. Sable Opp. at 19-20. But Sable ignores the holding of *Melendres*, in which the court found irreparable harm not simply because plaintiffs there "faced a real possibility" of detention, but because the likely detention would have been unlawful and "a deprivation of constitutional rights." *Melendres,* 695 F.3d at 1002. In any event, California's harms are far from academic: Sable is *actually* running the Pipelines in

8

violation of California law. But for the Wright Order, California agencies would have engaged in environmental reviews and approvals—and ensured that adequate environmental protections and easements were in place—before those pipelines restarted; as a regulator and a landowner, California is directly harmed by the Wright Order sidelining its agencies entirely.

Additionally, Sable parrots Defendants' contention that the risk of harm to public health and safety and to the environment and natural resources is impermissibly speculative. Sable Opp. at 15-17; Defs. Opp. at 22, 24. California addressed those arguments in its Reply to Defendants' Opposition, and they equally apply here. *See* Reply to Defs. Opp. at 10-11. Sable also repeatedly quotes *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988). But the point of *Caribbean Marine Services* is that "a plaintiff seeking preliminary injunctive relief must demonstrate that it will be *exposed* to irreparable harm." *Id.* at 674 (emphasis added). California has made that showing here. *See* Mot. at 19-20; Sharma Decl., ¶¶ 5-11 (describing state law requirements and duties of California Geologic Energy Management Division to ensure safety of the Pipelines and "prevent harm to life, health, property, and natural resources" (*id.* at ¶ 8)); Vance Decl., ¶¶ 3-15 (describing state law protections and permitting requirements to minimize the risk of harm to threatened or endangered species and waterways). Sable also claims that it is speculative to say that "operation of the [Pipelines] presents a safety risk" and "that the safety risk can cause identified harms," yet these Pipelines caused one of the most destructive oil spills in recent history and caused catastrophic damage to California's public health, economy, and environment. *See* Compl. at ¶¶ 2, 25-29; Mot. at 3-4, 19-20; Reply to Defs. Opp. 10-11.

Sable also misunderstands California's claims and requested relief when it argues that California is alleging it will suffer financial harm. Sable Opp. at 17. California brings this case against the Secretary and DOE, not Sable, and

Reply to Int. Opp. to Motion for Preliminary Injunction & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

California's claims in this case do not seek monetary relief. Instead, California claims "[i]ntangible injuries," which constitute irreparable harm because they cannot be reduced to money damages. Mot. at 19-20; Reply to Defs. Opp. at 10; *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021).

Lastly, Sable disputes that California can suffer irreparable harm as a property owner. Sable Opp. at 20. It overlooks the examples in California's motion of its rights and obligations as a property owner that Sable's reliance on the Wright Order infringes or prevents. Mot. at 20-21. And while Sable claims that oil flowing through an underground pipeline has no effect on the environment (Sable Opp. at 20), that ignores not only the past history of these very pipelines but also the legal rule that California does not need to show a present effect on the environment to show a *likelihood* of irreparable harm.

**B.   The Balance of Equities and Public Interest Favor California.**

Sable claims it would be harmed as the result of an injunction. Sable Opp. at 20-21. But the harm Sable claims is entirely self-inflicted: its own conduct created the purported harms it now claims. The "self-inflicted nature of any harm suffered by [Sable] weighs in favor of granting preliminary injunctive relief." *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 806 (3d Cir. 1998). Sable not only purchased Lines CA-324/325 knowing they had been dormant for a decade due to a catastrophic oil spill, but also agreed to be bound by a consent decree which set specific constraints on any restart of the lines. Flores Decl., ¶ 9; Mot. at 4. Over seven months before Sable restarted the lines, a state court enjoined Sable from restarting them until Sable met certain conditions. Mot. at 5. Instead of complying with that court's order and the federal consent decree, Sable lobbied the federal government for the Wright Order, which Sable thought would allow it to restart the pipelines while ignoring court orders to the contrary. But a party that decides for itself that it may defy injunctions against it may not come into court to assert its own equities against an injunction that would halt that unauthorized

conduct. The only hardship Sable will suffer "would be to prevent [it] from engaging in further illegal activity, so the balance clearly weighs in [California's] favor." *DISH Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 601-02 (W.D.N.Y. 2011).

California has already demonstrated the public interest favors an injunction. *See* Mot. at 21; Reply to Defs. Opp. at 12. Sable's attempt to show otherwise relies on language from the Wright Order, effectively asking this Court to give that order conclusive deference in abdication of the judicial role. Sable Opp. at 21. The Court should reject this circular reasoning. Moreover, Sable's cited authority is clearly distinguishable from the facts of this case. *See Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Rsrv. v. Enbridge Energy Co., Inc.,* 626 F. Supp. 3d 1030, 1037, 1057 (W.D. Wis. 2022) (concerning pipeline that operated continuously for nearly 70 years and was subject to international treaty prohibiting any measure that would impede the flow of oil); *Sierra Club v. Clinton*, 689 F. Supp. 2d 1123, 1147 (D. Minn. 2010) (public's interests in construction of pipeline "slightly outweigh[ed]" the interest in avoiding environmental harm because pipeline was being constructed in an existing pipeline corridor which mitigated such harm).

## IV. THE COURT SHOULD NOT REQUIRE A BOND FROM CALIFORNIA.

Lacking any authority other than a passing citation (and an incorrect analysis) of Rule 65(c), Sable asks this Court to require California to post a *100-million-dollar* bond. Sable Opp. at 22. This Court should decline Sable's invitation to reward Sable for its blatant disregard and violation of a federal consent decree and court order. Moreover, contrary to Sable's argument, "[d]espite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted); Sable Opp. at 22. Indeed, courts have discretion to waive the bond requirement on a plaintiff state seeking to enjoin

unlawful agency action in public interest litigation. *See Washington v. United States Dept. of Educ.,* 807 F. Supp. 3d 1275, 1293 (W.D. Wash. 2025). That is precisely what California seeks to do here: enjoin *Defendants* from implementing, invoking, or enforcing the unlawful Wright Order. California should not be forced to front the cost of Defendants' and Sable's haphazard gamble with the rule of law. The Court should exercise its discretion to waive the bond requirement here.[5]

## CONCLUSION

California's motion for a preliminary injunction and stay should be granted.

Dated:  May 27, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JEREMY M. BROWN
Supervising Deputy Attorney General
ALICIA ROESSLER
REBECCA HUNTER
MARY HALEY OUSLEY
Deputy Attorneys General

*/s/ Brian Calavan*

BRIAN CALAVAN
Deputy Attorney General
 *Attorneys for Plaintiff State of California*

---

[5] As for California's requested stay, the APA (5 U.S.C. § 705) does not contemplate any such bond. *Am. Fed'n of Tchrs. v. Dep't of Educ.,* 779 F. Supp. 3d 584, 623 n.14 (D. Md. 2025).

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff State of California, certifies that this brief contains 3,969 words, which:

_X_ complies with the word limit of L.R. 11-6.1.


Dated:  May 27, 2026                              Respectfully submitted,

                                                  ROB BONTA
                                                  Attorney General of California
                                                  JEREMY BROWN
                                                  Supervising Deputy Attorneys General
                                                  ALICIA ROESSLER
                                                  REBECCA HUNTER
                                                  MARY HALEY OUSLEY
                                                  Deputy Attorneys General


                                                  */s/ Brian Calavan*

                                                  BRIAN CALAVAN
                                                  Deputy Attorney General
                                                  *Attorneys for Plaintiff State of California*

13