ROB BONTA
Attorney General of California
JEREMY BROWN (SBN 269159)
Supervising Deputy Attorney General
ALICIA ROESSLER (SBN 219623)
REBECCA HUNTER (SBN 356311)
STACY LAU (SBN 254507)
MARY HALEY OUSLEY (SBN 332711)
BRIAN CALAVAN (SBN 347724)
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  Oakland, CA 94612
  Telephone:  (510) 879-1981
  Fax:  (510) 622-2270
  E-mail:  Jeremy.Brown@doj.ca.gov
  Alicia.Roessler@doj.ca.gov
  Rebecca.Hunter@doj.ca.gov
  Brian.Calavan@doj.ca.gov

*Attorneys for Plaintiff*
*State of California*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br><br>       *Plaintiff*,<br><br>  v.<br><br>**CHRIS WRIGHT,** in his official capacity as Secretary of the U.S. Department of Energy; **UNITED STATES DEPARTMENT OF ENERGY,**<br><br>       *Defendants*. | Case No. 2:26-cv-3396-SVW-SSCx<br><br>**PLAINTIFF'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF INTERVENORS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND STAY**<br><br>Date: June 8, 2026<br>Time: 1:30 p.m.<br>Courtroom: 10A, 10th Floor<br>Judge: Hon. Stephen V. Wilson<br>Trial Date: Not Set<br>Action Filed: March 31, 2026 |

Plaintiff State of California ("California") submits the following objections to evidence submitted by Intervenors Sable Offshore Corp. and Pacific Pipeline Company ("Sable") in support of their Opposition to Plaintiff's Motion for a Preliminary Injunction and Stay.

Although district courts "may consider inadmissible evidence in the context of a preliminary injunction, this does not mean that evidentiary issues have no relevance to this proceeding. Such issues, however, properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015). As set forth below, the J. Caldwell Flores and Steve Rusch declarations are objectionable for several reasons. Accordingly, the majority of these declarations should be disregarded or given little to no weight in the determination of California's Motion.

As an initial matter, neither Mr. Caldwell Flores nor Mr. Rusch are qualified as an expert witness. *See* Fed. R. Evid. 702 (requiring qualification "as an expert by knowledge, skill, experience, training, or education."). Mr. Caldwell Flores states that he is the "President and Chief Operating Officer" of Sable." Caldwell Flores Decl. ¶ 1. Mr. Caldwell Flores does not state how long he has held that position and did not provide any additional background information. This is not sufficient to indicate that Mr. Caldwell Flores meets the requirements of Federal Rules of Evidence 702 to opine on, for example, scientific or engineering knowledge related to oil spill prevention or safety risks associated with pipeline shutdown, national security considerations and military activities, or financial interests of federal, state, and local entities. *See, e.g., id.* at ¶¶ 12, 32, 53, 59, 60, 67, 72-74. Fed. R. Evid. 702(a) (a witness qualified as an expert may testify in the form of an opinion if they demonstrate "scientific, technical, or other specialized knowledge"). Mr. Caldwell Flores' declaration includes statements on all of these topics.

Mr. Rusch states that he is the "Vice President, Regulatory & Environmental

2

Affairs" of Sable" but does not state how long he has held that position or what his position entails. Mr. Rusch further states that he has "over 46 years of experience in the oil and gas industry," lists several titles he has held at other companies in the past, that he has a bachelor's decree in civil engineering, and has been licensed by the state of California "as a Professional Engineer." Rusch Decl., ¶ 1. However, this is not sufficient to indicate that Mr. Rusch is qualified to opine on, for example, Sable's current or historic compliance with laws or regulations, or the meaning of California's laws. *See id.* ¶¶ 7-13, 16. Mr. Rusch's declaration includes statements on these topics.

As such, both declarations should be governed by Federal Rules of Evidence 701 regarding opinion testimony by lay witnesses. *Cf. Siebert v. Gene Security Network, Inc.*, 75 F.Supp.3d 1108, 1113 (N.D. Cal. 2014) (permitting lay witness testimony via declaration from director of the Office of Policy for Extramural Research Administration at NIH because her declaration contained "observations about the ordinary inner workings of the NIH, derived from her personal experience" and not matters that required "scientific, technical, or specialized knowledge.").

California's specific objections are as follows:

I.   **CALIFORNIA'S OBJECTIONS TO THE DECLARATION OF J. CALDWELL FLORES (DKT. NO. 24-1):**

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 1. "These valves reduce the worst-case potential release of oil by almost 40%." ¶ 12. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony. Fed. R. Evid. 602, 701. <br><br> This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |

3

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 2. "Contemporary analyses confirm that crude oil pipelines operated with limited cathodic protection are not more likely to result in oil spills or oil spills of increased size when other appropriate leak detection and prevention methods are implemented, such as those identified in the PHMSA Special Permit." ¶ 15. | Inadmissible hearsay; lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 801, 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 3. "OSFM confirmed that Sable's Operations and Maintenance Manual incorporated all procedural modifications contemplated by the Consent Decree. OSFM also confirmed that Sable has instituted a management of change plan to ensure any future procedural changes are similarly incorporated into the Operations and Maintenance Manual." ¶ 21. | Inadmissible hearsay. Fed. R. Evid. 801. |
| 4. "OSFM . . . confirmed the enhancements satisfied all applicable Consent Decree requirements." ¶ 24. | Inadmissible hearsay. Fed. R. Evid. 801. |
| 5. "These developments exacerbated an already-acute oil shortage on the West Coast as recognized in Executive Order 14156, 90 Fed. Reg. 8433 (Jan. 29, 2025), creating threats to national security and domestic energy supplies." ¶ 32. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |

| Evidence Objected To: | Grounds for Objection: |
| --- | --- |
| 6. "A court-ordered pipeline shutdown would be a difficult, complex, time-consuming process that carries additional safety risks.  Sable would first need to make operational adjustments at the Las Flores Canyon Facility, to allow for safe storage of produced oil. Sable would then need to cease additional oil flow into the Pipeline Segments and divert that oil to storage. Sable would next insert pipeline intervention tools ("pigs") in the Pipeline Segments to remove remaining oil and clean the lines utilizing nitrogen. Sable would then repressurize the Pipeline Segments with nitrogen to mitigate against internal corrosion. The amount of time required for these tasks can be significant depending on the availability of the necessary nitrogen, equipment and qualified technicians. Additionally, although Sable would employ best practices if ordered to shut down the Pipeline Segments, the topography of this pipeline requires significant planning to employ necessary safety procedures to safely purge the crude oil while avoiding over pressuring the pipelines." ¶ 53. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 7. "A business disruption of this magnitude could dramatically lower the company's share price, destroying value for shareholders, including not just institutional investors but also workers across the country whose pensions and retirement plans hold equity in Sable." ¶ 55. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 8. "Continued operation of the SYU and the SYPS is also indispensable to the livelihoods of approximately 300 well-paid contractors, including laborers, operators, welders, mechanics, electricians, engineers, longshoremen, and construction workers, many of whom are unionized. Because of the dearth of oil production in California, these jobs will also be difficult to replace if lost. Moreover, informing contractors that there is no longer work for them would compromise goodwill and jeopardize longstanding relationships between those individuals and Sable." ¶ 57. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 9. "Loss of these jobs would not only hurt the employees, contractors, and their families: local governments, principally Santa Barbara County, but also San Luis Obispo County and Kern County, would be negatively affected by the loss of revenue from income, sales, and property taxes," ¶ 59. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |

6

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 10.  "California is currently facing an energy crisis. It has the highest retail gasoline and aviation fuel costs in the United States, and the state must import most of its oil from foreign countries to satisfy its residents' growing energy demands. According to the California Energy Commission, over 61% of the crude oil feeding California refineries was imported from foreign countries, many in the turbulent Middle East. See Cal. Energy Comm'n, *Annual Oil Supply Sources to California Refineries*, https://tinyurl.com/4hkecyjn (last visited May 9, 2026). Whereas approximately thirty years ago in-state production constituted 50% of oil supply (and Alaskan production represented another 38%, for a domestic total of 88%), foreign imports have risen from 12% in 1997 to 61% last year. Iraq alone is responsible for 17% of California's foreign crude oil imports, and Middle Eastern imports collectively represent over a quarter of California's oil imports. See Cal. Energy Comm'n, *Foreign Sources of Crude Oil Imports to California*, https://tinyurl.com/yjtu77rx (last visited May 9, 2026)." ¶ 60. | Inadmissible hearsay; lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 801, 602, 701.<br><br>These statements do not appear to be based on Mr. Caldwell Flores' personal knowledge or experience.  Indeed, Mr. Caldwell Flores relied on information contained in online articles, which he linked to in his declaration. |

7

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 11.    "Many of these tankers must traverse the Strait of Hormuz, which is currently the site of intense military activity . . ." ¶ 60. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 12.    "In September 2025, the pipeline's owner sent a letter to California Governor Gavin Newsom, noting that the operator was in severe financial distress because of the pipeline's sudden underutilization. Without relief, the letter warned, the pipeline would have to be shut down, which would have severely negative consequences. The CEO added that California crude oil production was meeting only 25% of refinery demand and encouraged Governor Newsom to allow the SYU to reopen, which would reinfuse the pipeline system and allow more crude oil to flow north from Kern County. But without additional production coming online, by the end of 2025, the pipeline was essentially empty, and as of now, it is shut down. Prospects for restart are dim, as the economics of the pipeline remain highly challenged due to declining regional production and strict environmental regulations." ¶ 61. | Inadmissible hearsay; lack of foundation, personal knowledge; speculative; improper lay opinion testimony. Fed. R. Evid. 801, 602, 701.<br><br>These statements do not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |

Obj. to Int. Evid. iso Opp. to Mtn for Prelim. Inj. & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 13.  "And these refineries are needed to supply needed fuel, including gasoline, not just to California but also the rest of the West Coast, including inland states like Nevada and Arizona that are dependent on California." ¶ 62. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 14.  "If a court prevents Sable from producing oil and gas from the SYU and transporting oil through the SYPS to market, it is highly unlikely that the SYU will ever be produced, stranding billions of dollars of valuable natural resources owned by the public and destroying significant economic activity." ¶ 65. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 15.  "An injunction would eliminate this significant contribution to the U.S. Treasury . . ." ¶ 67. | Lack of foundation, personal knowledge; speculative; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 16.  "Sable is one of Santa Barbara County's highest taxpayers." ¶ 69. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 17.   "California is home to more than 40 major military installations, the highest concentration of any U.S. state. These bases serve as critical hubs for training, logistics, and research across every branch of the Armed Forces." ¶ 72. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 18.   "Among these installations are Naval Base San Diego, the largest naval base on the West Coast and home to the U.S. Pacific Fleet; Camp Pendleton, the Marine Corps' premier West Coast expeditionary training facility; Edwards Air Force Base, where the world's most extensive aircraft testing takes place; and Vandenberg Space Force Base, the country's primary West Coast space launch and missile testing facility." ¶ 73. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |
| 19.   "A reliable domestic supply of crude oil to the West Coast is essential to military readiness and homeland security." ¶ 74. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Caldwell Flores' personal knowledge or experience. |

10

## II. CALIFORNIA'S OBJECTIONS TO THE DECLARATION OF STEVE RUSCH (DKT. NO. 24-6):

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 1. "The impacts of that existing pipeline on the environment were addressed in the original comprehensive Environmental Impact Statement and Environmental Impact Report prepared by the federal Bureau of Land Management and the California State Lands Commission prior to construction of the Pipeline Segments and pursuant to the National Environmental Policy Act and the California Environmental Quality Act, respectively. The original EIS/EIR is available at: https://cosantabarbara.app.box.com/s/lkl9oo9xdsaangevdp6pasfo0cmimvlt." ¶ 4. | Inadmissible hearsay.  Fed. R. Evid. 801. |
| 2. "The original EIR/EIS analyzed the potential environmental effects of long term operation, repairs that might become necessary, and ongoing maintenance. They also considered the risk to species that may occur in and around the pipeline as a result of long term operation, repairs, and maintenance." ¶ 5. | Inadmissible hearsay.  Fed. R. Evid. 801. |

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 3. "Sable has never taken the position that it is not obligated to take appropriate measures to protect ecologically sensitive environments." ¶ 7. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 4. "Sable has not taken the position that the DPA Order excuses compliance with any particular provision of the California Fish and Game Code. To the contrary, since the DPA Order was entered, Sable has continued to work with the California Department of Fish and Wildlife on past permitting issues." ¶ 8. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 5. "The LFC has never been regulated by the California Geologic Energy Management Division ("CalGEM")." ¶ 11. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |

12

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 6. "Facilities are 'attendant to' oil and gas production, and therefore subject to CalGEM jurisdiction, only when they are within the lease area of oil and gas fields. LFC is not located within any operating designated oil and gas field nor within the boundary of any oil and gas lease. The LFC is not properly subject to CalGEM's jurisdiction for this and other reasons." ¶ 13. | Lack of foundation, personal knowledge; improper lay opinion testimony, including improper legal conclusion. Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Rusch's personal knowledge or experience, including his legal conclusions regarding CalGEM's jurisdiction. |
| 7. "However, on September 26, 2024, CalGEM asserted for the first time that LFC is a "production facility" subject to CalGEM's jurisdiction, bonding, and other regulatory requirements. CalGEM has demanded a bond of $57,258,121." ¶ 14. | Inadmissible hearsay; lack of foundation, personal knowledge. Fed. R. Evid. 801, 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 8. "Despite not being regulated by CalGEM, the LFC is subject to other regulatory regimes and is complying with them. For example, PHMSA regulates the LFC." ¶ 16. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 9. "Throughout its jurisdictional dispute with CalGEM, Sable has continued to cooperate with CalGEM, whose agents have been accommodated at LFC on five separate days for inspections: October 31, 2024; August 28, 2025; and September 2–4, 2025." ¶ 17. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |

13

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 10.    "Sable continues to cooperate with CalGEM, consistent with its legal obligations and a reservation of its rights." ¶ 18. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 11.    "On March 16, 2026, counsel for the Department of Conservation contacted Sable regarding an inspection of LFC. Sable promptly responded to this request and, in both its initial response and subsequent communications, has reiterated its willingness to accommodate CalGEM's inspection request, subject to a full reservation of Sable's rights at law and in equity. This includes, without limitation, the right to dispute and challenge any asserted jurisdiction by CalGEM over LFC, and the requirement that any inspection proceed in accordance with the applicable provisions of the California Civil Discovery Act ("CDA") in light of the parties' ongoing dispute concerning CalGEM's jurisdiction over LFC." ¶ 19. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Rusch's personal knowledge or experience. |

14

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 12.   "Sable further offered to identify an inspection date earlier than the 30 days from service required under the CDA, even as soon as the following week, provided that Sable is afforded sufficient time to receive CalGEM's demand and serve its written objections in advance of any inspection." ¶ 20. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 13.   "On May 2, 2024, Sable met with CDPR to discuss the process for renewing the easement and making the needed repairs to comply with the Consent Decree. Sable informed CDPR that the pipeline would be repaired, not replaced. Sable informed CDPR that, at that time, it anticipated resuming oil transportation in the repaired line by September 2024. In response, CDPR stated that the process of obtaining the easement would be extensive, likely taking a year or more. Sable's notes concerning this call reflect that both parties understood that oil would flow through Segment CA-325 during the period while the easement was being finalized." ¶ 26. | Inadmissible hearsay; lack of foundation, personal knowledge; speculative; improper lay opinion testimony.  Fed. R. Evid. 801, 602, 701.<br><br>These statements do not appear to be based on Mr. Rusch's personal knowledge or experience because there is no indication that Mr. Rusch personally attended the referenced meeting or prepared the referenced notes.  Additionally, Mr. Rusch's statement regarding Sable's notes is hearsay and speculative as to how State Parks understood that oil would flow through the pipeline during the period the easement was being finalized. |

15

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 14.  "On May 22, 2025, Sable met with CDPR to discuss the easement renewal process and the steps required. During that meeting, representatives for the State again stated that further CEQA review would not be required." ¶ 33. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 801, 602, 701<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience because there is no indication that Mr. Rusch personally attended the referenced meeting. |
| 15.  "On July 3, 2025, CDPR's Chief Counsel informed Sable's representatives that it was likely that easement renewal was exempt from the California Environmental Quality Act ("CEQA") and that no further environmental review would be needed, because environmental review had already been completed at the time Segment CA-325 was initially constructed. This was consistent with the position that CDPR had taken with respect to the repairs in the May 9, 2025 Notice of Exemption, and with CDPR's prior statements to Sable." ¶ 35. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Rusch's personal knowledge or experience because there is no indication that State Parks' Chief Counsel made any of the alleged statements to Mr. Rusch. |
| 16.  "I understand that Sable's representative responded immediately to Ms. Siverson, asking about the new meeting date. He received no response." ¶ 45. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |

16

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 17.    "I understand that Sable's representative followed up on September 11, 2025, to Ms. Siverson and her colleague, Chief Counsel Tara Lynch, but received no reply." ¶ 46. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 18.    "I understand that Sable's representative followed up again on September 14, 2025, and on September 15, 2025, with both Ms. Siverson and Ms. Lynch, but received no reply." ¶ 47. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 19.    "On September 17, 2025, CDPR stated that it would 'reach out as soon as we can to schedule a meeting with Sable.'" ¶ 48. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 20.    "I understand that Sable's representative followed up again with a phone call to Ms. Siverson on September 22, 2025, but received no response." ¶ 49. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 21. "I understand that Sable's representative followed up again with a call to Ms. Siverson on September 24, 2025. Ms. Siverson responded by email, stating only that "State Parks is reviewing internally. I will let you know as soon as we are ready to meet." ¶ 50. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 22. "I understand that Sable's representative followed up again on September 25, 2025, with a message to Ms. Lynch, but received no response." ¶ 51. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 23. "I understand that Sable's representative followed up again on September 30, 2025, with a call to Ms. Lynch, but received no response." ¶ 52. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 24. "I understand that Sable's representative followed up again on October 7, 2025, with a call to Ms. Lynch, but received no response." ¶ 53. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |

Obj. to Int. Evid. iso Opp. to Mtn for Prelim. Inj. & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

| Evidence Objected To: | Grounds for Objection: |
| --- | --- |
| 25.   "I understand that Sable's representative followed up again on October 28, 2025, with a call to Ms. Lynch, but received no response." ¶ 54. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 26.   "I understand that Sable's representative followed up again on November 6, 2025, with a message to Ms. Siverson asking for a call, but received no response." ¶ 55. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 27.   "Nothing under Sable's proposed easement with CDPR would authorize Sable to conduct any activities in the Park that were not already evaluated under CEQA in the original EIR/EIS, or which CDPR has not already found to be exempt from further CEQA review." ¶ 60. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 28.   "I understand that Sable's representative followed up on December 22, 2025, to Ms. Siverson and Ms. Lynch." ¶ 61. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |

Obj. to Int. Evid. iso Opp. to Mtn for Prelim. Inj. & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)

| Evidence Objected To: | Grounds for Objection: |
|---|---|
| 29. "On December 26, 2025, Ms. Siverson requested a meeting with Sable, promising to send 'a list of available times" within the 'next couple days.'" ¶ 62. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 30. "I understand that, on December 30, 2025, Sable's representative followed up, but Ms. Siverson still had no meeting times to propose." ¶ 63. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 31. "On December 31, 2025, Ms. Siverson sent a corrected Right of Entry Permit, but still no meeting times." ¶ 64. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 32. "A meeting finally took place on January 5, 2026. I understand that, at that meeting, CDPR reported that it had not commenced the 'Initial Study' it had claimed on November 13, 2025, was necessary for environmental review." ¶ 66. | Lack of foundation, personal knowledge; improper lay opinion testimony. Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Rusch's personal knowledge or experience. |

20

| Evidence Objected To: | Grounds for Objection: |
| --- | --- |
| 33.   "Another meeting was set for January 26, 2026. Sable continued to try to meet CDPR's ever-changing demands, but CDPR continued to stonewall." ¶ 67. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>This statement does not appear to be based on Mr. Rusch's personal knowledge or experience. |
| 34.   "Further, I understand that Sable's counsel sought clarification as to the scope of biological and cultural survey information CDPR wanted for its review. In a response email that was accidentally sent to Sable's counsel, CDPR wrote back, 'I would tell him that it is not our job to tell them what we need; it is their job to submit any and all information thet [sic] they want included in our evaluation.'" ¶ 67. | Lack of foundation, personal knowledge; improper lay opinion testimony.  Fed. R. Evid. 602, 701.<br><br>These statements do not appear to be based on Mr. Rusch's personal knowledge or experience because there is no indication that Mr. Rusch has any personal knowledge of the alleged email from State Parks. |

Dated:  May 27, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JEREMY BROWN
Supervising Deputy Attorney General
ALICIA ROESSLER
REBECCA HUNTER
MARY HALEY OUSLEY
Deputy Attorneys General

/s/ Brian Calavan

BRIAN CALAVAN
Deputy Attorney General
 *Attorneys for Plaintiff State of California*

Obj. to Int. Evid. iso Opp. to Mtn for Prelim. Inj. & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)