ROB BONTA
Attorney General of California
JEREMY BROWN (SBN 269159)
Supervising Deputy Attorney General
ALICIA ROESSLER (SBN 219623)
REBECCA HUNTER (SBN 356311)
STACY LAU (SBN 254507)
MARY HALEY OUSLEY (SBN 332711)
BRIAN CALAVAN (SBN 347724)
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA 94612
 Telephone:  (510) 879-1981
 Fax:  (510) 622-2270
 E-mail:  Jeremy.Brown@doj.ca.gov
 Alicia.Roessler@doj.ca.gov
 Rebecca.Hunter@doj.ca.gov
 Brian.Calavan@doj.ca.gov

*Attorneys for Plaintiff*
*State of California*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br><br>                                    *Plaintiff,*<br><br>        **v.**<br><br>**CHRIS WRIGHT,** in his official capacity as Secretary of the U.S. Department of Energy; **UNITED STATES DEPARTMENT OF ENERGY,**<br><br>                                    *Defendants.* | Case No. 2:26-cv-3396-SVW-SSCx<br><br>**PLAINTIFF'S RESPONSES TO INTERVENORS' OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND STAY AGAINST ALL DEFENDANTS**<br><br>Date:             June 8, 2026<br>Time:             1:30 p.m.<br>Courtroom:   10A, 10th Floor<br>Judge:           Hon. Stephen V. Wilson<br>Trial Date:      Not Set<br>Action Filed:  March 31, 2026<br><br>Filed concurrently with: Reply to Intervenors' Opposition to Plaintiff's Motion for Preliminary Injunction; Plaintiff's Objections to Evidence in Support of Intervenors' Opposition to Motion for Preliminary Injunction |

Plaintiff State of California ("California") submits the following Responses to Intervenors Sable Offshore Corp.'s and Pacific Pipeline Company's ("Sable") objections to evidence submitted by California in support of its Motion for Preliminary Injunction and Stay.

Courts apply a more relaxed admissibility standard to evidence proffered for a preliminary injunction and may consider otherwise inadmissible evidence. *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (observing that the rules of evidence do not strictly apply to preliminary injunction proceedings). While evidentiary issues are not irrelevant to preliminary injunction proceedings, such issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n*, 119 F. Supp. 3d at 1185.

## I. CALIFORNIA'S RESPONSES TO SABLE'S OBJECTIONS TO THE DECLARATION OF DENA BELLMAN (DKT. NO. 16-3).

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| 1. "It is my understanding that Sable does not have a fee interest in any land at Gaviota State Park. Also, although CA-325 crosses Highway 101 near Gaviota State Beach, no portion of CA-325 under Gaviota State Park follows a public right-of-way." ¶ 4. | This is a legal conclusion and thus irrelevant. Fed. R. Evid. 401, 402. *See GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1026 (C.D. Cal. 2017) ("Legal arguments are inappropriate in declarations."). | Ms. Bellman's testimony does not constitute a legal conclusion, but rather factual statements based on personal knowledge under Federal Rules of Evidence (FRE) 601 and 602. In paragraphs 6-8 of Ms. Bellman's declaration, she proffers the factual basis for this cited testimony. Additionally, Ms. Bellman's opinion is admissible lay opinion pursuant to FRE 701 as it is rationally based on her perception and personal |

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| | | knowledge of the easement negotiations between Sable and the California Department of Parks and Recreation (State Parks) during her time as the District Superintendent of the Channel Coast District, which includes Gaviota State Park. This testimony is therefore relevant and admissible under FRE 401 and 402. |
| 2. "Neither Celeron nor Sable was granted a new easement, and Sable does not currently have an easement to transport oil under or across Gaviota State Park." ¶ 7. | This is a legal conclusion and thus irrelevant. Fed. R. Evid. 401, 402; *see also GemCap*, 269 F. Supp. 3d at 1026. The assertion about the status of the easement in Gaviota State Park is the subject of a related litigation. *See Cal. Dep't of Parks & Rec. v. Sable Offshore Corp.*, No. 2:26-cv-02946 SVW-SSC (C.D. Cal).| Ms. Bellman's testimony does not constitute a legal conclusion, but rather factual statements based on personal knowledge under FRE 601 and 602. Additionally, Ms. Bellman's opinion is admissible lay opinion pursuant to FRE 701 as it is rationally based on her perception and personal knowledge of the facts regarding the historical relationship between State Parks and Sable, including the easement negotiations during her time as the District Superintendent of the Channel Coast District, which includes Gaviota State Park. This |

3

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| | | testimony is therefore relevant and admissible under FRE 401 and 402. |
| 3.  "Those permits are necessary because, as mentioned above, Sable does not have an easement that would otherwise allow it to access the Park." ¶ 9. | This is a legal conclusion and thus irrelevant. Fed. R. Evid. 401, 402; *see also GemCap*, 269 F. Supp. 3d at 1026. The assertion about the status of the easement in Gaviota State Park is the subject of a related litigation. *See Cal. Dep't of Parks & Rec. v. Sable Offshore Corp.*, No. 2:26-cv-02946-SVW-SSC (C.D. Cal). | This testimony does not constitute a legal conclusion. Rather, it constitutes a factual statement based on personal knowledge under FRE 601 and 602. Additionally, Ms. Bellman's expressed opinion is admissible lay opinion pursuant to FRE 701 as it is rationally based on her perception and personal knowledge of the facts regarding the historical relationship between State Parks and Sable, including the easement negotiations during her time as the District Superintendent of the Channel Coast District, which includes Gaviota State Park. It is therefore relevant and admissible for the Court to consider under FRE 401 and 402. |
| 4.  "The Annual Permit does not allow PPC or Sable to transport oil through that portion of CA 325 | This is a legal conclusion and thus irrelevant. Fed. R. Evid. 401, 402. Moreover, the statement is hearsay, Fed. R. Evid. 801, and the document in | This testimony does not constitute a legal conclusion. Rather, it is an admissible lay opinion pursuant to FRE 701 as it |

| Evidence Objected To: | Grounds for Objection: | California's Response: |
| --- | --- | --- |
| that passes through Gaviota State Park." ¶ 11. | question speaks for itself. *Cf. United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) (holding lay witnesses may not testify on "the correct interpretation of a contract"). | is rationally based on Ms. Bellman's perception of the most recent Right of Entry permit ("Annual Permit"), which was negotiated and issued by State Parks during Ms. Bellman's time as the District Superintendent. This testimony helps the Court understand Ms. Bellman's perception related to the Annual Permit and is therefore relevant and admissible under FRE 401 and 402. |
| 5. "To my knowledge, no one at State Parks asked Sable to remove CA-325 itself from Gaviota State Park prior to March 14, 2026, when State Parks sent Sable the above-referenced letter. Thus, it is my understanding that Sable had permission from State Parks to keep CA-325 and minimally maintain it in a dormant state at Gaviota State Park consistent with applicable ROE permits until the letter was issued and the | This assertion is speculative and lacks foundation. *See* Fed. R. Evid. 602, 701. This is also a legal conclusion and thus irrelevant. Fed. R. Evid. 401, 402; *see also GemCap*, 269 F. Supp. 3d at 1026. The assertion about the status of the easement in Gaviota State Park is the subject of a related litigation. *See Cal. Dep't of Parks & Rec. v. Sable Offshore Corp.*, No. 2:26-cv-02946 SVW-SSC (C.D. Cal). | Ms. Bellman's testimony is within her personal knowledge and not based on speculation. The foundation for her testimony is provided in the preceding paragraph detailing a letter in which Ms. Bellman is copied during her time as the District Superintendent of the Channel Coast District, which includes Gaviota State Park. It thus complies with FRE 602 and 701. This testimony is also relevant under FRE 401 and 402 because it helps the Court understand the easement negotiations between |

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| right to keep CA 325 was revoked." ¶ 13. | | Sable and State Parks. |

II. CALIFORNIA'S RESPONSES TO SABLE'S OBJECTIONS TO THE DECLARATION OF JULIE VANCE (DKT. NO. 16-4).

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| 1. "Species listed under CESA as endangered, threatened, or candidate in proximity to the portion of the Pipelines that traverse San Luis Obispo and Kern counties include: California jewel flower (Caulanthus californicus); Crotch's bumblebee (Bombus crotchii); Nelson's antelope squirrel (Ammospermophilus nelsoni); giant kangaroo rat (Dipodomys ingens); Tipton kangaroo rat (D. nitratoides nitratoides); and San Joaquin kit fox (Vulpes macrotis mutica). This list is based on an ITP Application that Plains Pipeline, L.P. | This is irrelevant and speculative. Fed. R. Evid. 401, 402, 602, 701. Ms. Vance admits that the ITP Application submitted by Plains Pipeline L.P. is irrelevant, as it was "for a project that would have fully replaced the Pipeline," and "the project never moved forward." ¶¶ 8-9. Ms. Vance never explains how the environmental impacts of putting in a new pipeline are comparable to occasional maintenance on an existing pipeline. This is further irrelevant and speculative because Ms. Vance only lists plants and animal species in San Luis Obispo and Kern Counties without describing any harm that has befallen any of these species or making any assertion that the | Ms. Vance's testimony is within her personal knowledge as Regional Manager of the Central Region of the California Department of Fish and Wildlife and not based on speculation. Ms. Vance's testimony is admissible lay opinion, directly relevant to the Court as it considers the risk of harm to species protected under the California Endangered Species Act posed by Sable restarting its pipeline. Ms. Vance clearly states that the list of species is based on a proposed pipeline "within the same footprint" as Sable's pipeline. Thus, Ms. Vance's testimony is relevant and admissible under FRE 401, 402, and 701. |

6

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| ('Plains Pipeline') submitted to CDFW's Central Region office in August 2020 for a project that would have fully replaced the Pipeline within the same footprint." ¶ 8. | subsurface transportation of hydrocarbons in a sealed pipeline impacts these species in any way. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."). | |
| 2. "On October 8, 2020, CDFW sent a letter to Plains Pipeline, informing Plains Pipeline that its ITP Application was incomplete. CDFW received a revised ITP Application from Plains Pipeline on November 9, 2020. On December 9, 2020, CDFW sent another letter to Plains Pipeline, informing Plains Pipeline that its revised ITP Application was incomplete. Ultimately, the project never moved forward." ¶ 9. | This is irrelevant and speculative. Fed. R. Evid. 401, 402, 602, 701. Ms. Vance admits that the ITP Application submitted by Plains Pipeline L.P. is irrelevant, as it was "for a project that would have fully replaced the Pipeline," and "the project never moved forward." ¶¶ 8-9. Ms. Vance never explains how the environmental impacts of putting in a new pipeline are comparable to occasional maintenance on an existing pipeline. | Ms. Vance's testimony is relevant to help the Court understand prior state regulatory efforts to update the pipeline at issue. Ms. Vance's testimony is admissible lay opinion, directly relevant to the Court as it considers the risk of harm to species protected under the California Endangered Species Act posed by Sable restarting its pipeline. Thus, Ms. Vance's testimony is relevant and admissible under FRE 401, 402, and 701. |

7

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| 3. "Western burrowing owl (Athene cunicularia hypugaea); Blunt nosed leopard lizard and California condor (Gymnogyps californianus) are also known to occur in proximity to the portion of the Pipeline that traverses San Luis Obispo and Kern counties. Western burrowing owl was listed as a candidate species under CESA in October 2024 and Blunt-nosed lizard and California condor are both fully protected species." ¶ 10. | This is irrelevant and speculative. Fed. R. Evid. 401, 402, 602, 701. Ms. Vance lists plant and animal species who are "known to occur" in "San Luis Obispo and Kern Counties," ¶¶ 8, 10, without describing any harm that has befallen any of these species or making any assertion that the subsurface transportation of hydrocarbons in a sealed pipeline impacts these species in any way. *See Caribbean Marine*, 844 F.2d at 674. | Ms. Vance's testimony is within her personal knowledge as Regional Manager of the Central Region of the California Department of Fish and Wildlife and not based on speculation. Ms. Vance's testimony is directly relevant to the Court as it considers the risk of harm to species protected under the California Endangered Species Act posed by Sable restarting its pipeline. Thus, Ms. Vance's testimony is relevant and admissible under FRE 401 and 402. |
| 4. "The CNDBB indicates the following species occur in proximity to the portion of the Pipeline that traverses Santa Barbara County: unarmored threespine stickleback (Gasterosteus aculeatus williamsoni); southern California | This is irrelevant and speculative. Fed. R. Evid. 401, 402, 602, 701. Ms. Vance again simply lists plant and animal species who "occur" in "Santa Barbara County," ¶ 12, without describing any harm that has befallen any of these species or making any assertion that the subsurface transportation of | Ms. Vance's testimony is within her personal knowledge as Regional Manager of the Central Region of the California Department of Fish and Wildlife and not based on speculation. Ms. Vance's testimony is directly relevant to the Court as it considers the risk of harm to species protected under the California |

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| steelhead (Oncorhynchus mykiss); California red-legged frog (Rana draytonii); and California newt (Taricha torosa)." ¶ 12. | hydrocarbons in a sealed pipeline impacts these species in any way. *See Caribbean Marine*, 844 F.2d at 674. | Endangered Species Act posed by Sable restarting its pipeline. Thus, Ms. Vance's testimony is relevant and admissible under FRE 401 and 402. |
| 5. "Depending on the type of maintenance, repair, or other work to the Pipeline that will need to be completed, an ITP or LSAA from CDFW might be required before the work may begin." ¶ 15. | This is irrelevant and speculative. Fed. R. Evid. 401, 402, 602, 701. Ms. Vance concedes that "*[d]epending* on the type of maintenance, repair, or other work to the Pipeline that will need to be completed, an ITP or LSAA from CDFW *might* be required before the work may begin." ¶ 15 (emphasis added). Ms. Vance cannot point to any work on the Pipeline that requires or is likely to require any permit from CDFW. *See Caribbean Marine*, 844 F.2d at 674. | Ms. Vance's testimony is within her personal knowledge as Regional Manager of the Central Region of the California Department of Fish and Wildlife and not based on speculation. Ms. Vance's testimony is relevant to help the Court understand state regulatory requirements applicable to the pipeline at issue. This testimony is also directly relevant to the Court as it considers the risk of harm to species protected under the California Endangered Species Act posed by Sable restarting its pipeline. Thus, Ms. Vance's testimony is relevant and admissible under FRE 401 and 402. |

9

**III. CALIFORNIA'S RESPONSES TO SABLE'S OBJECTIONS TO THE DECLARATION OF ROHIT SHARMA (DKT. NO. 16-5).**

| Evidence Objected To: | Grounds for Objection: | California's Response: |
| --- | --- | --- |
| 1. "The Las Flores Canyon Facility is subject to requirements under, *inter alia*, California Public Resources Code sections 3106, 3224, and 3270, and implementing regulations, California Code of Regulations ("C.C.R."), title 14, section 1712 et seq. These requirements include: conducting tests or inspections that the State Oil and Gas Supervisor, acting through CalGEM, has deemed necessary to establish reliability of the Facility's pipeline system, 14 C.C.R. § 1774.1(c); pressure testing before returning to service pipelines that have leaked and released a certain amount of fluids, and submitting test results to CalGEM within seven days of the test, 14 C.C.R. § | This is a legal conclusion and thus irrelevant. Fed. R. Evid. 401, 402. Whether the Las Flores Canyon Facility is subject to CalGEM jurisdiction is the subject of separate litigation. *See Sable Offshore Corp. v. Cal. Geologic Energy Mgmt. Div.*, No. 26WM000036 (Cal. Super. Ct. Sacramento Cnty. Feb. 17, 2026). It is thus inappropriate for a declaration. *See GemCap*, 269 F. Supp. 3d at 1028. | Mr. Sharma's testimony does not constitute a legal conclusion. Rather, it is rationally based on Mr. Sharma's personal knowledge and perception as Chief Deputy of Operations at CalGem regarding the state regulatory requirements applicable to the Las Flores Canyon Facilities. It is thus admissible under FRE 602 and 701. This testimony is also directly relevant to the Court as it considers the risk of harm posed by the Wright Order to California's regulatory authority. Thus, Mr. Sharma's testimony is relevant and admissible under FRE 401 and 402. |

10

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| 1774.1(d); modifying the design or construction of newly installed pipelines, and/or conducting additional testing and maintenance of such pipelines, at CalGEM's request, 14 C.C.R. § 1774; and maintaining production facilities in good condition and in a manner that prevents leakage or corrosion and safeguards life, health, property, and natural resources, 14 C.C.R. § 1777(a)." ¶ 5. | | |
| 2. "The following are examples of regulatory violations that, if present, would be identified and addressed during a CalGEM inspection, and the potential threats to safety and the environment if the violations are not addressed: a. Failure to properly dispose of oilfield waste and refuse could result in a spill or leak, | This is irrelevant and speculative. Fed. R. Evid. 401, 402, 602, 701. Mr. Sharma points only to "regulatory violations that, *if present*, would be identified during a CalGEM inspection." ¶ 9 (emphasis added). Mr. Sharma cannot point to a single regulatory violation at the Las Flores Canyon Facility. Mr. Sharma does not point to any actual harm suffered or about to be suffered by CalGEM. *See* | Mr. Sharma's testimony does not constitute a legal conclusion. Rather, it is rationally based on Mr. Sharma's personal knowledge and perception as Chief Deputy of Operations at CalGem regarding the state regulatory requirements applicable to the Las Flores Canyon Facilities. It is thus admissible under FRE 602 and 701. This testimony is also directly |

| Evidence Objected To: | Grounds for Objection: | California's Response: |
| --- | --- | --- |
| potentially releasing contaminants into storm drains, contaminating soil, groundwater, and/or drinking water, and causing a public nuisance. 14 C.C.R. § 1775(a). b. Failure to maintain production facilities in good condition and in a manner that prevents leakage or corrosion in accordance with 14 C.C.R. § 1777(a) increases threats to public safety and the environment. Gas leaks at certain concentration levels create ignition risks and can also release greenhouse gases into the atmosphere. Fluid leaks can result in the release of contaminants into storm drains, the contamination of soil, groundwater, and/or drinking water, and cause a public nuisance. A standing pool of hydrocarbon fluid can present a fire hazard. Equipment submerged in fluid | *Caribbean Marine*, 844 F.2d at 674. | relevant to the Court as it considers the risk of harm posed by the Wright Order to California's regulatory authority. Thus, Mr. Sharma's testimony is relevant and admissible under FRE 401 and 402. |

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| can corrode over time, making it inoperable and prone to leaks. c. Failure to maintain adequate secondary containment in accordance with 14 C.C.R. § 1773.1 poses a threat of contamination to the surrounding areas in the event of a spill. | | |
| 3. "The oil and gas production facilities at the Las Flores Canyon Facility include an Oil Treating Plant and Cogeneration Facility, Stripping Gas Treatment Plant, and Pacific Offshore Pipeline Company Gas Treatment Facility, consisting of hundreds of structures and other units such as oil sludge thickener tanks, equalization tanks, vacuum flash drums, aeration basins, vessels, pipelines, and secondary containment, all of which CalGEM needs | This is a legal conclusion and thus irrelevant. Fed. R. Evid. 401, 402. Whether CalGEM "needs to be able to inspect" the Las Flores Canyon Facility depends on whether it is subject to CalGEM jurisdiction, which is the subject of separate litigation. *See Sable Offshore Corp. v. Cal. Geologic Energy Mgmt. Div.*, No. 26WM000036 (Cal. Super. Ct. Sacramento Cnty. Feb. 17, 2026). It is thus inappropriate for a declaration. *See GemCap*, 269 F. Supp. 3d at 1028. | Mr. Sharma's testimony does not constitute a legal conclusion. Rather, it is rationally based on Mr. Sharma's personal knowledge and perception as Chief Deputy of Operations at CalGem regarding the state regulatory requirements applicable to the Las Flores Canyon Facilities. It is thus admissible under FRE 602 and 701. This testimony is also directly relevant to the Court as it considers the risk of harm posed by the Wright Order to California's regulatory authority. Thus, Mr. Sharma's testimony is relevant and admissible under FRE |

13

| Evidence Objected To: | Grounds for Objection: | California's Response: |
|---|---|---|
| to be able to inspect on at least an annual basis." ¶ 10. | | 401 and 402. |
| 4. "If Sable denies access to CalGEM inspectors on the basis of the Wright Order, it would impede CalGEM's ability to ensure compliance with oil and gas production facility requirements and to prevent damage to life, health, property, and natural resources." ¶ 11. | This is irrelevant and speculative. Fed. R. Evid. 401, 402, 602, 701. Mr. Sharma does not identify a single example of a time that CalGEM inspectors were denied access to the Las Flores Canyon facility because of the DPA Order. Instead, she testifies that *"[i]f Sable denies access to CalGEM inspectors on the basis of the Wright Order*, it would impede CalGEM's ability to ensure compliance with oil and gas production facility requirements."* ¶ 11 (emphasis added). This is speculative. Mr. Sharma does not point to any actual harm suffered or about to be suffered by CalGEM. *See Caribbean Marine*, 844 F.2d at 674. | Mr. Sharma's testimony does not constitute a legal conclusion. Rather, it is rationally based on Mr. Sharma's personal knowledge and perception as Chief Deputy of Operations at CalGem regarding the state regulatory requirements applicable to the Las Flores Canyon Facilities. It is thus admissible under FRE 602 and 701. This testimony is also directly relevant to the Court as it considers the risk of harm posed by the Wright Order to California's regulatory authority. Thus, Mr. Sharma's testimony is relevant and admissible under FRE 401 and 402. |

14

Dated:  May 27, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JEREMY BROWN
Supervising Deputy Attorney General
ALICIA ROESSLER
REBECCA HUNTER
MARY HALEY OUSLEY
Deputy Attorneys General


*/s/ Brian Calavan*

BRIAN CALAVAN
Deputy Attorney General
*Attorneys for Plaintiff State of California*

Plaintiff's Resp. to Intervenors' Obj. to Evidence Submitted iso
Plaintiff's Mtn for Prelim. Inj. & Stay – (Case No. 2:26-cv-3396-SVW-SSCx)