ROB BONTA
Attorney General of California
JEREMY BROWN (SBN 269159)
Supervising Deputy Attorney General
ALICIA ROESSLER (SBN 219623)
REBECCA HUNTER (SBN 356311)
BRIAN CALAVAN (SBN 347724)
KAVITA LESSER (SBN 233655)
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013-1256
 Telephone:  (213) 269-6767
 Fax:  (213) 897-2638
 E-mail:  Jeremy.Brown@doj.ca.gov
 Alicia.Roessler@doj.ca.gov

*Attorneys for Plaintiff*
*State of California*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,** <br><br> *Plaintiff,* <br><br> v. <br><br> **CHRIS WRIGHT,** in his official capacity as Secretary of the U.S. Department of Energy; **UNITED STATES DEPARTMENT OF ENERGY,** <br><br> *Defendants*. | No. 2:26-cv-3396-SVW-SSCx <br><br> **PLAINTIFFS' JOINT SUPPLEMENTAL BRIEF FILED PURSUANT TO INSTRUCTION AT JUNE 8, 2026 HEARING** <br><br> Courtroom:  10A, 10th Floor <br> Judge:  Hon. Stephen V. Wilson <br> Trial Date:  Not Set <br> Action Filed: March 31, 2026 |

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................. 1

Argument ................................................................................................................. 2

I.    The Court Should Grant California's Motion To Enforce the Consent Decree and Deny the U.S. Motion To Modify or Terminate. ........................................................................................... 2

    A.    The Court Should Not Permit the U.S. and Sable To Defy, Modify, or Dissolve the Consent Decree. ................................. 2

    B.    Modification of the Consent Decree Is Not Justified by Any Preemptive Effect of the Wright Order. ........................... 4

    C.    Modification of the Consent Decree Is Not Justified by PHMSA's Unlawful Federalization Order. ........................... 5

II.    The Court Should Grant California's Request for a Preliminary Injunction and Stay the Wright Order. ....................................... 7

    A.    The Wright Order Is Subject to Judicial Review ...................... 8

    B.    California Is Likely To Succeed on the Merits That the Wright Order Is Unlawful. ..................................................... 9

        1.    The Wright Order Exceeds the DPA's Grant of Authority and Violates DOE's Own Regulatory Requirements. ................................................................. 9

        2.    DOE and Sable Have Placed the Wright Order's Preemptive Effect at Issue, and DOE's Attempts To Preempt Are Barred by the Statute and the Constitution. ....................................................... 10

    C.    The Injunction Is Needed To Prevent Irreparable Harm to California. ............................................................................ 12

    D.    Equitable Factors Weigh in Favor of a Preliminary Injunction. ........................................................................... 14

    E.    The Court Should Grant Preliminary Relief Against the Wright Order Regardless of Relief in Related Cases. .............. 14

Conclusion .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbott v. Perez*
585 U.S. 579 (2018) ................................................................................ 12

*Ariz. Dream Act Coal. v. Brewer*
757 F.3d 1053 (9th Cir. 2014) ......................................................... 13, 14

*Biden v. Nebraska*
600 U.S. 477 (2023) .................................................................................. 4

*Bond v. United States*
572 U.S. 844 (2014) .................................................................................. 5

*Ctr. for Biological Diversity v. Cal. Dep't of Forestry & Fire Prot.*
Case No. 25CV02244 (Santa Barbara Sup. Ct.) ................................... 13

*E. Bay Sanctuary Covenant v. Biden*
993 F.3d 640 (9th Cir. 2021) .................................................................... 8

*Exxon Corp. v. U.S. Sec'y of Transp.*
978 F. Supp. 946 (E.D. Wash. 1997) ....................................................... 7

*Flores v. Rosen*
984 F.3d 720 (9th Cir. 2020) ...................................................... 6, 11, 15

*Franklin v. Mass.*
505 U.S. 788 (1992) .................................................................................. 8

*Helgeson v. Bureau of Indian Affs., Dep't of Interior*
153 F.3d 1000 (9th Cir. 1998) .................................................................. 8

*Hercules, Inc. v. United States*
24 F.3d 188 (Fed. Cir. 1994) ....................................................... 4, 5, 11
516 U.S. 417, 1995 WL 495540 (No. 94 818) ......................................... 5

*Hook v. State of Ariz., Dep't of Corr.*
972 F.2d 1012 (9th Cir. 1991) .................................................................. 6

*In re Dual–Deck Video Cassette Recorder Antitrust Litig.*
10 F.3d 693 (9th Cir. 1993) .................................................................. 2, 3

## TABLE OF AUTHORITIES
### (continued)

**Page**

*League of Women Voters of U.S. v. Newby*
838 F.3d 1 (D.C. Cir. 2016) .................................................................................. 14

*Learning Res., Inc. v. Trump*
146 S. Ct. 628 (2026) ............................................................................................ 4

*Maryland v. King*
567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ............................................ 12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*
606 U.S. 146 (2025) ......................................................................................... 1, 9

*Melendres v. Arpaio*
695 F.3d 990 (9th Cir. 2012) ............................................................................... 12

*Nat'l Ass'n of Home Builders v. Norton*
340 F.3d 835 (9th Cir. 2003) ................................................................................. 9

*Nebraska v. Su*
121 F.4th 1 (9th Cir. 2024) .................................................................................... 8

*Nehmer v. U.S. Dep't of Veterans Affs.*
494 F.3d 846 (9th Cir. 2007) ........................................................................... 1, 15

*New York v. United States*
505 U.S. 144 (1992) ............................................................................................. 12

*Orantes-Hernandez v. Holder*
713 F. Supp. 2d 929 (C.D. Cal. 2010) ................................................................. 3

*Pub. Citizen v. U.S. Trade Rep.*
5 F.3d 549 (D.C. Cir. 1993) .................................................................................. 8

*Rodriguez v. Robbins*
715 F.3d 1127 (9th Cir. 2013) ............................................................................. 14

*Rufo v. Inmates of Suffolk Cnty. Jail*
502 U.S. 367 (1992) .............................................................................................. 6

*Russello v. United States*
464 U.S. 16 (1983) .............................................................................................. 10

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Sable Offshore Corp. v. Cal. Coastal Comm'n*
  No. 2D CIV. B347601, 2026 WL 1745438 (Cal. Ct. App. June 17, 2026) .................................................................................... 13
  Case No. 25CV00974 (Santa Barbara Superior Court) .................................... 12

*SEC v. Coldicutt*
  258 F.3d 939 (9th Cir. 2001) ............................................................................. 3

*Southern Pacific Pipe Lines, Inc. v. U.S. Department of Transportation*
  796 F.2d 539 (D.C. Cir. 1986) ....................................................................... 6, 7

*Sprietsma v. Mercury Marine*
  537 U.S. 51 (2002) ........................................................................................... 11

*United States v. Vertac Chem. Corp.*
  46 F.3d 803 (8th Cir. 1995) .......................................................................... 5, 11

*Util. Air Regul. Grp. v. E.P.A.*
  573 U.S. 302 (2014) ........................................................................................... 5

*Washington v. Trump*
  145 F.4th 1013 (9th Cir. 2025) ........................................................................ 14

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ............................................................................................... 7

**STATUTES**

28 United States Code
  § 1450 ................................................................................................................ 4

49 United States Code
  § 60105 ..................................................................................................... 1, 7, 15

50 United States Code
  § 4511(a) ............................................................................................................ 9
  § 4511(c) ............................................................................................................ 9

Cal. Gov. Code
  § 51010 et seq. ................................................................................................. 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Cal. Pub. Res.
§ 30106 .................................................................................................................. 12
§ 30262 .................................................................................................................. 12
§ 30262(b) .............................................................................................................. 12

**CONSTITUTIONAL PROVISIONS**

Tenth Amendment .................................................................................................... 12

**OTHER AUTHORITIES**

10 C.F.R.
§ 217.20 .................................................................................................................... 9
§ 217.31 .................................................................................................................... 9
§ 217.54(a) ................................................................................................................ 9
§ 217.54(b) ................................................................................................................ 9
§ 271.31 .................................................................................................................... 9
§ 271.51(f) ................................................................................................................ 9

W. Baude & S. Bray, *When the Executive Has Unclean Hands*, 135
Yale L.J.F. 567 ....................................................................................................... 3

**INTRODUCTION**

The Court directed the parties to file supplemental briefs addressing the most important issues in *California v. Wright* and *United States v. Plains All-American Pipeline*[1] and responding to the Court's questions at the June 8, 2026, hearing. *Wright* ECF 47, Hr'g Tr., 86:15-90:21, June 8, 2026. This brief does so, addressing the overlapping issues between *Wright* and *Plains* to assist the Court's resolution of the motions pending in both matters.

The legal issues require coordinated resolution. In *Plains*, California seeks to retain its authority to oversee restart and operation of two onshore oil pipelines, regulatory authority afforded it by the Pipeline Safety Act's (PSA) delegation of authority to states to regulate intrastate pipelines, and by this Court's 2020 Consent Decree. The U.S. and Sable offer two arguments for modification: (1) the Wright Order compelled restart of the pipeline irrespective of the pending Consent Decree and the California Office of State Fire Marshall's (OSFM) directives; and (2) the U.S. Department of Transportation Pipeline and Hazardous Materials Safety Administration's (PHMSA) Federalization Order overrides the Consent Decree and substitutes PHMSA for OSFM as the pipeline regulator and accordingly preempts OSFM authority. Both of these arguments demand resolution of preemption and are incorrect as a matter of law. By placing the Wright Order (under the Defense Production Act (DPA)) and the Federalization Order (under the PSA) at issue in *Plains*, the U.S. and Sable make the Wright Order reviewable in that case. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 156 (2025).[2] That opens the door to review of the validity of the orders are and whether the Wright Order carries preemptive effect.

---

[1] Because this brief is filed in two cases, we refer to record documents by case short name (*Wright* or *Plains*) followed by ECF number and pincite.

[2] Nor can a party to a consent decree, by its own action, eliminate the jurisdiction of the court enforcing the consent decree. *Nehmer v. U.S. Dep't of Veterans Affs.,* 494 F.3d 846, 861 (9th Cir. 2007).

1

As to the DPA, that statute confers discretion on the Executive Branch to deputize private parties to provide goods and services, but the U.S. invocation of the DPA Order fails for two reasons: (A) it is an invalid order because it does not "allocate" or "prioritize" and lacks the legally-mandated end date, and (B) even a valid DPA Order cannot broadly preempt California law and would operate only as between the U.S. and Sable. If the Court agrees with California as to either (A) or (B), then the DPA does not justify the U.S. and Sable's position.

Nor does the PSA confer discretion to determine which pipelines are *inter*state and subject to federal regulation, versus *intra*state and subject to state regulation. On this point, the U.S. and Sable's arguments rise or fall not on Executive power, but on Congress's determination. Again, there are two principal reasons the assertion of federal authority fails: (A) as a matter of statutory interpretation, based on undisputed facts, pipelines CA-324/325 are intrastate pipelines that connect two points within California, and PHMSA's "re-definition" to include other facilities is contrary to statute; and (B) this Court's Consent Decree requires approval by California's State Fire Marshal, and neither the U.S. nor Sable offers sufficient evidence of "changed circumstances" to displace the Consent Decree. As with the DPA, if the Court agrees with California as to either (A) or (B), then the PSA does not justify the U.S. and Sable's position.

## ARGUMENT

**I. THE COURT SHOULD GRANT CALIFORNIA'S MOTION TO ENFORCE THE CONSENT DECREE AND DENY THE U.S. MOTION TO MODIFY OR TERMINATE.**

### A. The Court Should Not Permit the U.S. and Sable To Defy, Modify, or Dissolve the Consent Decree.

Enforcement of a consent decree is proper when a party demonstrates that the non-moving party violated the court's order by "clear and convincing evidence." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

California's motion to enforce is straightforward: the Consent Decree prohibits Sable, which assumed Plains's obligations via an Assumption Agreement, from restarting the pipelines then designated as Lines 901 and 903 (now CA-324/325) unless and until Sable has (1) obtained State Waivers (which Sable did), (2) based on completion of those terms of the Waivers, obtained restart approval from OSFM (neither of which Sable did). *Plains* ECF 6-1, RJN Exh. E. The State Waivers required remediation of all relevant pipeline deterioration "prior to restarting." *Plains* ECF 55-1 at 140 (State Waiver for CA-324, ¶ 9), 156 (State Waiver for CA-325, ¶ 9). Sable never complied, and OSFM rightly declined to approve Sable's restart plan. Sable nonetheless restarted pipeline operations in March 2026, saying that it "relinquishes, surrenders and abandons the State Waivers." *Plains* ECF 55-1 at 125. By restarting without first complying with the State Waivers required by the Consent Decree, Sable acted in direct disobedience to a specific and definite court order—making judicial enforcement proper. *Dual–Deck Video*, 10 F.3d at 695.

A party's open and intentional defiance of an injunction, taking active steps to avoid compliance, weighs in favor of denying a motion to dissolve that injunction. *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 954 n.38 (C.D. Cal. 2010) (citing *Bd. of Educ. of Okla. City Pub. Schs. v. Dowell,* 498 U.S. 237, 249 (1991)) ("compliance is an important and often dispositive factor in deciding whether to lift an injunction."). An injunction—even involving "the federal government"— is "supposed to be complied with unless or until it is stayed, modified, dissolved, or reversed." W. Baude & S. Bray, *When the Executive Has Unclean Hands*, 135 Yale L.J.F. 567, 592 (2026) (citing *Walker v. City of Birmingham*, 388 U.S. 307, 320-21 (1967)). This principle has a practical component: examining a defendant's compliance with court orders is a reasonable part of an inquiry into whether the defendant can be trusted to act lawfully in the future. *See, e.g.*, *SEC v. Coldicutt,* 258 F.3d 939, 942-43 (9th Cir. 2001) (examining defendant's compliance with

3

injunction to determine likelihood of future violations). Here, there are two injunctions: the Consent Decree, and the Santa Barbara County Superior Court's preliminary injunction (which, since removal on May 14, 2026, has been an order of this Court—*see* 28 U.S.C. §1450). Sable has intentionally violated both injunctions for over three months. Because Sable unilaterally took affirmative steps to defy the Superior Court's orders, without attempting to comply in good faith, this Court should neither dissolve the Consent Decree nor decline to enforce it.

**B. Modification of the Consent Decree Is Not Justified by Any Preemptive Effect of the Wright Order.**

The U.S. and Sable argue that the Consent Decree must be modified due to conflict and impossibility preemption, because the Wright Order "makes compliance with [OSFM's] separate regulatory oversight legally impermissible and factually impossible." *Plains* ECF 49 at 19. The U.S. and Sable cannot succeed without showing that the Wright Order has the legal force to displace California's authority over pipeline safety—a showing they cannot make.

To be clear: California is not asking this Court to review the Executive Branch's factual or discretionary national security determinations.[3] Instead, California calls on the Court only to hold the Executive to the statutory bounds set by Congress—a task well within the Court's expertise and constitutional duty. *See, e.g.*, *Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 638 (2026) (rejecting tariffs as not authorized by International Emergency Economic Powers Act); *Biden v. Nebraska*, 600 U.S. 477, 494 (2023) (rejecting student loan forgiveness as not authorized by COVID legislation).

The Wright Order *cannot* broadly preempt California state law, and concluding that it does would require adopting a novel interpretation of the DPA, contrary to two federal circuits. *Hercules, Inc. v. United States*, 24 F.3d 188, 204

---

[3] At the hearing, the Court expressed concern about second-guessing national security determinations by the Executive, but California is not asking this Court to do so here, as the national security findings are not at issue in the present dispute.

4

(Fed. Cir. 1994), *United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995); *see also* Brief for Respondent United States, *Hercules, Inc. v. United States*, 516 U.S. 417, 1995 WL 495540, at *37-38 (No. 94 818) ("every court that has considered the matter has, like the courts below, rejected the argument that Congress intended the DPA's protection to sweep as broadly as Thompson claims"). That was also the federal government's consistent position, until its current, contrived reversal. *See, e.g.*, *Hercules*, 516 U.S. 417, 430 n.14 (1996) (noting U.S.'s position that § 707 "only bar[s] liability to customers whose orders are delayed or displaced on account of the priority accorded Government orders under § 101 of the DPA"). In *Hercules*, the U.S. told the Supreme Court that the DPA provides "protection against liability for government-caused disruptions in existing business-customer relationships" and does not absolve a contractor of its other applicable legal duties. *Id.* at 436.

The U.S.'s current claim, which proposes an apparently unbounded power in the DPA that courts and the federal government itself have long denied, is not tenable. *Cf. Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014) ("[w]hen an agency [of the Executive Branch] claims to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy,' . . . [courts] typically greet its announcement with a measure of skepticism"); *Bond v. United States*, 572 U.S. 844, 858 (2014) ("when legislation 'affect[s] the federal balance, the requirement of clear statement [by Congress, not the Executive] assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision'" (citation omitted)).

### C. Modification of the Consent Decree Is Not Justified by PHMSA's Unlawful Federalization Order.

PHMSA's December 17, 2026 Federalization Order, *Plains* ECF 43-1 at 13-15, does not provide a basis for modifying this Court's Consent Decree. Since the Refugio Spill and Consent Decree, every party, including PHMSA itself, accepted

5

the pipelines as intrastate until political convenience demanded otherwise.[4] This understanding was memorialized in a 2016 Letter Agreement between PHMSA and OSFM and incorporated into the 2020 Consent Decree that the U.S., with a signature by PHMSA's chief counsel, joined as co-plaintiff. *Plains*, ECF 55, Exh. H. Ninth Circuit precedent forecloses PHMSA's effort to circumvent that Consent Decree by its unilateral reversal. *Flores v. Rosen,* 984 F.3d 720, 741 (9th Cir. 2020) ("We reject the notion that the executive branch of the government can unilaterally create the change in law that it then offers as the reason it should be excused from compliance with a consent decree"); *see Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012, 1017 (9th Cir. 1991) (government agency cannot simply ignore a consent decree without following the proper procedure to obtain relief).

During the June 8, 2026 hearing, the U.S. argued that the Court may modify the Consent Decree in response to changed factual circumstances. According to the U.S., jurisdiction shifted to California in 2016 only because the pipeline was not in use (as if jurisdiction turns on whether the pipeline is turned on or off). Hr'g Tr., 48:1-10. Then, according to the U.S, Sable's "unified ownership" and resumed operation of the pipelines was a "changed factual circumstance." *Id*. But the attempt to resume operation was anticipated in the Consent Decree itself. Indeed, that was a major focus of that decree, as evidenced by Appendices B and D's provisions governing restart. And "modification [of a consent decree] should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 385 (1992).

PHMSA's underlying legal position also fails. In *Southern Pacific Pipe Lines Inc. v. U.S. Department of Transportation*, 796 F.2d 539 (D.C. Cir. 1986), Southern

---

[4] Initially, the pipeline was classified as interstate because of a planned downstream connection into Arizona. Today the downstream end of the pipeline is Pentland, California. No party contends that the nonexistent connection to Arizona controls now. Instead, the U.S. and Sable base their arguments purely on the contention that a segment of an adjacent but separate pipeline upstream reaches federal waters by traversing through the Las Flores Canyon processing plant.

6

Pacific contended that its oil pipeline systems—containing main trunk lines that crossed into other states and lateral lines entirely within California—were integrated interstate pipelines.[5] *Id.* at 541. The D.C. Circuit rejected this argument, noting that most intrastate pipelines connect to interstate pipelines, so relying on such connections would undermine Congress's intent, "which has always recognized a major role for the states in pipeline safety." *Id.* (quoting 50 Fed. Reg. 39,011 (1985)); *see also Exxon Corp. v. U.S. Sec'y of Transp.*, 978 F. Supp. 946 (E.D. Wash. 1997) (rejecting ownership as factor for PHMSA jurisdiction). This case is even clearer than *Southern Pacific*. Southern Pacific's lateral lines connected directly to its main trunk lines, moving the same product that was in the interstate lines. Here, the offshore oil emulsion pipeline connects to the processing plant, where hydrocarbons are separated and treated, before a different product is delivered to Lines CA-324/325.

## II. THE COURT SHOULD GRANT CALIFORNIA'S REQUEST FOR A PRELIMINARY INJUNCTION AND STAY THE WRIGHT ORDER.

For California's request for a preliminary injunction in *California v. Wright*, California "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and the public interest favor the injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). California has a strong likelihood of success on the merits that the Wright Order is unlawful because: (1) the Order violates Title I of the DPA and U.S. Department of Energy's (DOE) regulations;

---

[5] At the hearing on June 8, 2026, counsel for California and OSFM conceded that "[i]f PHMSA's determination is correct and the PSA applies [to Lines CA-324/325 as interstate pipelines] then California is preempted from regulating the pipeline." Hr'g Tr., 73:2-4. While this statement was correct in context, Counsel should have been more specific: if PHMSA's determination is correct, OSFM is preempted from regulating pipeline safety, but other California agencies retain state police powers beyond the scope of preemption under the PSA, including regulation of employment and state agencies' own property rights. California expects Sable will agree concerning employment but will disagree about State Parks's property rights.

7

and (2) the DPA cannot displace the state laws and court orders at issue. The equitable factors and public interest also support a preliminary injunction and stay since the ongoing operation of the pipeline causes irreparable harm to California's sovereign and property interests, and the equities and public interest tilt strongly in favor of forcing DOE to respect statutory and constitutional limitations.

### A. The Wright Order Is Subject to Judicial Review.

Agency action is not immunized from review just because it is linked to a presidential proclamation. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 669 (9th Cir. 2021). "The APA applies to any 'final agency action,'" and "[n]o language in the APA prevents or exempts review of an agency action that implements a presidential action." *Nebraska v. Su*, 121 F.4th 1, 15 (9th Cir. 2024); *see also Helgeson v. Bureau of Indian Affs., Dep't of Interior*, 153 F.3d 1000, 1003 (9th Cir. 1998) (noting "strong presumption that Congress intends judicial review of administrative actions"). *Franklin v. Mass.*, 505 U.S. 788, 789 (1992) does not say otherwise, and only limits APA review of actions by the President himself.

Neither the text of the Wright Order nor any of the evidence presented by Defendants indicate that the President was involved "at the final stage of the process," or had an important role in the "integrity of the process," such that the Wright Order could be construed to be presidential action. *See Pub. Citizen v. U.S. Trade Rep.*, 5 F.3d 549, 552 (D.C. Cir. 1993) (citing *Franklin*, 505 U.S. at 789). Indeed, counsel for the U.S. stated at the June 8, 2026, hearing that Secretary Wright exercised "independent judgment" in issuing the Wright Order and that the President's delegation did *not* "tell the Secretary of Energy what to do." Hr'g Tr., 7:2-7. Thus, the Wright Order is a reviewable *agency* action because its issuance lacked presidential involvement.

Even if the Wright Order was not reviewable in *Wright*, it would remain reviewable in *Plains* because the U.S. and Sable offered the Wright Order as a predicate for granting relief on their motion seeking modification of the Consent

8

Decree and a defense to OSFM's motion to enforce the Consent Decree. Where a party offers a federal order as a predicate basis for relief, that order is subject to APA review unless a federal statute unambiguously provides for adequate and exclusive review through an alternative process. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 156 (2025).

### B. California Is Likely To Succeed on the Merits That the Wright Order Is Unlawful.

#### 1. The Wright Order Exceeds the DPA's Grant of Authority and Violates DOE's Own Regulatory Requirements.

Although the Wright Order purports to proceed under Sections 101(a) and (c) of the DPA, it exceeds the Secretary's authority under each. Under those provisions, the federal government may order a private actor to "prioritiz[e]" performance of certain contracts over others and to honor a particular "allocat[ion]" of material and services among competing needs. *See* 50 U.S.C. § 4511(a),(c); 10 C.F.R. §§ 217.20, 217.31. The Wright Order does neither because Sable had no relevant contracts and therefore it cannot prioritize one over another. And, instead of allocating oil already produced, Sable and the U.S. argue that the Wright Order directed Sable to *begin* production and transportation of oil through a dormant pipeline (*Wright* ECF 23 at 12; ECF 24-4 at 3), in violation of state law, federal law, and two court orders.

The Wright Order is also unlawful because it violates DOE's regulations. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841, 852 (9th Cir. 2003) (agencies must follow their own rules). The Order lacks start and end dates, 10 C.F.R. §§ 271.51(f), 217.54(b), detailed descriptions of what is to be prioritized or allocated, 10 C.F.R. §§ 271.51(f), 217.54(a), and priority ratings (DO or DX), 10 C.F.R. § 271.31. These requirements constrain executive power, and should not be discarded. For example, the U.S. asks the Court to excuse the lack of an end date because the Secretary could issue a new order. But a new order would require the

9

Secretary to, in good faith, find that the circumstances in the future justify a DPA order. The Court should not prejudge the future and should require compliance with the rules that place guardrails on the use of the DPA.

### 2. DOE and Sable Have Placed the Wright Order's Preemptive Effect at Issue, and DOE's Attempts To Preempt Are Barred by the Statute and the Constitution.

DOE and Sable urge the Court to refrain from deciding the preemptive effect of the Wright Order because California's arguments are hypothetical and "must be considered in a case or controversy involving an alleged conflict between the Order and a specific state law." *Wright* ECF 23 at 14; *see Wright* ECF 24-4 at 7-9. Whether the Wright Order displaces state law is not merely hypothetical in these matters. DOE maintains that "the Order preempts any California law that conflicts with its directives that Sable immediately operate the Pipeline." Opp.15. And Sable's and DOE's assertion that the DPA preempts state law is what has caused, and continues to cause, oil to actually flow through Lines CA-324/325 in violation of California's state laws and two judicial orders.

The DPA cannot be construed to broadly preempt state law. First, Congress adopted express provisions targeted to specific state laws that the DPA would preempt, such as state antitrust laws that might consider collusive some activities that DPA orders might require companies to engage in. *Wright* ECF 16-2 at 12 (citing 50 U.S.C. § 4558(j)). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). If a DPA order automatically preempted all state laws that potentially conflict with the order, Congress would have had no need to include such specific express provisions.

Second, any reliance on section 707 of the DPA for "broad preemptive operation" is misplaced. *Wright* ECF 24-4 at 12. As California explained in its

10

motion, *Wright* ECF 16-2. at 13, section 707 is a limited immunity provision that "extends only to shield a contractor from *breach of contract* liability arising as a consequence of such re-prioritization" and goes no further. *Hercules Inc. v. United States*, 24 F.3d 188, 204 (Fed. Cir. 1994) (emphasis added); *see United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995) (similar); *see supra* p. 10. This provision shifts the risk of loss—it does not excuse compliance with law.[6]

Third, there is no "conflict preemption" here of the sort that occurs "'where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002) (citation omitted). The purpose and objective of section 101(a) is to require a contractor to prioritize defense consumption above non-defense consumption, notwithstanding existing private contracts. *Wright* ECF 16-2 at 8-9, 13-15. Enforcement of state laws pertaining to safety, environmental protection, or property rights over state-owned land does not interfere with the goal of prioritizing some contracts over others. Nor can the DPA reasonably be read to have intended to authorize the Executive Branch to flout judicial orders. It is not "necessary" (*Wright* ECF 32 at 7) to "allow[] a government contractor to violate the laws with impunity" in order for it to "perform[] a rated contract" under section 101(a). *Vertac*, 46 F.3d at 812.

Finally, both the federal government and Sable interpret the Wright Order to require California to dedicate state property to Sable's immediate restart of the

---

[6] The Court inquired whether the DPA might displace the Consent Decree, as consent decrees have certain features of contracts. Hr'g Tr., 72:2-18. But consent decrees are not *only* contracts, they are also judgments. The purpose of entering consent decrees as judgments (rather than mere out of court settlements) is to provide finality and certainty. A party to a consent decree lacks the power to unilaterally compel a change to the consent judgment. *Flores v. Rosen,* 984 F.3d 720, 741 (9th Cir. 2020). More, the kind of requirements imposed by the Consent Decree are not provisions that impose *risk of loss* on a particular party—it establishes regulatory powers and responsibilities. A provision like Section 707, which shifts risk of loss, does not authorize changes to agency powers.

11

pipelines. *Wright* ECF 16-2 at 9 & n.5. Forcing California to reorder its property rights in Gaviota State Park commandeers state government in much the same way as if the federal government made California the owner of Sable's undesirable assets without California's consent. *Cf. New York v. United States*, 505 U.S. 144, 176 (1992) (invalidating federal statute that offered States choice between accepting ownership of nuclear waste and regulating according to federal instructions). The Constitution's structural federalism principles, as well as the Tenth Amendment, forbids such an outcome.

### C. The Injunction Is Needed To Prevent Irreparable Harm to California.

California has suffered and will continue to suffer irreparable harm every day that the Wright Order remains in effect. The Wright Order's interference with California's constitutional sovereignty is itself irreparable harm. *See Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State"); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury"); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("the deprivation of constitutional rights unquestionably constitutes irreparable injury") (quotation marks omitted). The Wright Order's violation of the DPA, APA, and separation of powers also results in California's inability to enforce its laws. For instance, the Wright Order stands to inhibit California's enforcement of the Elder California Pipeline Safety Act (Cal. Gov. Code § 51010 et seq.), Senate Bill 237 (2025) (amending Cal. Pub. Res. § 30262), and the California Coastal Act (Cal. Pub. Res. §§ 30106 and 30262(b)), and purports to mandate that Sable ignore court injunctions in *Sable Offshore Corporation v. California Coastal Commission*,

12

Case No. 25CV00974 (Santa Barbara Superior Court),[7] and *Center for Biological Diversity v. California Department of Forestry and Fire Protection*, Case No. 25CV02244 (Santa Barbara Superior Court). These "intangible injuries" have "no adequate legal remedy, such as an award of damages," because California cannot accept a payment as inducement to not enforce its laws; thus, they are irreparable harms. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).[8]

Notably, California's basis for irreparable harm is distinct from that of State Parks in *State Parks v. Sable*, such that this Court can, and should, grant California's motion for preliminary injunction despite its denial of State Parks's motion for the same relief. Contrary to the U.S.'s argument, *Wright* does not merely "repackage" the cause of action in *State Parks*. In the first place, *Wright* alleges a violation of sovereign constitutional rights against *an entirely different defendant* (the federal government) for an entirely different action. *See* Hr'g Tr., 11. Due to sovereign immunity, the federal government presumably does not view itself as amenable to the type of damages remedy that this Court considered adequate in *State Parks*. And second, California's causes of action here involve a different kind of irreparable harm than that of the trespass action in *State Parks*. In *Wright*, California's harm is sovereign injury, not merely a property interest. In *State Parks*, this Court found no irreparable harm from inability to regulate because State Parks has a landowner's—rather than a regulator's—role in the restart. *See State Parks*, ECF 60, at 7. To the contrary, California has been deprived of its ability to regulate Lines CA-324/325 while the Wright Order stands. Accordingly, this Court's

---

[7] On June 17, 2026, the California Court of Appeal for the Second District affirmed the lower court's preliminary injunction. *Sable Offshore Corp. v. Cal. Coastal Comm'n*, No. 2D CIV. B347601, 2026 WL 1745438 (Cal. Ct. App. June 17, 2026).

[8] Additionally, the Wright Order exposes California to a significant risk of harm to public health and safety and the environment, including not only another oil spill but also adverse impacts from Sable's maintenance and operation of the Pipeline. *Wright* ECF 16-2 at 19-20; ECF 16-4 at ¶¶ 3-12; ECF 16-5 at ¶¶ 5-11. Operation of the Pipeline itself, given its history and hazardous contents, creates a cognizable risk.

decision not to grant preliminary injunctive relief in *State Parks* does not affect the availability of the relief here.

### D. Equitable Factors Weigh in Favor of a Preliminary Injunction.

When a plaintiff establishes a likelihood that a defendant's actions are unlawful, it has "established that both the public interest and the balance of the equities favor" preliminary injunctive relief. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d at 1069. That is because it is neither equitable nor in the public interest for the government to violate federal law. *Id.* And the public has a strong "interest [in ensuring] that the laws enacted by their representatives are not imperiled by executive fiat." *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025) (internal quotation marks and citations omitted). In contrast, defendants "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), and there "is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

### E. The Court Should Grant Preliminary Relief Against the Wright Order Regardless of Relief in Related Cases.

While related, the three pending cases involving the State of California and Lines CA-324/325 raise distinct legal issues. Although California encourages the Court to make consistent findings of fact and apply uniform interpretations of law across all related cases, each case contains unique requests for relief. California's statutory and constitutional causes of action in *Wright* are not claims in either the *Plains* or *PHMSA* case. As such, this Court can issue a ruling on the validity of the Wright Order regardless of judicial outcomes in those related cases.

If this Court terminates or amends the Consent Decree in *Plains*, California's claims in *Wright* are unchanged. California challenges the legality of the Wright Order based on the facts and circumstances present at the time Defendants acted.

14

Under Ninth Circuit precedent, a federal agency may not issue decisions contrary to a consent decree to manufacture changed circumstances, *see infra*, Section I.C., or even to divest the district court of jurisdiction. *Flores v. Rosen*, 984 F.3d 720, 741 (9th Cir. 2020); *see Nehmer v. U.S. Dep't of Veterans Aff.*, 494 F.3d 846, 860 (9th Cir. 2007). Since the U.S. did not obtain modification or termination of the Consent Decree from the district court at the time that DOE issued the Wright Order, the Order is contrary to law and Defendants' action violates separation of powers. Alternatively, if this Court were to enforce the Consent Decree against Sable, Sable would be enjoined from transporting oil unless or until it complies with all of the Consent Decree's Appendix B requirements.

Furthermore, this Court can decide the *Wright* motion without waiting for the Ninth Circuit's decision in *California v. PHMSA*. California does not expect the Ninth Circuit to issue a declaration on whether Lines CA-324/325 are intra- or interstate. The relief the State seeks there is vacatur of the three PHMSA orders on the basis that they violate the APA. And further, whether OSFM or PHMSA is the rightful regulator of the restart does not frustrate California's APA and constitutional arguments in *Wright*. A Ninth Circuit ruling declaring federal jurisdiction over Lines CA-324/325 would moot California's pipeline safety preemption argument, but it would not negate California's DPA Title I arguments and constitutional claims. In the alternative, a Ninth Circuit ruling upholding the intrastate status will only confirm Congress's intent in the PSA that states, not PHMSA, regulates intrastate pipeline safety (*see* 49 U.S.C. § 60105), and California's preemption argument in *Wright* will be undisturbed.

## CONCLUSION

The Court should: (1) grant California's motion to enforce the Consent Decree; (2) deny the U.S.'s motion to modify or terminate the Consent Decree; and (3) stay the Wright Order and preliminarily enjoin Defendants, and all those acting in concert with Defendants, from enforcing or relying on it.

15

Dated:  June 18, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JEREMY M. BROWN
Supervising Deputy Attorney
General
REBECCA HUNTER
BRIAN CALAVAN
KAVITA LESSER
Deputy Attorneys General

_____

ALICIA ROESSLER
Deputy Attorney General
*Attorneys for Plaintiff State of
California*

16

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff State of California, certifies that this brief is 15 pages in length, which complies with the page limit set by the Court.

Dated:  June 18, 2026                                   Respectfully submitted,

                                                    ROB BONTA
                                                    Attorney General of California
JEREMY BROWN
Supervising Deputy Attorneys General
REBECCA HUNTER
BRIAN CALAVAN
KAVITA LESSER
Deputy Attorneys General

_____

ALICIA ROESSLER
Deputy Attorney General
*Attorneys for Plaintiff State of California*
_____
_____

17