ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE
ROBERT N. STANDER
Deputy Assistant Attorneys General
RILEY W. WALTERS
Email: Riley.Walters@usdoj.gov
Counsel
U.S. Department of Justice
Environment & Natural Resources Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone: (202) 514-5442

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

STATE OF CALIFORNIA,

        Plaintiff,

v.

CHRIS WRIGHT, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF ENERGY,

        Defendants,

and

SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY,

        Intervenor-Defendants

Case No. 2:26-cv-03396-SVW-SSC

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Hearing Date: September 14, 2026
Time: 1:30 pm
Judge: Honorable Stephen V. Wilson

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

    I.    The Defense Production Act ......................................................... 2

    II.    The Defense Production Act Order ............................................... 3

    III.   California's Complaint .................................................................. 4

LEGAL STANDARD ......................................................................................... 4

ARGUMENT ...................................................................................................... 5

    I.    California's Administrative Procedure Act Claims are Unreviewable Because They Challenge Presidential Action (Counts I and II). ....................................................................... 5

    II.    Even if the Defense Production Act Order were Agency Action, California's Arbitrary-and-Capricious Claim Is Unreviewable Because it Challenges Determinations Committed to Agency Discretion (Count II). ..................................................... 8

    III.   California Fails to State a Claim that the Defense Production Act Order Violates the Separation of Powers (Count III). ............... 11

        A.    The Defense Production Act Order does not usurp Article III judicial power. ............................................................... 12

        B.    The Defense Production Act Order does not usurp legislative power. .............................................................. 13

    IV.   California Fails to State a Claim that the Defense Production Act Order Violates the Tenth Amendment (Count IV). ................... 15

CONCLUSION ................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages(s)**

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*,
  801 F. Supp. 2d 383 (D. Md. 2011) ....................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................4

*Casa De Maryland v. U.S. Dep't of Homeland Sec.*,
  924 F.3d 684 (4th Cir. 2019) ........................................................................10

*Chairez v. Mayorkas*,
  168 F.4th 1227 (9th Cir. 2026)........................................................................5

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) ......................................................................................15

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  993 F.3d 880 (D.C. Cir. 2021) ......................................................................10

*Cohen v. Apple Inc.*,
  46 F.4th 1012 (9th Cir. 2022)........................................................................15

*Dakota Cent. Tel. Co. v. S. Dakota ex rel. Payne*,
  250 U.S. 163 (1919) ......................................................................................10

*Dalton v. Specter*,
  511 U.S. 462 (1994) ........................................................................ 5, 13, 14, 17

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988) .............................................................................. 7, 9, 10

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
  189 F. Supp. 3d 85 (D.D.C. 2016) ................................................................6, 7

*E. Air Lines, Inc. v. McDonnell Douglas Corp.*,
  532 F.2d 957 (5th Cir. 1976)............................................................................2

*El-Shifa Pharm. Indus. Co. v. United States*,
  402 F. Supp. 2d 267 (D.D.C. 2005) ..............................................................5, 8

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982) ..........................................................................................15

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ........................................................................................5, 6

*Garcia v. San Antonio Metro. Transit Auth.*,
    469 U.S. 528 (1985) ..........................................................................................16

*Glob. Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025) ..............................................................................14

*Gros Ventre Tribe v. United States*,
    469 F.3d 801 (9th Cir. 2006)................................................................................5

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................................8

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
    452 U.S. 264 (1981) ..........................................................................................16

*I.C.C. v. Bhd. of Locomotive Eng'rs*,
    482 U.S. 270 (1987) ..........................................................................................10

*Jensen v. Nat'l Marine Fisheries Serv.*,
    512 F.2d 1189 (9th Cir. 1975)..............................................................................6

*Kingman Reef Atoll Invs., L.L.C. v. United States*,
    541 F.3d 1189 (9th Cir. 2008)..............................................................................4

*Knick v. Township of Scott, Pa.*,
    588 U.S. 180 (2019) ..........................................................................................17

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ................................................................................. 8, 9, 10

*Mendez-Gutierrez v. Ashcroft*,
    340 F.3d 865 (9th Cir. 2003)..............................................................................11

*MetroPCS Cal., LLC v. Picker*,
    970 F.3d 1106 (9th Cir. 2020)............................................................................14

*Murphy v. NCAA*,
    584 U.S. 453 (2018) ..........................................................................................17

*Nat. Res. Def. Council v. U.S. Dep't of State*,
    658 F. Supp. 2d 105 (D.D.C. 2009) .....................................................................7

*Nebraska v. Su*,
  121 F.4th 1 (9th Cir. 2024) ..............................................................................8

*New York v. United States*,
  505 U.S. 144 (1992) ........................................................................................16

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992) ........................................................................................13

*San Francisco Herring Ass'n v. Dep't of Interior*,
  946 F.3d 564 (9th Cir. 2019) ............................................................................5

*San Luis Unit Food Producers v. United States*,
  709 F.3d 798 (9th Cir. 2013) ............................................................................5

*Sierra Club v. Jackson*,
  648 F.3d 848 (D.C. Cir. 2011) ........................................................................11

*Sisseton–Wahpeton Oyate v. U.S. Dep't of State*,
  659 F. Supp. 2d 1071 (D.S.D. 2009) ................................................................7

*Tobar v. United States*,
  639 F.3d 1191 (9th Cir. 2011) ..........................................................................4

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) ..........................................................................5

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ....................................................................................9, 10

*United States v. Comstock*,
  560 U.S. 126 (2010) ........................................................................................16

*United States v. Hatch*,
  722 F.3d 1193 (10th Cir. 2013) ......................................................................16

*Waterkeeper All. v. EPA*,
  140 F.4th 1193 (9th Cir. 2025) .........................................................................5

*Webster v. Doe*,
  486 U.S. 592 (1988) ............................................................................... 8, 9, 11

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ........................................................................................10

**Statutes**

49 U.S.C. § 60104(c) ............................................................................................12

5 U.S.C. § 702................................................................................................5

5 U.S.C. § 704................................................................................................5

50 U.S.C. § 4502(a)(1)....................................................................................2

50 U.S.C. § 4502(a)(3)....................................................................................2

50 U.S.C. § 4502(a)(4)....................................................................................2

50 U.S.C. § 4502(a)(5)................................................................................2, 11

50 U.S.C. § 4511.............................................................................................7

50 U.S.C. § 4511(a) .....................................................................................2, 3

50 U.S.C. § 4511(c)(1)....................................................................................2

50 U.S.C. § 4511(c)(1)-(2)...........................................................................4, 9

50 U.S.C. § 4516........................................................................................3, 11

50 U.S.C. § 4552(14) ..................................................................................2, 11

50 U.S.C. § 4554(a) ........................................................................................7

**Other Authorities**

77 Fed. Reg. 16,651 (Mar. 16, 2012)..............................................................3

91 Fed. Reg. 13,199 (Mar. 13, 2026)..............................................................3

Elena Kagan, *Presidential Administration*,
   114 Harv. L. Rev. 2245 (2001) ....................................................................7

U.S. Const. amend. X......................................................................................16

**INTRODUCTION**

Pursuant to a delegation of authority that Congress vested in the President, the Secretary of Energy determined that the immediate flow of oil through the Santa Ynez Pipeline System (the "Pipeline") is necessary to meet core national-security needs stemming from West Coast energy shortages and supply-chain risks. The Secretary therefore issued an order (the "Order") under the Defense Production Act (the "DPA") directing Sable Offshore Corp. and Pacific Pipeline Company ("Sable") to immediately resume the transport of oil through the Pipeline. Because the DPA Order involved (1) the exercise of presidential authority (2) based on a national-security determination, it is unreviewable under the Administrative Procedure Act ("APA"). The Court should accordingly dismiss Counts I and II of California's Complaint, ECF 1.

California's constitutional claims fare no better. The State alleges that the DPA Order encroaches on judicial power by interfering with a federal consent decree—and on legislative power by exceeding the President's statutory authority under the DPA—in violation of the separation of powers. Neither allegation states a constitutional claim; indeed, the latter is really a *statutory* claim in disguise for which California lacks a cause of action outside the APA. If California's theory were right, then every Executive Branch action that allegedly exceeds statutory authority would give rise to an independent constitutional claim. The Supreme Court has rejected such artful attempts to bypass statutory limits on review. As for its Tenth Amendment claim, none of California's allegations even implicate the Tenth Amendment. If anything, California is alleging a taking of property without compensation, but the State has not brought a takings claim under the Fifth Amendment. Nor could it bring one in this Court—such claims belong in the Court of Federal Claims, where the remedy (if any) would be compensation, not an injunction. For these reasons, the Court should dismiss Counts III and IV for failure to state a claim.

1

# BACKGROUND

## I.        The Defense Production Act

The DPA grants the President—and any department head to which he delegates authority—"a sweeping delegation of power" to ensure that domestic industry supports the national defense. *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 993 (5th Cir. 1976). Congress enacted the DPA because "the security of the United States is dependent on the ability of the domestic industrial base to supply materials and services for the national defense and to prepare for and respond to military conflicts, natural or man-caused disasters, or acts of terrorism within the United States." 50 U.S.C. § 4502(a)(1); *see also id.* § 4502(a)(3) (finding that "the development of domestic productive capacity" is necessary "to provide for the national security" of the United States and "national defense preparedness"). Consistent with this prophylactic focus, the DPA grants the President "an array of authorities to shape national defense preparedness programs and to take appropriate steps to maintain and enhance the domestic industrial base." *Id.* § 4502(a)(4).

As relevant here, the President may require entities to prioritize the performance of certain contracts and to allocate materials, services, and facilities as he shall "deem necessary or appropriate" to "promote the national defense." *Id.* § 4511(a). Separately, the President may use these prioritization and allocation powers to "maximize domestic energy supplies," upon making certain findings. *Id.* § 4511(c)(1).

This latter authority under section 4511(c)—which does not require an independent national-security determination, unlike section 4511(a)—reflects the DPA's broader recognition of the link between the domestic energy supply and the national defense. For example, the DPA makes clear that "national defense preparedness" depends on "the availability of domestic energy supplies for national defense needs." *Id.* § 4502(a)(5). It also defines "national defense" broadly to include "energy production or construction." *Id.* § 4552(14). And it specifically

2

designates energy as a "strategic and critical material." *Id.* § 4516. The DPA thus affirms that energy security *is* national security.

Over time, the President has delegated these DPA authorities to executive department and agency heads, who can then step into the President's shoes and exercise his DPA authority themselves. In 2012, the President delegated to the Secretary of Energy authority under section 4511(a) "with respect to all forms of energy," as well as the authority to make certain findings under section 4511(c). *National Defense Resources Preparedness*, Exec. Order. No. 13603, §§ 201(a)(2), 203, 77 Fed. Reg. 16651 (Mar. 16, 2012). More recently, on the same day as the DPA Order, the President delegated all authority under section 4511(c) to the Secretary of Energy. *See Adjusting Certain Delegations Under the Defense Production Act*, Exec. Order No. 14391, § 2, 91 Fed. Reg. 13199 (Mar. 13, 2026).

## II.    The Defense Production Act Order

Exercising these delegated authorities, the Secretary of Energy determined in March 2026 that West Coast energy shortages and supply-chain risks—including heavy dependence on imports from foreign adversaries—threaten our national defense. *See* ECF 23-1 at 10-11 (DPA Order). Meanwhile, the Santa Ynez Unit—one of the largest offshore oilfields in the United States and a "critical energy resource on the West Coast"—sits in federal waters off the coast of California. *Id.* The Pipeline can provide reliable transportation for oil from the Unit to onshore refineries in California. *Id.* at 11. The Secretary therefore issued the DPA Order, which directs Sable to immediately prioritize and allocate transportation services for hydrocarbons from the Unit through the Pipeline, and to start performing under contracts for such transportation.

In issuing the Order, the Secretary invoked the President's authority under both section 4511(a) and section 4511(c). For the former, the Secretary determined that the Order is "necessary or appropriate to promote the national defense." *Id.* at 12; *see* 50 U.S.C. § 4511(a). For the latter, he determined that the Order is necessary

to "maximize domestic energy supplies," after making the required findings that those supplies of "materials, services, and facilities are scarce, critical, and essential to maintain or expand exploration, production, refining, or transportation" and that "maintenance or expansion of exploration, production, refining, [or] transportation … cannot reasonably be accomplished without exercising th[is] authority." ECF 23-1 at 12 (DPA Order); *see* 50 U.S.C. § 4511(c)(1)-(2).

## III.  California's Complaint

About two weeks after the Secretary issued the DPA Order, California filed this suit seeking declaratory and injunctive relief, as well as vacatur under the APA. California's Complaint asserts two APA claims (Counts I-II) and two constitutional claims (Counts III-IV).  Count I alleges that the DPA Order is contrary to law under the APA because it exceeds the President's statutory authority under the DPA and violates Department of Energy regulations.  Compl. ¶¶ 116-29.  Count II alleges that the DPA Order is arbitrary and capricious under the APA because the Secretary failed to make valid national-defense and energy-production determinations.  *Id.* ¶¶ 130-38.  Count III alleges that the DPA Order usurps judicial and legislative power in violation of the Constitution's separation of powers.  *Id.* ¶¶ 139-50.  Finally, Count IV alleges that the DPA Order violates the Tenth Amendment.  *Id.* ¶¶ 151-59.

## LEGAL STANDARD

When a defendant moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (cleaned up).  "The waiver of sovereign immunity is a prerequisite to federal-court jurisdiction."  *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

Although the court accepts as true the factual allegations in a complaint, it does not defer to a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Ninth Circuit has treated some of the APA's review provisions as jurisdictional. *See San Luis Unit Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013); *San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 571 (9th Cir. 2019). That approach has been called into question, *see Waterkeeper All. v. EPA*, 140 F.4th 1193, 1206 n.6 (9th Cir. 2025), and other circuits have disagreed, *see, e.g.*, *Trudeau v. FTC*, 456 F.3d 178, 183-85 (D.C. Cir. 2006). For the avoidance of doubt, the Federal Government moves to dismiss California's APA claims (Counts I and II) under both Rule 12(b)(1) and Rule 12(b)(6). It moves to dismiss California's constitutional claims (Counts III and IV) under Rule 12(b)(6).

<strong>ARGUMENT</strong>

**I.    California's Administrative Procedure Act Claims are Unreviewable Because They Challenge Presidential Action (Counts I and II).**

Because the DPA does not create a private right of action, California's only statutory path to judicial review is the APA. *See Gros Ventre Tribe v. United States*, 469 F.3d 801, 808 n.7 (9th Cir. 2006). The APA waives sovereign immunity for, and structures judicial review around, "agency action." 5 U.S.C. §§ 702, 704; *Chairez v. Mayorkas*, 168 F.4th 1227, 1231 (9th Cir. 2026). Because the President is not an "agency," the APA's waiver and review provisions do not apply to presidential action. *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *Dalton v. Specter*, 511 U.S. 462, 469-70 (1994); *El-Shifa Pharm. Indus. Co. v. United States*, 402 F. Supp. 2d 267, 273 (D.D.C. 2005) (holding that the APA's waiver of sovereign immunity does not apply to presidential action).

The Secretary of Energy issued the Order under a delegation of authority that Congress vested in the President. The question here is whether it matters that a *delegee*, rather than the President *personally*, exercised discretionary authority vested in the President by law. The answer is no.

Under Ninth Circuit precedent, when an agency head exercises the President's delegated authority, the action is presidential action for purposes of APA review. *Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1190-91 (9th Cir. 1975). In *Jensen*, a treaty gave the President authority to approve fishing regulations issued by a commission; the President delegated the authority to the Secretary of State; and the Secretary approved a regulation. *Id.* In rejecting an APA challenge to the Secretary's approval, the Ninth Circuit held that "[f]or the purposes of this appeal the Secretary's actions are those of the President, and therefore by the terms of the APA the approval of the regulation at issue here is not reviewable." *Id.* at 1191.

So too here. The DPA gives the President authority to issue orders; the President delegated that authority to the Secretary of Energy; and the Secretary issued the DPA Order. Under *Jensen*, the DPA Order is thus presidential action and "by the terms of the APA … is not reviewable." *Id.*; *Franklin*, 505 U.S. at 800-01 (holding that the terms of the APA do not permit review of presidential action).

Other courts have held that the bar on APA review of presidential action extends to agency action taken pursuant to a delegation of presidential authority. For example, the court in *Detroit International Bridge Company v. Government of Canada* held that the Secretary of State's exercise of delegated presidential authority to approve a permit for an international bridge was "presidential in nature"—and thus "unreviewable under the APA"—because it "involved the exercise of discretionary authority committed to the President" by the International Bridge Act of 1972. 189 F. Supp. 3d 85, 100-02 (D.D.C. 2016), *aff'd on other grounds*, 883 F.3d 895 (D.C. Cir. 2018).

In so holding, the court correctly reasoned that "the determinative consideration is not whether the actions were actually taken by the President personally, but whether separation of powers concerns articulated in *Franklin* and *Dalton* apply." *Id.* at 103 (cleaned up). And such concerns, the court explained, "exist whenever the President's discretion is at stake," especially in "sensitive" and

"complex" areas like "foreign affairs." *Id.*; *see also Ancient Coin Collectors Guild v. U.S. Customs and Border Prot.*, 801 F. Supp. 2d 383, 404 (D. Md. 2011) ("actions taken pursuant to delegated presidential authority … will not be held subject to review under the APA"), *aff'd on other grounds*, 698 F.3d 171 (4th Cir. 2012); *Nat. Res. Def. Council (NRDC) v. U.S. Dep't of State*, 658 F. Supp. 2d 105, 111-13 (D.D.C. 2009) ("an act need not be carried out by the President personally to constitute presidential action exempt from judicial review under the APA" because an agency "stands in the President's shoes" when it exercises "the President's inherent discretionary power"); *Sisseton–Wahpeton Oyate v. U.S. Dep't of State*, 659 F. Supp. 2d 1071, 1082 (D.S.D. 2009) ("The President is free to delegate some of his powers to the heads of executive departments … and those delegation actions that are carried out create a presumption of being as those of the President.").

The DPA Order is likewise "unreviewable presidential action because it involved an exercise of discretionary authority committed to the President by law" in the DPA. *Detroit Int'l Bridge*, 189 F. Supp. 3d at 102; *see* 50 U.S.C. §§ 4511, 4554(a). What is more, the "separation of powers concerns" undergirding the court's holding in *Detroit International Bridge* are even weightier here because the case arises in the "sensitive" and "complex" area of national security. 189 F. Supp. 3d at 103; *Ancient Coin*, 801 F. Supp. 2d at 403; *NRDC*, 658 F. Supp. 2d at 111; *see also Dep't of Navy v. Egan*, 484 U.S. 518, 529-30 (1988) (noting that "courts traditionally have been reluctant to intrude" into "national security affairs").

None of this is to say that agency action becomes unreviewable whenever it is directed by the President. Although APA review is unavailable for "actions involving discretionary authority delegated by Congress to the *President,*" review is available for "actions involving authority delegated by Congress to an *agency*" but "directed by the President." *Detroit Int'l Bridge*, 189 F. Supp. 3d at 104 (quoting Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001)) (emphasis added). That explains why courts review agency actions that simply

implement executive orders. *See Nebraska v. Su*, 121 F.4th 1, 15 (9th Cir. 2024). But when, as here, the President formally delegates *his* statutory or constitutional authority to an agency head, and the agency head then acts solely under *that* authority, there is presidential action beyond the scope of the APA. Accordingly, the Court should dismiss Counts I and II of the Complaint under Rule 12(b)(1). *See El-Shifa*, 402 F. Supp. 2d at 273 (no waiver of sovereign immunity under the APA and thus no subject matter jurisdiction for challenges to presidential action). Alternatively, the Court should dismiss under Rule 12(b)(6).

**II.  Even if the Defense Production Act Order were Agency Action, California's Arbitrary-and-Capricious Claim Is Unreviewable Because it Challenges Determinations Committed to Agency Discretion (Count II).**

Even if the Court were to conclude that the DPA Order constituted agency action, APA review would still be unavailable for Count II because the APA limits judicial review "to situations in which … the agency action is not committed to agency discretion by law." *Webster v. Doe*, 486 U.S. 592, 599 (1988); 5 U.S.C. § 701(a)(2). Agency action is committed to agency discretion if "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Review is also unavailable for "certain categories" of actions "traditionally regarded as committed to agency discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191-93 (1993).

Here, the DPA Order rested on two distinct grounds: the Secretary's national-defense determination under section 4511(a) and his energy-production determination under section 4511(c). Both determinations are committed to his discretion and thus unreviewable under the APA. But even if the Court were to find that the latter determination under section 4511(c) were reviewable, the Court should still dismiss Count II because the unreviewable national-security determination under section 4511(a) is independently sufficient to sustain the DPA Order.

***Section 4511(a) national-defense determination.*** Count II challenges the Secretary's determination that the DPA Order is necessary to promote the national defense. Compl. ¶¶ 134-36. But that determination is committed to the Secretary's discretion and thus unreviewable under the APA, as confirmed by the DPA's text and the judiciary's traditional reluctance to review national-security determinations.

Starting with the statutory text, the operative provisions "exude[] deference to the President in every clause." *Trump v. Hawaii*, 585 U.S. 667, 684 (2018). Section 4511(a) grants the President broad discretion by authorizing him to require priority performance of certain contracts "which he deems necessary or appropriate to promote the national defense" and to allocate materials, services, or facilities "in such manner, upon such conditions, and to such extent as he shall deem necessary or appropriate to promote the national defense." 50 U.S.C. § 4511(a). This sweeping language neither restricts the President's discretion nor provides any substantive standard for reviewing national-defense determinations. Indeed, the text allows the President to exercise his prioritization and allocation authorities as he "*deems* necessary*" to promote the national defense, "not simply when" doing so "*is* necessary." *Webster*, 486 U.S. at 600. The Supreme Court in *Webster* held similar language to "exude[] deference" and "foreclose the application of any meaningful judicial standard of review." *Id.* (statute authorized CIA Director to terminate employees when he "shall *deem* such termination necessary or advisable in the interests of the United States").

The national-defense determination underlying the Order is also the kind of action "traditionally regarded as committed to agency discretion." *Lincoln*, 508 U.S. at 192. As the Supreme Court has observed, "courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Egan*, 484 U.S. at 530. "Judicial inquiry into the national-security realm raises concerns for the separation of powers" because "[n]ational-security policy is the prerogative of the Congress and President." *Ziglar v. Abbasi*, 582 U.S. 120, 142

9

(2017) (cleaned up). "[W]hen it comes to collecting evidence and drawing inferences on questions of national security, the lack of competence on the part of the courts is marked." *Trump*, 585 U.S. at 704 (cleaned up); *see also Dakota Cent. Tel. Co. v. S. Dakota ex rel. Payne*, 250 U.S. 163, 181, 184 (1919) (President's exercise of discretion under statute granting him authority to act "whenever he shall deem it necessary for the national security or defense" was "beyond the reach of judicial power").

For these reasons, the APA's general presumption of reviewability "runs aground" when, as here, "it encounters concerns of national security." *Egan*, 484 U.S. at 527. As in *Webster*, the APA thus "precludes judicial review" of the Secretary's determination that the DPA Order is "in the interests of national security, an area of executive action in which courts have long been hesitant to intrude." *Lincoln*, 508 U.S. at 192 (cleaned up).

***Section 4511(c) energy-production determination.*** Because the Secretary's national-security determination under section 4511(a) is unreviewable—and because section 4511(a) authority is independently sufficient to sustain the Order— the Court need not reach California's arbitrary-and-capricious challenge to the Secretary's use of section 4511(c) authority to maximize domestic energy supplies. *See* Compl. ¶¶ 71-74; *see also I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987) (rejecting view "that if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable"); *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 701 n.13 (4th Cir. 2019) (same*)*; *Citizens for Resp. & Ethics in Wash. v. FEC*, 993 F.3d 880, 884-86 (D.C. Cir. 2021) (agency action that rested on two distinct grounds—statutory interpretation and prosecutorial discretion—was unreviewable even though the interpretation was independently reviewable).

But even if the Court reaches the question, the Secretary made the required findings under section 4511(c). *See* ECF 23-1 at 12 (DPA Order). And insofar as

California seeks to probe the reasoning behind those findings, section 4511(c)—though nominally about maximizing domestic energy supplies—is no less concerned with national security than section 4511(a), given the DPA's explicit and repeated recognition of the link between the domestic energy supply and our national security. *See, e.g.*, 50 U.S.C. §§ 4502(a)(5) (declaring that "in order to ensure national defense preparedness, it is necessary and appropriate to assure the availability of domestic energy supplies for national defense needs"), 4516 (designating energy as a "strategic and critical material"), 4552(14) (defining "national defense" to include "energy production"); *see also Webster*, 486 U.S. at 600 (considering the "overall structure" of the statute to determine reviewability).  The Secretary's invocation of that provision is thus unreviewable for all the reasons given above.

*     *     *

Accordingly, the Court should dismiss Count II under Rule 12(b)(1) and, in the alternative, under Rule 12(b)(6).  *Contrast Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003) (noting that "this court lacks jurisdiction to review agency actions that are 'committed to agency discretion by law'"), *with Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (holding that "a complaint seeking review of agency action committed to agency discretion by law has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6)" (cleaned up)).

**III.    California Fails to State a Claim that the Defense Production Act Order Violates the Separation of Powers (Count III).**

California's Complaint fails to state a claim that the DPA Order violates the separation of powers.  *See* Compl. ¶¶ 139-150.  The Complaint makes two allegations.  First, it alleges that the DPA Order "usurp[s] the judiciary's authority to modify or reverse judicial judgments" by "ordering Sable to restart [the Pipeline] in direct contravention of the Consent Decree."  *Id.* ¶ 146.  Second, it alleges that the DPA Order "overrid[es] Congress's considered judgments by attempting to

11

broadly preempt state law, when the text of the DPA does not empower Defendants to do so," and by "attempt[ing] to substitute the President's policy priorities for the will of Congress in enacting the DPA." *Id.* ¶¶ 147-48. Each allegation fails.

**A.     The Defense Production Act Order does not usurp Article III judicial power.**

California's allegation that the DPA Order usurps Article III judicial power is based solely on its assumption that the Order violates the Consent Decree in *United States v. Plains All American Pipeline, L.P.*, No. 20-cv-02415 (C.D. Cal.). That assumption is incorrect for at least three reasons.

First, no provision of the Consent Decree limits the President's use of the authority Congress gave him in the DPA. In other words, when the United States signed the Consent Decree, it did not (and could not) agree to forfeit its ability to make full use of the DPA to promote national security by responding to vulnerabilities in the domestic energy supply. California makes no allegation to the contrary.

Second, the DPA Order does not conflict with the Consent Decree because, when the Order was issued in March 2026, the Office of the State Fire Marshal's ("OSFM") authority under the Consent Decree had already been displaced based on the federal Pipeline and Hazardous Materials Safety Administration's ("PHMSA") December 2025 recognition that the Pipeline is interstate. *See* Compl. ¶ 45 (admitting that PHMSA's recognition displaced OSFM's authority under the Consent Decree); 49 U.S.C. § 60104(c) ("A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation.").

Third, even if there were a conflict between the DPA Order and the Consent Decree, the Decree would yield to the DPA Order, not the other way around. That is because consent decrees are creatures of equity and "must … be modified if … one or more of the obligations placed upon the parties has become impermissible under

federal law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992). And the Order now makes it "impermissible under federal law" for Sable *not* to operate the Pipeline *immediately*. *Id.* Thus, the Order *requires* that the Consent Decree be modified, which necessarily means that it does not *violate* the Consent Decree.

**B.    The Defense Production Act Order does not usurp legislative power.**

California's allegation that the DPA Order usurps legislative power is likewise based on a single assertion: that the Order exceeds the authority granted by the DPA to preempt state law. *See* Compl. ¶¶ 147-48. But a claim that an Executive Branch official exceeded his statutory authority cannot be recast as an independent constitutional claim. *See Dalton*, 511 U.S. at 472-74. Even putting that fatal flaw aside, California's claim fails because preemption is not properly presented here, and Congress need not expressly authorize preemption in any event.

**1.    California lacks a cause of action to bring its freestanding separation-of-powers claim that the DPA Order usurps legislative power.**

Paragraphs 147 and 148 of the Complaint allege that the DPA Order violates the separation of powers by exceeding the authority granted by the DPA. Under the Supreme Court's decision in *Dalton*, this purported "constitutional" separation-of-powers claim is really a *statutory* claim that falls outside any non-APA cause of action to enjoin alleged unconstitutional conduct. 511 U.S. at 474.

In *Dalton*, the Supreme Court rejected the notion that "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. "[C]laims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review under the exception recognized in *Franklin*" for judicial review of constitutional claims. *Id.* at 437-74. Were it otherwise, "plaintiffs would … be able to avoid statutory limits on review"—such as the limits imposed by the APA, *see supra* at 5-11—"by reframing any alleged statutory violation by the President as a

13

constitutional one." *Glob. Health Council v. Trump*, 153 F.4th 1, 14 (D.C. Cir. 2025); *Dalton*, 511 U.S. at 474 ("if every claim alleging that the President exceeded his statutory authority were considered a constitutional claim, the exception identified in *Franklin* would be broadened beyond recognition").

Here, as in *Dalton*, California dresses up a statutory claim in constitutional garb. It is "alleging that the President," through the Secretary, "exceeded his statutory authority" under the DPA by preempting state law without congressional authorization. *Dalton*, 511 U.S. at 473; Compl. ¶¶ 147-48. Indeed, California makes exactly the same allegation in Count I, its statutory claim. *See* Compl. ¶¶ 127-28 ("Even if the Wright Order otherwise complied with the DPA, it would not have the sweeping preemptive scope that Defendants claim," so "Defendants lack legal authority under the DPA … in enacting the Wright Order, and … acted contrary to law and in violation of the APA."). Since California alleges that the Order violates the separation powers *because*, and *only because*, it is not authorized by the DPA, its claim is "statutory" in nature and reviewable only under the APA. *Dalton*, 511 U.S. at 474. California thus lacks a constitutional cause of action for this argument.

### 2. In any event, California's separation-of-powers claim fails on the merits.

Even if California had a cause of action, its allegation—that the DPA Order usurps legislative power "by attempting to broadly preempt state law, when the text of the DPA does not empower [it] to do so"—fails on the merits for three reasons. Compl. ¶ 147.

First, this allegation is misplaced because the Order says nothing about preemption; it simply imposes certain obligations on Sable. If a conflict arises between the Order and the application of a specific state law, then the Court may need to consider preemption in an as-applied context. Preemption cannot be decided on the face of the Order, because preemption is a context-specific inquiry. *See MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1124-26 (9th Cir. 2020).

14

Second, the DPA Order's preemptive effect is distinct from its legality. *See Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022) (treating preemption and statutory authorization as separate questions). So even if California were right (it is not) that congressional authorization for preemption is required and was not provided in the DPA, that would simply mean that the DPA Order lacks preemptive effect. The Order would still be valid, just like a federal statute without preemptive effect is still a valid statute.

Finally, even if preemption were relevant, California is wrong that "the text of the DPA" needed to "empower" the Executive Branch to issue orders with preemptive effect. Compl. ¶ 147. Executive Branch orders and regulations have the full "force and effect of law" and have long "been held to pre-empt state law under the" same rules that apply to federal statutes. *Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). Critically, the preemptive effect of such orders and regulations "does not depend on express congressional authorization to displace state law." *De la Cuesta*, 458 U.S. at 154. Or said another way, "Congress need not expressly delegate preemptive authority to [an agency] for its regulations to preempt state law." *Cohen*, 46 F.4th at 1028. So California's "narrow focus" on whether the DPA itself authorizes preemption is "misdirected." *De la Cuesta*, 458 U.S. at 154. The question is simply whether a particular state law "conflicts with" the DPA Order or "frustrates [its] purposes," which would be satisfied if, for example, it is "impossible to comply with both state and federal requirements." *Cohen*, 46 F.4th at 1028.

For all these reasons, even if California had a cause of action, it still fails to state a claim that the DPA Order usurps legislative power by preempting state law.

**IV.  California Fails to State a Claim that the Defense Production Act Order Violates the Tenth Amendment (Count IV).**

Finally, California fails to state a claim under the Tenth Amendment. *See*

Compl. ¶¶ 151-59.  The Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  The Tenth Amendment is "essentially a tautology," reserving to the states those rights and powers that have not been granted to the United States. *New York v. United States*, 505 U.S. 144, 156-57 (1992).  When Congress acts within the bounds of its constitutional power, the Tenth Amendment is not implicated.  *Id.*; *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 550 (1985) ("the Constitution does not carve out express elements of state sovereignty that Congress may not employ its delegated powers to displace").

For this reason, the Supreme Court "long ago rejected the suggestion" that the Federal Government "invades areas reserved to the States by the Tenth Amendment simply because it exercises its authority ... in a manner that displaces the States' exercise of their police powers." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981).  In short, if the federal action is authorized by the Constitution, "the Tenth Amendment gives way." *United States v. Hatch*, 722 F.3d 1193, 1202 (10th Cir. 2013); *see also United States v. Comstock*, 560 U.S. 126, 144 (2010) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States ...." (quoting *New York*, 505 U.S. at 156)).  Here, the Secretary acted pursuant to a valid federal statute—indeed, California does not challenge the DPA's constitutionality.

Nor does the DPA Order independently violate the Constitution in a manner that implicates the Tenth Amendment.  California makes two allegations.  First, it alleges that the Order infringes on the State's power to "own, manage, and dispose of its property" because the Pipeline runs underneath a small portion of a state park. Compl. ¶¶ 154-55.  But even if the Order affected California's property rights (it does not), the Order would not be unconstitutional.  The Complaint, at most, appears to be alleging a taking, but California has not pled a Fifth Amendment takings claim,

16

which would fail anyway because taking property is not unconstitutional—only failing to provide just compensation—and claims for compensation must be brought in the Court of Federal Claims. *See Knick v. Township of Scott, Pa.*, 588 U.S. 180, 189-90, 205 (2019).[1] No other constitutional doctrine fits California's allegation.

California's second allegation is equally misplaced. It alleges that the DPA Order unconstitutionally "commandeer[s] state property for federal ends in violation of the Tenth Amendment." Compl. ¶ 156. But the anticommandeering doctrine does not apply here. That doctrine prohibits the Federal Government from "issu[ing] orders *directly* to the States." *Murphy v. NCAA*, 584 U.S. 453, 470 (2018) (emphasis added). It reflects the basic principle that the "Constitution … confers upon Congress the power to regulate individuals, not States." *New York*, 505 U.S. at 166. Or put differently, "[w]here a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents." *Id.* at 178. The DPA Order does not conscript California into doing anything. Rather, it imposes an obligation directly on *Sable*, not California. True, this may affect California "indirectly," but indirect effects do not trigger the anticommandeering doctrine. *Murphy*, 584 U.S. at 470-71.

California has thus failed to state a claim under the Tenth Amendment.

## CONCLUSION

California's APA claims (Counts I and II) are unreviewable and its constitutional claims (Counts III and IV) fail to state a claim. The Court should accordingly grant Defendants' Motion to Dismiss.

---

[1] California also alleges that there is "no authority under the DPA to infringe upon or preempt California's sovereign power to own, manage, and dispose of its property." Compl. ¶ 155. But this is just another improper attempt to repackage a statutory claim as a constitutional one. *See Dalton*, 511 U.S. at 472-74.

DATED:  June 29, 2026          Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE
ROBERT N. STANDER
Deputy Assistant Attorneys General

*/s/ Riley W. Walters*
Riley W. Walters
Email:  Riley.Walters@usdoj.gov
Counsel (DC Bar No. 90008638)
U.S. Department of Justice
Environment & Natural Resources Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  (202) 514-5442

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Federal Defendants, certifies that this brief contains 17 pages, which:

_X_  complies with the Court's New Case Order, ECF 18 at 2, setting a 25-page limit.

DATED:  June 29, 2026                    */s/ Riley W. Walters*
                                          Riley W. Walters

18