LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500

BABST CALLAND CLEMENTS & ZOMNIR, P.C.
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455

HOLLAND & KNIGHT LLP
Zachary James Watson (Bar No. 348019)
*zachary.watson@hklaw.com*
4675 MacArthur Court, Suite 900
Newport Beach, CA 92660
Telephone: +1 949.517.1451

*Attorneys for Defendant-Intervenors Sable Offshore Corp. and Pacific Pipeline Company*

*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THE STATE OF CALIFORNIA,

Plaintiff,

v.

CHRIS WRIGHT, in his official capacity as Secretary of the U.S. Department of Energy; UNITED STATES DEPARTMENT OF ENERGY,

Defendants,

and

SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY,

Intervenor-Defendants.

Case No. 2:26-cv-03396-SVW-SSCx

**INTERVENOR-DEFENDANTS SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Date: September 28, 2026
Time: 1:30 p.m.
Courtroom: 10A
Judge: Hon. Stephen V. Wilson

California's opposition brief concedes that "the Court is likely to adhere to [its prior rulings] and dismiss the case," Opposition ("Opposition"), ECF 92, at 9, then proceeds through a formulaic recitation of its prior arguments—perhaps with an eye towards its already-pending appeal, *see* Notice of Appeal, ECF 83—largely leaving unaddressed Defendants' main argument: that California's claims fail on procedural grounds. California's Administrative Procedure Act claims challenge unreviewable Presidential action, or at a minimum action committed to agency discretion. And California lacks a cause of action to bring its freestanding separation-of-powers claim *ultra vires* claim.

Regardless, on the merits, Defendants have already pointed to dispositive caselaw across multiple prior rounds of briefing that overcome each of California's arguments. *See, e.g.*, Defendants' Opposition to Preliminary Injunction, ECF 23; Intervenor Defendants' Proposed Opposition to Preliminary Injunction, ECF 24-4; Joint Post-Hearing Brief, ECF 63; Joint Post-Hearing Reply, ECF 64. Indeed, as California acknowledges (*see* Opp. at 9), this Court has already found that California "has not demonstrated even a serious question as to the merits" of its claims. August 19, 2026 Order ("Order"), ECF 82, at 29–45. California's opposition offers no new analysis, no new authority, no new facts, and no new analytical framework that warrants this Court reaching a different conclusion. California provides no basis for the Court to depart from its prior rulings, all of which should be confirmed by granting the motion to dismiss with prejudice.

**1. California's APA Claims in Counts I and II Fail.**

**a. The Wright Order is Unreviewable Presidential Action.**

California largely talks past Defendants, arguing the merits instead of responding to Defendants' unreviewability argument. Yet this Court need not reach the merits. Instead, it can agree with Defendants' compelling (and largely

unrebutted) arguments that this is unreviewable action. To the extent California speaks to reviewability, it repeats its prior contention that the Wright Order is "final agency action" under the APA and relies almost entirely on *Nebraska v. Su*, 121 F.4th 1 (9th Cir. 2024). But *Nebraska* is inapposite: the Ninth Circuit reviewed an agency regulation of general applicability—a rule implementing a broadly applicable executive order through standard notice-and-comment rulemaking under the agency's own rulemaking authority. *See* 121 F.4th at 4–5, 14–15. The Wright Order is not "a final rule" that "carrie[s] out a presidential directive," *Nebraska*, 121 F.4th at 15, but one in which presidential authority is formally delegated to a cabinet secretary, *see* 91 Fed. Reg. 13,199 (Mar. 13, 2026), which means that "the Secretary's actions are those of the President, and therefore by the terms of the APA the approval of the regulation at issue here is not reviewable." *Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975).

California attempts to distinguish *Jensen* as applying only in the context of "a binational treaty," Opp. at 26-27, but the facts of *Jensen* are not so cabined. In *Jensen*, the Secretary of State "approve[d]" a certain "regulation enacted by the [International Pacific Halibut] Commission" following advice from "scientific staff of the Commission." 512 F.2d at 1190–91. Yet despite this looking similar to the standard notice-and-comment rulemaking at issue in *Nebraska*, *see* 121 F.4th at 4–5, 14–15, the Ninth Circuit found that because the treaty setting up the Commission stated that the "President" shall approve regulations, and because that authority "was delegated to the Secretary of State by Executive Order," the Secretary's actions were "those of the President, and therefore by the terms of the APA . . . not reviewable." 512 F.2d at 1191. As in *Jensen*, so too here: the Secretary of Energy exercised authority statutorily vested in "[t]he President," 50 U.S.C. § 4511(a), formally delegated to the Secretary of Energy through an Executive Order, *see* 91 Fed. Reg.

13,199 (Mar. 13, 2026).

California further misunderstands Defendants' argument, claiming that "Defendants argue that an agency action downstream of a Presidential action is itself functionally presidential and shielded from review." Opp. at 28 (citing *Franklin v. Massachusetts*, 505 U.S. 788 (1992)). California is incorrect: *Franklin* stands for the uncontroversial proposition that the President is not an "agency" under the APA and that his unique constitutional position exempts his actions from APA review. 505 U.S. at 800–01. *Jensen*, as well as *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100–02 (D.D.C. 2016), *aff'd*, 883 F.3d 895 (D.C. Cir. 2018); *NRDC v. U.S. Dep't of State*, 658 F. Supp. 2d 105, 111–13 (D.D.C. 2009), and related cases cited by Defendants stand for the separate proposition that a Cabinet Secretary may exercise "Presidential" power in certain instances.[1] Neither of these well-established canons mean that all "downstream" actions are unreviewable, but they do mean that APA review is not available in this case.

Moreover, even if the Court were to find APA review available, the DPA provides no meaningful standard against which to evaluate the Secretary's exercise of allocation authority. The statute grants the President authority to act as "he shall deem necessary or appropriate to promote the national defense." 50 U.S.C. § 4511(a). Such open-ended language renders the action "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2). *See Hyatt v. Off. of Mgmt. & Budget*, 908 F.3d 1165, 1174 (9th Cir. 2018).

**2. Even if the DPA Order Were Reviewable, California Fails to State APA Claims.**

*Even if* the DPA Order were reviewable agency action (which it is not),

[1] The fact that these cases cursorily mention *Tulare County v. Bush*, 185 F. Supp. 2d 18 (D.D.C. 2001) does not, contrary to California's position (*see* Opp. at 27–28), render their entire analysis irrelevant: as noted above, the DPA Order is not a regulation *implementing* a specific presidential directive, but *the directive itself*, issued pursuant to a specific delegation of Presidential power.

California's arguments on the merits are merely recitations of positions it advanced and lost on at the preliminary injunction stage. Its dictionary-definition arguments about "prioritize" and "allocate"—that Sable had no contracts to "prioritize" and no existing resources to "allocate," Opp. at 13—ignore that the DPA Order is a straightforward exercise of the DPA's authority in that it "allocates" oil stranded in an offshore oil field to where the oil is needed on the West Coast. 45 U.S.C. § 4511(a)(2), (c). And by directing Sable to transport the oil through the Pipeline, the Order directs the "manner" and "conditions" of the allocation, as authorized by the DPA. *Id.* § 4511(a)(2). In this way, the Order is analogous to the Secretary of Agriculture's use of DPA allocation authority in 2020 to order meat and poultry plants to resume operations. *See Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382, 388–89 (N.D. Tex. 2022), *aff'd*, No. 22-10171, 2023 WL 2645553 (5th Cir. Mar. 27, 2023). This Court agreed, holding the DPA Order is "generally authorized by the plain language of Section 101." Order at 30.

California's argument that the Wright Order violates Department of Energy regulations because it lacks calendar end dates and certain certifications is likewise a verbatim repackaging of its preliminary injunction briefing. *See* Opp. at 14–15. Yet as this Court has already concluded, the DPA Order is not contrary to Department of Energy regulations. Order at 33 & n.16. California offers nothing warranting reconsideration, and certainly nothing suggesting that its claims should survive a motion to dismiss on this basis.

California's argument that the DPA Order's national defense findings are "pretextual and not rationally supported by the evidence," Opp. at 15, again fails to grapple with Defendants' prior arguments or this Court's Order. California does not acknowledge that the DPA grants broad discretion to determine what is "necessary or appropriate to promote the national defense," 50 U.S.C. § 4511(a), nor that

"Secretary Wright relied on a clear directive from the President on matters related to national security and foreign affairs—the type of determinations generally delegated to the executive" and acted pursuant to "a memorandum from the Office of Policy, Hydrocarbons, and Geothermal Energy, which further outlined the security interests implicated for California's energy security and the United States' national security." Order at 32. Accordingly, "Secretary Wright's findings and determinations were demonstrably plausible and reasonable" and "reveal a thoroughly rational explanation for the DPA Order that is more than sufficient to satisfy arbitrary and capricious review." *Id.* In any event, the Court need not reach these arguments because the DPA Order is unreviewable.

**3. California's Constitutional and Ultra Vires Claims in Counts III, IV, and V Fail.**

**a. California's Constitutional and Ultra Vires Claims are Procedurally Barred.**

California's constitutional and ultra vires theories are again identically recycled from the preliminary injunction stage. California attempts to distinguish its separation-of-powers claim from its APA claims by framing it as an "absence of any statutory authority" claim. Opp. at 17. But "[t]he distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is too well established to permit this sort of evisceration." *Dalton v. Specter*, 511 U.S. 462, 474 (1994). California makes neither allegation. "[I]f every claim alleging that the President exceeded his statutory authority were considered a constitutional claim," that would twist the APA's nonreviewability framework "beyond recognition." *Id*. The Constitution would be implicated only if Secretary Wright relied on it as an independent source of authority or if the DPA were itself unconstitutional. *See id.* at 473 & n.5. California's reliance

on *Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2023), and *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019) (*Sierra Club I*), does not change the analysis. *See* Opp. at 18. *Murphy Co.* relies substantially on *Sierra Club I* and a related decision in *Sierra Club v. Trump*, 963 F.3d 874 (9th Cir. 2020) (*Sierra Club III*). *See* 65 F.4th at 1130. But *Sierra Club I* was impliedly disapproved of by the Supreme Court in *Trump v. Sierra Club*, 588 U.S. 930 (2019), and *Sierra Club III* was vacated in *Biden v. Sierra Club*, 142 S. Ct. 46 (2021). Accordingly, *Sierra Club I* and *Sierra Club III* are not binding precedent and weaken the foundation on which *Murphy Co.* rests.

California's ultra vires claim (Count V) likewise fails. Ultra vires review "applies only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition*" in a statute." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (internal quotation marks omitted). Even that is not enough: "the prohibition at issue must confer rights upon the individual seeking ultra vires review." *Glob. Health Council v. Trump*, 153 F.4th 1, 20 (D.C. Cir. 2025). California identifies no such prohibition, let alone one that confers rights upon it. Instead, California focuses on the Order's preemptive effect—a question of federal supremacy, not ultra vires action.

**a. California's Constitutional and Ultra Vires Claims Fails on the Merits.**

On the merits, California argues that the DPA cannot possibly preempt state law, and so an order that may preempt state law is *ultra vires*. Opp. at 19-21. But California's preemption arguments are again recycled wholesale from its prior briefing and do not even attempt to address this Court's conclusions of law. California devotes substantial briefing to once again arguing that DPA Section 707, 50 U.S.C. § 4557, provides only a narrow liability shield protecting contractors from breach-of-contract claims. In so doing they again rely almost exclusively on

*Hercules Inc. v. United States*, 24 F.3d 188 (Fed. Cir. 1994) (*Hercules I*), and *United States v. Vertac Chem. Co.*, 46 F.3d 803 (8th Cir. 1995), straining to read them in tension with recent cases that have addressed whether DPA orders preempt conflicting state regulatory requirements—*Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382, 388–89 (N.D. Tex. 2022), and *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155, 2021 WL 5107725, at *6 (W.D. Tenn. Nov. 3, 2021)—both of which held that such requirements are preempted. As this Court already acknowledged, both *Hercules* and *Vertac* "left open the possibility that § 707 might provide immunity in other circumstances," and, crucially, the Supreme Court has "specifically declined to limit § 707" or "otherwise opine on the scope of § 707's immunity." ECF 24-4 at 12 (citing *Hercules I*, 24 F.3d at 203 n.15, *Vertac*, 46 F.3d at 812 n.11, and *Hercules, Inc. v. United States*, 516 U.S. 417, 430 & n.14 (1996)). Accordingly, as this Court found, *Hercules* and *Vertac* are not in tension with Supreme Court precedent and recent caselaw but are in fact in accord with them: "*Hercules* and *Vertac* stand for the premise that Section 707 immunity is limited to 'liability arising as a consequence of' re-prioritization or allocation." Order at 35 (quoting *Hercules I*, 24 F.3d at 204). "Only *in context* do those cases stand for the premise that immunity does not apply in tort or other areas of law outside breach of contract," as they concerned liability for "[a] tortious chemical product [that was] not a consequence of re-prioritization or allocation" but was instead "a consequence of dangerous and defective chemical design." *Id.* at 35–36. California's attempt to expand these cases beyond their actual holding falls flat. California's once-again invocation of 50 U.S.C. § 4558(j), *see* Opp. at 19–20, does not change the analysis—as this Court has stated, the fact that the DPA carved out an area in which "the DPA's preemptive grant of immunity does *not* extend . . . strongly implies that the DPA's preemptive authority is otherwise generalized." Order at 36–37.

**4. California's Article III theory is Moot.**

California's Article III theory—that the Wright Order usurped judicial power by directing pipeline restart in violation of the Consent Decree, *see* Opp. at 22–23—is moot. This Court modified the Consent Decree on August 19, 2026, resolving any conflict through the proper exercise of its own Article III authority. *See* Order.

**5. California Has Not Been Commandeered to do Anything.**

California's anti-commandeering claim fares no better. *See* Opp. at 23–25. The rarely-invoked anti-commandeering doctrine bars only federal directives aimed at states themselves—such "unequivocally dictat[ing] what a state legislature may and may not do," *Murphy v. NCAA*, 584 U.S. 453, 475 (2018), "command[ing] the States' officers[] . . . to administer or enforce a federal regulatory program," *id.* at 473 (quoting *Printz v. United States*, 521 U.S. 898, 935 (1997)), or "to 'take title' to low-level radioactive waste," *id.* at 471 (quoting *New York v. United States*, 505 U.S. 144, 153 (1992)). California's desire to regulate the pipeline, by contrast, sounds in preemption. *See Murphy*, 584 U.S. at 470–71, 477–79; *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981).

**6. California Is Not Within the DPA's Zone of Interests.**

"[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). This Court has held that the DPA's purpose is "to compel private industry, allocate resources, and incentivize domestic production for national defense." Order at 34. California's asserted interests—enforcement of its environmental laws and sovereign property claims—are outside that zone.

* * *

Because California's claims "fail[] as a matter of law, granting leave to amend

would be futile." *Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1104 (C.D. Cal. 2006). The United States' motion to dismiss should be granted with prejudice.

**Dated**: September 11, 2026

Respectfully submitted,

By: /s/ *Jessica Stebbins Bina*

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND CLEMENTS & ZOMNIR, P.C.
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

HOLLAND & KNIGHT LLP
Zachary James Watson (Bar No. 348019)
*zachary.watson@hklaw.com*
4675 MacArthur Court, Suite 900
Newport Beach, CA 92660
Telephone: +1 949.517.1451
James W. Noe (*pro hac vice*)
*jim.noe@hklaw.com*
800 17th St., NW, Suite 1100
Washington, D.C. 20006
Telephone: +1 202.469.5525
Ashley Akers (*pro hac vice*)
*ashley.akers@hklaw.com*
1650 Tysons Boulevard, Suite 1700
Tysons, VA 22102
Telephone: +1 703.720.8583

*Attorneys for Defendant-Intervenors Sable Offshore Corp. and Pacific Pipeline Company*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company, hereby certifies that this Reply in Support of Defendants' Motion to Dismiss contains 2,530 words and is not more than 12 pages, which complies with the word limits under Local Rule 11-6.1 and the page limits under this Court's New Case Order, ECF 70 § 3.A.

Dated: September 11, 2026

/s/ *Jessica Stebbins Bina*
Jessica Stebbins Bina